## UNITED STATES COURT OF INTERNATIONAL TRADE

*Before*: **The Honorable Timothy M. Reif, Judge**

| | |
|---|---|
| **Hoa Phat Steel Pipe Co., Ltd,** | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| **v.** | ) |
| | ) |
| **United States,** | ) |
| | ) |
| *Defendant,* | ) Consol. Court No. 23-00248 |
| | ) |
| **Atlas Tube Inc.; Bull Moose Tube Company;** | ) |
| **Maruichi American Corporation; Searing** | ) |
| **Industries; United Steel, Paper and Forestry,** | ) |
| **Rubber, Manufacturing, Energy, Allied Industrial** | ) |
| **and Service Workers International Union, AFL-** | ) |
| **CIO, CLC; Vest Inc., Nucor Tubular Products Inc.** | ) |
| | ) |
| *Defendant-Intervenors.* | ) |
| | ) |

### MOTION FOR JUDGMENT ON THE AGENCY RECORD

Pursuant to Rule 56.2 of the Ruleos of the Court of International Trade, Plaintiff Hoa Phat Steel Pipe Co., Ltd. ("Hoa Phat"), respectfully moves for judgment on the agency record of this consolidated action.

Hoa Phat seeks judicial review of the Commerce Department's ("Commerce") final affirmative findings of circumvention of the antidumping and countervailing duty orders on Light-Walled Rectangular Pipe and Tube From the Republic of Korea, Light-Walled Welded Rectangular Carbon Steel Tubing From Taiwan, and Light-Walled Rectangular Pipe and Tube From the People's Republic of China. *Light-Walled Rectangular Pipe and Tube From the Republic of Korea: Final Affirmative Determination of Circumvention of the Antidumping Duty*

*Order,* 88 Fed. Reg. 77,266 (Nov. 9, 2023) and accompanying Issues and Decision

Memorandum (Nov 2, 2023); *Light-Walled Welded Rectangular Carbon Steel Tubing From*

*Taiwan: Final Affirmative Determination of Circumvention of the Antidumping Duty Order*, 88

Fed. Reg. 77,274 (Nov. 9, 2023) and accompanying Issues and Decision Memorandum (Nov 2,

2023); *Light-Walled Rectangular Pipe and Tube From the People's Republic of China: Final*

*Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty*

*Orders,* 88 Fed. Reg. 77,283 (Nov. 9, 2023) and accompanying Issues and Decision

Memorandum (Nov 2, 2023).  For the reasons set for in Hoa Phat's brief accompanying this

motion for judgment on the agency record, Commerce's final determinations were an abuse of

discretion, not supported by substantial evidence on the record, otherwise unlawful.

        WHEREFORE, Hoa Phat respectfully requests that this Court enter and an Order (1)

holding unlawful the aspects of Commerce's final determinations challenged in the underlying

complaints and (2) remanding Commerce's circumvention findings with instructions for

Commerce to render new determinations consistent with the Court's decision and the law.


                                    /s/ Daniel L. Porter

                                    Daniel L. Porter
                                    James C. Beaty
                                    Katherine R. Afzal

                                    **Curtis, Mallet-Prevost, Colt & Mosle LLP**
                                    1717 Pennsylvania Avenue, NW
                                    Washington, D.C., 20006
                                    (202) 452 7340

                                    *Counsel for Hoa Phat Steel Pipe Co., Ltd.*

April 25, 2024

## UNITED STATES COURT OF INTERNATIONAL TRADE

*Before*: **The Honorable Timothy M. Reif, Judge**

| | |
|---|---|
| **Hoa Phat Steel Pipe Co., Ltd,** | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) |
| | ) |
| **United States,** | ) |
| | ) |
| *Defendant*, | ) **Consol. Court No. 23-00248** |
| | ) |
| **Atlas Tube Inc.; Bull Moose Tube Company;** | ) |
| **Maruichi American Corporation; Searing** | ) |
| **Industries; United Steel, Paper and Forestry,** | ) |
| **Rubber, Manufacturing, Energy, Allied** | ) |
| **Industrial and Service Workers International** | ) |
| **Union, AFL-CIO, CLC; Vest Inc., Nucor** | ) |
| **Tubular Products Inc.** | ) |
| | ) |
| *Defendant-Intervenors.* | ) |
| | ) |

## PLAINTIFF HOA PHAT STEEL PIPE CO. LTD.'S BRIEF IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE AGENCY RECORD

Daniel L. Porter
James C. Beaty
Katherine R. Afzal

**Curtis, Mallet-Prevost, Colt, & Mosle LLP**
1717 Pennsylvania Avenue, NW
Washington, DC 20006

April 25, 2024

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT.................................................1

STATEMENT PURSUANT TO RULE 56.2 ...................................................3

    **A.** **Administrative Determinations Under Appeal**...............................**3**

    **B.** **Issues of Law Presented** ...................................................**4**

    **C.** **Statement of Reasons for Vacating Commerce Determinations**........................**4**

STATEMENT OF FACTS ..........................................................4

STANDARD OF REVIEW..........................................................12

ARGUMENT ...................................................................13

    **I.** **COMMERCE'S REFUSAL TO ACCEPT HOA PHAT'S QUESTIONNAIRE RESPONSE WAS AN ABUSE OF DISCRETION AND OTHERWISE UNLAWFUL**...............................................................**13**

        A. Commerce Has An Affirmative Obligation Not to Abuse its Discretion When Conducting AD Proceedings ...........................................14

        B. Commerce Abused Its Discretion When It Refused To Consider Hoa Phat's Questionnaire Response Submitted Nearly 400 Days Before Commerce's Final Determination...................................................17

        C. Commerce's Reliance on Flexible Statutory Deadlines To Justify Denying Hoa Phat's Extension Request Was Unlawful and Unsupported by the Record .........................................................22

        D. Commerce's Refusal To Accept Hoa Phat's Minimally Untimely Questionnaire Response Was Also Inconsistent With its Own Practice.....26

    **II.** **COMMERCE'S APPLICATION OF FACTS AVAILABLE WITH AN ADVERSE INFERENCE WAS UNLAWFUL**.................................................**29**

CONCLUSION AND PRAYER FOR RELIEF ........................................35

# TABLE OF AUTHORITIES

## Cases

*Ad Hoc Shrimp Trade Action Comm. v. United States*,
  925 F. Supp. 2d 1367 (Ct. Int'l Trade 2013) .......................................................... 19
*Ajmal Steel Tubes & Pipes Indus. LLC v. United States*,
  2022 Ct. Int'l Trade LEXIS 122 (October 28, 2022) ...................................... 16, 17
*Allentown Mack Sales & Serv., Inc. v. NLRB*,
  522 U.S. 359 (1998) ...................................................................................................... 26
*Artisan Mfg. Corp. v. United States*,
  978 F. Supp. 2d 1334 (Ct. Int'l Trade 2014) .......................................................... 16
*Baroque Timber Indus. (Zhongshan) Co. v. United States*,
  925 F. Supp. 2d 1332 (Ct. Int'l Trade 2013) .......................................................... 26
*Butterbaugh v. DOJ*,
  336 F.3d 1332 (Fed. Cir. 2003) .................................................................................. 23
*Celik Halat ve Tel Sanayi A.S. v. United States*,
  557 F. Supp. 3d 1348 (Ct. Int'l Trade 2022) .......................................................... 16
*Clearon Corp. v. United States*,
  38 CIT 1122 (2014) ....................................................................................................... 27
*Consol. Fibers, Inc. v. United States*,
  535 F. Supp. 2d 1345 (Ct. Int'l Trade 2008) .......................................................... 12
*Dak Ams. LLC v. United States*,
  456 F. Supp. 3d 1340 (Ct. Int'l Trade 2020) .......................................................... 27
*Dep't of Revenue of Or. v. ACF Indus.*,
  510 U.S. 332 (1994) ...................................................................................................... 23
*FCC v. Fox TV Stations, Inc.*,
  556 U.S. 502 (2009) ...................................................................................................... 27
*Garg Tube Exp. LLP v. United States*,
  2024 Ct. Int'l Trade LEXIS 46 (Apr. 8, 2024) ........................................................ 32
*Grobest & I-Mei Indus. (Vietnam) Co. v. United States*,
  815 F. Supp. 2d 1342 (Ct. Int'l Trade 2012) .......................................................... 14
*NTN Bearing Corp. v. United States*,
  74 F.3d 1204 (Fed. Cir. 1995) .................................................................................... 14
*Oman Fasteners v. United States*,
  2023 Ct. Int'l Trade LEXIS 28 (February 15, 2023) ........................................ 15, 26
*Rhone Poulenc, Inc. v. United States*,
  899 F.2d 1185 (Fed. Cir. 1990) .................................................................................. 19
*Saha Thai Steel Pipe v. United States*,
  605 F. Supp. 3d 1348, 1363 (Ct. Int'l Trade 2022) ................................................ 32
*Shelter Forest Int'l Acquisition , Inc. v. United States*,
  497 F. Supp. 3d 1388 (Ct. Int'l Trade 2021) .......................................................... 14

*Timken Co. v. United States*,
   354 F.3d 1334 (Fed. Cir. 2004) .......................................................... 32
*YC Rubber Co. (N. Am.) LLC v. United States*,
   2022 U.S. App. LEXIS 24259 (Aug. 29, 2022) .................................... 18

## Statutes

19 U.S.C. § 1516a ........................................................................................ 12
19 U.S.C. § 1673d ....................................................................................... 14
19 U.S.C. § 1677e ................................................................................. 30, 31
19 U.S.C. § 1677j ........................................................................................ 20
19 U.S.C. § 1677m ...................................................................................... 31
5 U.S.C. § 706 ............................................................................................. 12

## Rules

*Extension of Time Limits*, 78 Fed. Reg. 57,790 (Sept. 20, 2013) ....................................... 28

## Regulations

19 C.F.R. § 351.302 ..................................................................................... 23

## Administrative Determinations

*Certain Cold-Rolled Steel Flat Products From the People's Republic of China:*
   *Affirmative Final Determination of Circumvention of the Antidumping and*
   *Countervailing Duty Orders*, 83 Fed, Reg, 23,891 (May 23, 2018) .............................. 6
*Certain Corrosion-Resistant Steel Products From the People's Republic of China:*
   *Affirmative Final Determination of Circumvention Involving Costa Rica*, 85 Fed. Reg.
   41,951 (July 13, 2020) ................................................................................... 6
*Certain Corrosion-Resistant Steel Products From the People's Republic of China:*
   *Affirmative Final Determination of Circumvention Involving the United Arab Emirates*,
   85 Fed. Reg. 41,957 (July 13, 2020) ................................................................ 6
*Certain Hardwood Plywood Products From the People's Republic of China: Final Scope*
   *Determination and Affirmative Final Determination of Circumvention of the*
   *Antidumping and Countervailing Duty Orders*, 88 Fed. Reg. 46,740 (July 20, 2023).. 24
*Certain Hardwood Plywood Products From the People's Republic of China: Initiation of*
   *Anti-Circumvention Inquiries and Scope Inquiries on the Antidumping Duty and*
   *Countervailing Duty Orders Vietnam Assembly*, 85 Fed. Reg. 36,530 (June 17, 2020) 24
*Circular Welded Carbon Quality Steel Pipe From the People's Republic of China: Final*
   *Affirmative Determination of Circumvention of the Antidumping Duty and*
   *Countervailing Duty Orders*, 88 Fed. Reg. 77,287 (Nov. 9, 2023) ............................... 6
*Light-Walled Rectangular Pipe and Tube From the People's Republic of China: Final*
   *Affirmative Determination of Circumvention of the Antidumping Duty and*
   *Countervailing Duty Orders,* 88 Fed. Reg. 77,283 (Nov. 9, 2023) ........................... 3, 11

*Light-Walled Rectangular Pipe and Tube From the Republic of China: Preliminary Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders,* 88 Fed. Reg. 21,985 ( April 12, 2023)............................ 10

*Light-Walled Rectangular Pipe and Tube From the Republic of Korea: Final Affirmative Determination of Circumvention of the Antidumping Duty Order,* 88 Fed. Reg. 77,266 (Nov. 9, 2023) ....................................................................................................... 3, 11

*Light-Walled Rectangular Pipe and Tube From the Republic of Korea: Preliminary Affirmative Determination of Circumvention of the Antidumping Duty Order,* 88 Fed. Reg. 22,002 ( April 12, 2023) ......................................................................... 10

*Light-Walled Rectangular Welded Carbon Steel Pipe And Tube From Taiwan: Preliminary Affirmative Determination of Circumvention of the Antidumping Duty Order,* 88 Fed. Reg. 21,980 (April 12, 2023) ............................................................. 10

*Light-Walled Welded Rectangular Carbon Steel Tubing From Taiwan: Final Affirmative Determination of Circumvention of the Antidumping Duty Order,* 88 Fed. Reg. 77,274 (Nov. 9, 2023) ....................................................................................................... 3, 11

## INTRODUCTION AND SUMMARY OF ARGUMENT

This case challenges the Commerce Department's ("Commerce") determination to reject Hoa Phat Steel Pipe Co., Ltd.'s ("Hoa Phat") untimely questionnaire response in three parallel circumvention proceedings, despite having access to the complete submission on the following business day, the first time when Commerce reasonably would have reviewed the submission.  Commerce's arbitrary approach to Hoa Phat resulted in (a) country-wide determination regarding Vietnam that was based on the review of a single company and (b) a highly punitive exclusion of Hoa Phat from the certification regime that all other Vietnamese exporters were able to enjoy to continue exports to the United States.

During the balance of the proceeding, Commerce gave itself numerous extensions of time to make its determination including an extension well beyond the statutory target it identified as part of the basis for rejecting Hoa Phat's questionnaire response.  As a result, Commerce inconsistently interpreted the statute's timing target by relying on the 300-day provision as the basis for rejecting additional extension requests but ultimately giving the provision little weight when applied to the allowable time for Commerce's decisions.  Commerce's approach to Hoa Phat and the broader proceeding, therefore, was an abuse of discretion and fundamentally unfair.

The record shows that Hoa Phat's counsel were struggling with the submission and had asked for extensions beyond the deadline that Commerce enforced.  Instead of rewarding Hoa Phat's counsel for being proactive and communicating with Commerce about those difficulties, Commerce adopted an absolutist position that was unlawful and

entirely inconsistent with Commerce's practice regarding such situations.  These grounds alone are the basis for a remand.

In addition to the arbitrary and unlawful process applied to Hoa Phat's questionnaire response, Commerce failed to observe the relevant statutory controls regarding its authority to rely on facts otherwise available and the additional authority to apply adverse inferences.  Instead of complying with all of the statutory controls for these findings, Commerce relied on a truncated approach to its authority which was unlawful.  To the extent that the Court does not find an abuse of discretion with respect to Hoa Phat's untimely questionnaire response, this legal error is a separate basis for remand.

## STATEMENT PURSUANT TO RULE 56.2

### A. Administrative Determinations Under Appeal

This appeal challenges the Department of Commerce's decision to reject Hoa Phat's initial questionnaire responses in the anti-circumvention proceedings on Light-Walled Rectangular Pipe and Tube ("LWRPT") from Korea, Taiwan, and China and Hoa Phat's resulting exclusion from the certification regime on the basis of facts available with an adverse inference.[1] *Light-Walled Rectangular Pipe and Tube From the Republic of Korea: Final Affirmative Determination of Circumvention of the Antidumping Duty Order,* 88 Fed. Reg. 77,266 (Nov. 9, 2023) and accompanying Issues and Decision Memorandum (Nov 2, 2023) ("Korea Final IDM") (K.P.R. 223)[2]; *Light-Walled Welded Rectangular Carbon Steel Tubing From Taiwan: Final Affirmative Determination of Circumvention of the Antidumping Duty Order*, 88 Fed. Reg. 77,274 (Nov. 9, 2023) and accompanying Issues and Decision Memorandum (Nov 2, 2023) ("Taiwan Final IDM") (T.P.R. 219); *Light-Walled Rectangular Pipe and Tube From the People's Republic of China: Final Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders,* 88 Fed. Reg. 77,283 (Nov. 9, 2023) and accompanying Issues and Decision Memorandum (Nov 2, 2023) ("China Final IDM") (C.P.R. 236) (referred to collectively as "IDM").

---

[1] We note that the description of the merchandise is slightly different in the Taiwan case, however we for ease in the brief and due to the similar issues we refer to the product as LWRPT across all three cases.

[2] Due to the consolidation of the three cases with separate administrative records the citations for each case will be as follows: the Korea record takes the form of "K.P.R." or "K.C.R."; the Taiwan record takes the form of "T.P.R." or "T.C.R."; the China record takes the form of "C.P.R." or "C.C.R.".

**B.  Issues of Law Presented**

Hoa Phat challenges the following aspects of Commerce's determination regarding its questionnaire response rejection and resulting exclusion from the anticircumvention certification regime.

1. Whether Commerce's rejection of Hoa Phat's initial questionnaire response was arbitrary, contrary to law, and unsupported by substantial evidence?

2. Whether Commerce's application of facts available with an adverse inference to Hoa Phat and its resulting exclusion from the certification regime was contrary to law and unsupported by substantial evidence.

**C.  Statement of Reasons for Vacating Commerce Determinations**

Commerce's final affirmative circumvention determination should be vacated because it is not in accordance with law and is not supported by substantial evidence. The reasons are set forth below.

## STATEMENT OF FACTS

<u>*Receipt of Circumvention Petition and Initiation of Circumvention Proceeding*</u>

On May 17, 2022, Commerce received an allegation from domestic interested parties alleging circumvention of the LWRPT order.  *See generally*, Domestic Interested Parties Circumvention Allegation (K.P.R. 1, T.P.R. 1, C.P.R. 1).  On August 4, 2022 Commerce published an initiation notice for simultaneous anticircumvention inquires to determine whether certain imports of LWRPT completed in Vietnam using hot-rolled steel substrate manufactured in Korea are circumventing the Order on a country-wide basis. *Circular Welded Carbon Quality Steel Pipe From the People's Republic of China; Certain Circular Welded Non-Alloy Steel Pipe From the Republic of Korea; Certain*

*Welded Carbon Steel Standard Pipes and Tubes From India; Certain Circular Welded Carbon Steel Pipes and Tubes From Taiwan; Certain Circular Welded Non-Alloy Steel Pipe From Taiwan; Light-Walled Rectangular Pipe and Tube From the People's Republic of China; Light-Walled Rectangular Pipe and Tube From the Republic of Korea; Light-Walled Welded Rectangular Carbon Steel Tubing From Taiwan: Initiation of Circumvention Inquiries on the Antidumping and Countervailing Duty Orders,* 87 Fed. Reg. 47,711 (August 4, 2022) and accompanying Circumvention Initiation Memorandum (K.P.R. 26; T.P.R. 18; C.P.R. 24). Hoa Phat subsequently entered a *pro se* appearance in all three cases. (K.P.R. 40; T.P.R. 29; C.P.R. 33).

On August 30, 2022, Commerce selected Hoa Phat and Vina One Steel Manufacturing Corp ("Vina One") as the mandatory respondents in each segment of the circumvention inquiry. Memorandum: *Circumvention Inquiry on Light-Walled Rectangular Pipe and Tube from the Republic of Korea: Respondent Selection,* (August 30, 2022) (K.P.R. 39); Memorandum: *Circumvention Inquiry on Light-Walled Welded Rectangular Carbon Steel Tubing From Taiwan: Respondent Selection,* (August 30, 2022) (T.P.R. 34); Memorandum: *Circumvention Inquiry on Light-Walled Rectangular Pipe and Tube from the People's Republic of China: Respondent Selection,* (August 30, 2022) (C.P.R. 38).

Commerce then issued questionnaires to Hoa Phat in each country segment on September 6, 2022 with a due date fourteen days later on September 20, 2022. *See* Initial Questionnaires (K.P.R. 43; T.P.R. 35; C.P.R. 39). The overall objective of the circumvention questionnaires was to probe whether: (a) during the time period examined,

Hoa Phat's exports of LWRPT to the United States were made from hot-rolled substrate produced in countries covered by the identified AD and CVD Orders and (b) whether Hoa Phat's production records and sales processes allowed Hoa Phat to identify the country of origin of the hot-rolled steel substrate used to produce the LWRPT exported to the United States. *See* Initial Questionnaire (K.P.R. 43; T.P.R. 35; C.P.R. 39).

From multiple past Commerce circumvention proceedings involving steel products,[3] there was no question that Commerce viewed (a) and (b) as separate questions. Question (a) was backward-looking and question (b) was forward-looking. Specifically, pursuant to Commerce's approach, even if a respondent-exporter had previously exported LWRPT from Vietnam using hot-rolled substrate from one of the identified AD-CVD Order countries, Commerce would allow the respondent exporter to undertake future exports of LWRPT provided that the respondent exporter demonstrated that it was able to identify the country of origin of the hot-rolled substrate and thereby certify that the LWRPT was not made with hot-rolled steel substrate from any of the AD-CVD Order countries.

---

[3] *See, e.g.*, *Circular Welded Carbon Quality Steel Pipe From the People's Republic of China: Final Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 88 Fed. Reg. 77,287 (Nov. 9, 2023); *Certain Corrosion-Resistant Steel Products From the People's Republic of China: Affirmative Final Determination of Circumvention Involving Costa Rica*, 85 Fed. Reg. 41,951 (July 13, 2020); *Certain Corrosion-Resistant Steel Products From the People's Republic of China: Affirmative Final Determination of Circumvention Involving the United Arab Emirates*, 85 Fed. Reg. 41,957 (July 13, 2020); *Certain Cold-Rolled Steel Flat Products From the People's Republic of China: Affirmative Final Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 83 Fed, Reg, 23,891 (May 23, 2018).

*Hoa Phat's Counsel's Issues With Voluminous Submission and Filing of Questionnaire Response*

Despite lacking counsel, Hoa Phat was able to file an initial extension request with Commerce requesting six additional weeks to complete each of the voluminous questionnaires.  Commerce granted a meager partial extension giving Hoa Phat one additional week, making the deadline September 27, 2022.  First Extension Request (K.P.R. 45; T.P.R. 39; C.P.R. 41).

On September 15, 2022 Fox Rothschild LLP entered an appearance and administrative protective order application on behalf of Hoa Phat.  Fox Rothschild Entry of Appearance (K.P.R. 51, 53; T.P.R. 44, 46; C.P.R. 47,49).  Counsel subsequently filed a further limited extension request on September 21, 2022.  Second Extension Request (K.P.R. 57; T.P.R. 48; C.P.R. 53).  On September 23, 2022, Commerce issued a memorandum in each country segment clarifying certain aspects of its questionnaire and extending the deadline for the submission of the initial questionnaire for all respondents until October 4, 2022.  Extension Memorandum (K.P.R. 59; T.P.R. 50; C.P.R. 55).

On September 30, 2022 Hoa Phat submitted an additional extension request, which was partially granted, establishing a deadline of October 7, 2022.  October 3rd Extension Request (K.P.R. 62; T.P.R. 53; C.P.R. 58); Partial Extension (K.P.R. 65; T.P.R. 56; C.P.R. 61).  Prior to the deadline, Hoa Phat submitted a further extension request which was denied *en toto*.  October 5th Extension Request (K.P.R. 67; T.P.R. 58; C.P.R. 63).  Commerce's reason for the denial was that "Commerce must conduct these circumvention inquiries within time limits required by U.S. law." October 6th Extension

Request Denial Letter (K.P.R. 69; T.P.R. 60; C.P.R.65). The responses in all three inquiries, therefore, remained due on the following day, October 7, 2022, thirty-one days after the issuance of the initial questionnaires for three separate circumvention inquiries. Counsel for Hoa Phat called Commerce and explained the difficulty of filing three voluminous responses and noted concern regarding the lack of an extension.

On October 7, 2022, at 12:30 pm on the due date of the submission, counsel for Hoa Phat asked by telephone if Hoa Phat could be provided a one-business day extension. At around 1:30 pm, Hoa Phat filed a request that its time to respond be extended until 10:00 am on the next business day, October 11, 2022, because counsel was experiencing difficulty and needed time to OCR, split, and flatten the submission which was estimated to be over 6000 pages. October 7th Extension Request (K.P.R. 71; T.P.R. 62; C.P.R.67). After further discussion with Commerce an interim extension until 11:59 pm on October 7, 2022 was granted. October 7th Extension Memorandum (K.P.R. 72; T.P.R. 63; C.P.R.68).

Prior to the deadline, Hoa Phat submitted a further extension request which contained a minor technical defect but was filed in the appropriate ACCESS segment. Letter Regarding Final Extension Request (K.P.R. 83; T.P.R. 74; C.P.R. 79). After filing the extension request, Hoa Phat's counsel began filing the questionnaire responses in all three cases under the one-day lag rule. On the following business day, Hoa Phat's counsel completed filing the necessary final business proprietary and public versions of its three responses.

For the Taiwan segment, Hoa Phat completed filing as follows:

1. One-day lag version          10:16 pm, Saturday October 8, 2022
2. Final BPI version            8:23 am, Tuesday October 11, 2022
3. Public Version               10:50 am Tuesday October 11, 2022

For the Korea segment, Hoa Phat completed filing as follows:

1. One-day lag version                      Monday October 10, 2022
2. Final BPI version            9:56 am, Tuesday October 11, 2022
3. Public Version               10:54 am Tuesday October 11, 2022

For the China segment, Hoa Phat completed filing as follows:

1. One-day lag version             2:24 pm, Saturday October 8, 2022
2. Final BPI version            12:03 pm, Tuesday October 11, 2022
3. Public Version               12:14 pm, Tuesday October 11, 2022

*See* Hoa Phat Rejection Memo at 4-5 (K.P.R. 116, 117; T.P.R. 109, 110; C.P.R. 118, 119).

By Monday, October 10, 2022, a Federal Holiday during which the Department of Commerce and its underlying offices were closed, Hoa Phat had filed the proprietary version of all of its responses.  And the content of Hoa Phat's questionnaire responses made very clear that Hoa Phat had responded to all of Commerce's questions and proffered the relevant factual information to support its responses.

*Rejection of Questionnaire and Application of Facts Available*

On November 17, 2022, Commerce rejected Hoa Phat's One-day lag responses as untimely filed and removed the one-day lag, final BPI, and public versions of Hoa Phat's responses from the record. Memorandum to File, *Light-Walled Rectangular Pipe and*

*Tube from the People's Republic of China; Light-Walled Rectangular Pipe and Tube*

*from the Republic of Korea; and Light-Walled Welded Rectangular Carbon Steel Tubing*

*from Taiwan;* Circumvention Inquiries – Rejection of Hoa Phat Steel Pipe Co., Ltd.

Response to Initial Questionnaire (November 17, 2022) (K.P.R. 116,117; T.P.R. 109,

110; C.P.R. 118, 119).  Hoa Phat filed a letter requesting that Commerce reconsider its

decision on November 29, 2022.  Req. for Reconsideration (K.P.R. 119; T.P.R. 112;

C.P.R. 121).  That request was denied on December 13, 2022.  Denial of Reconsideration

(K.P.R. 121; T.P.R. 115; C.P.R. 128).

On April 6, 2023 Commerce published its Preliminary Determination

Memorandum finding that because Hoa Phat failed to cooperate by not acting to the best

of its ability an adverse inference is warranted and that Hoa Phat is not eligible to certify

that specific entries of merchandise were not manufactured using Korea-origin HRS.

*Light-Walled Rectangular Pipe and Tube From the Republic of Korea: Preliminary*

*Affirmative Determination of Circumvention of the Antidumping Duty Order,* 88 Fed.

Reg. 22,002 ( April 12, 2023) and accompanying Issues and Decision Memorandum

(K.P.R. 147); *Light-Walled Rectangular Welded Carbon Steel Pipe And Tube From*

*Taiwan: Preliminary Affirmative Determination of Circumvention of the Antidumping*

*Duty Order,* 88 Fed. Reg. 21,980 (April 12, 2023) and accompanying Issues and Decision

Memorandum (T.P.R. 140); *Light-Walled Rectangular Pipe and Tube From the Republic*

*of China: Preliminary Affirmative Determination of Circumvention of the Antidumping*

*Duty and Countervailing Duty Orders,* 88 Fed. Reg. 21,985 ( April 12, 2023) and

accompanying Issues and Decision Memorandum (C.P.R. 160) (the unpublished memorandum as referred to as "PDM").

On May 4, 2023, Hoa Phat timely filed an administrative case brief contesting Commerce's rejections of its initial questionnaire response and Commerce's broader finding that Hoa Phat would not be allowed to participate in the circumvention certification regime on the basis of facts available with an adverse inference.  Hoa Phat Case Br. (K.P.R. 165; T.P.R. 160; C.P.R. 180).

On November 9, 2023, Commerce published a notice of its final determination in the *Federal Register* finding no change from its conclusions in the preliminary determination. *Light-Walled Rectangular Pipe and Tube From the Republic of Korea: Final Affirmative Determination of Circumvention of the Antidumping Duty Order,* 88 Fed. Reg. 77,266 (Nov. 9, 2023) and accompanying Issues and Decision Memorandum (Nov 2, 2023) (K.P.R. 223); *Light-Walled Welded Rectangular Carbon Steel Tubing From Taiwan: Final Affirmative Determination of Circumvention of the Antidumping Duty Order,* 88 Fed. Reg. 77,274 (Nov. 9, 2023) and accompanying Issues and Decision Memorandum (Nov 2, 2023) (T.P.R. 219); *Light-Walled Rectangular Pipe and Tube From the People's Republic of China: Final Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders,* 88 Fed. Reg. 77,283 (Nov. 9, 2023) and accompanying Issues and Decision Memorandum (Nov 2, 2023) (C.P.R. 236) (the unpublished memorandum is referred to as "IDM").

Hoa Phat subsequently filed the three complaints that give rise to this appeal on November 29, 2023. The Court later consolidated those appeals under Consol. Ct. No. 23-248.

## STANDARD OF REVIEW

The statutory review standard for 1581(c) cases is that "{t}he court shall hold unlawful any determination, finding, or conclusion found— { } to be unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).

In addition, Commerce's determinations and the conduct of its proceedings are subject to the general controls on agency action in the Administrative Procedure Act. Those rules allow reviewing courts to "set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Consol. Fibers, Inc. v. United States*, 535 F. Supp. 2d 1345, 1352-53 (Ct. Int'l Trade 2008) (discussing the interplay of these two standards at length).

## ARGUMENT

## I.    COMMERCE'S REFUSAL TO ACCEPT HOA PHAT'S QUESTIONNAIRE RESPONSE WAS AN ABUSE OF DISCRETION AND OTHERWISE UNLAWFUL

Commerce conducted its questionnaire response collection in this proceeding on a very short timeline.  The ultimate internal deadline mandated by Commerce for Hoa Phat's initial questionnaire response was only 64 days after initiation and only 31 days after the questionnaire was issued.  In a typical Commerce AD proceeding, the Commerce deadline for an initial questionnaire response is 90 days, without any extensions.  While the questionnaire in this proceeding was more concise than a typical full antidumping questionnaire it covered many of the same topics and required significant data collection.

Moreover, the full course of the circumvention proceeding was well over a year, running 462 days from initiation to final determination.  Commerce issued numerous supplemental questionnaires to the other respondent suggesting ample resources for the proceeding.  Given these factors, it would not have been burdensome for Commerce to grant some leeway to Hoa Phat and accept its questionnaire responses that were submitted to Commerce just hours after the Commerce internal deadline.  In contrast, the punishment imposed by Commerce—the complete shutdown of Hoa Phat's ability to export fully compliant products to the United States—was draconian.

**A.      Commerce Has An Affirmative Obligation Not to Abuse its Discretion When Conducting AD Proceedings**

While the antidumping duty statute sets forth certain deadlines for the completion of certain actions, *see, e.g.*, 19 U.S.C. § 1673d(a)(1) (for Commerce's issuance of a final antidumping duty determination), the statute does not set deadlines for specific submissions by respondents. Instead, Commerce has the inherent authority to establish deadlines in a proceeding, with the broader objective of meeting the statutory deadlines for completing its antidumping proceedings.  However, both the Federal Circuit and the Trade Court have consistently ruled that Commerce does not have *carte blanche* authority to reject proffered factual information just because the information that was submitted to Commerce beyond a regulatory or agency-established deadline.

For example in *NTN Bearing* the Federal Circuit stated that "a regulation which is not required by statute may, in appropriate circumstances, be waived <u>and must be waived</u> where failure to do so would amount to an abuse of discretion."  *NTN Bearing Corp. v. United States*, 74 F.3d 1204, 1207 (Fed. Cir. 1995) (emphasis supplied) (referring to the timing provisions in Commerce's regulations regarding factual information submissions). Likewise the Trade Court has found generally that Commerce abuses its discretion when the "circumstances {} suggest that 'the interests in fairness and accuracy outweigh {any} burden {placed} upon Commerce.'"  *Shelter Forest Int'l Acquisition , Inc. v. United States*, 497 F. Supp. 3d 1388, 1402 (Ct. Int'l Trade 2021) (*quoting Grobest & I-Mei Indus. (Vietnam) Co. v. United States*, 815 F. Supp. 2d 1342, 1365 (Ct. Int'l Trade 2012)).

This past precedent makes clear that there are two parts to the balancing test. The Trade Court must consider whether the untimely information was important to ensuring accuracy and fairness and then weigh those interests against the administrative burden imposed on Commerce by accepting the untimely submission. Or stated differently, while Commerce has discretion both to set deadlines and to enforce those deadlines, Commerce is obligated to determine whether to waive those deadlines in appropriate circumstances. The Trade Court has reviewed Commerce actions in numerous past cases with similar circumstances and has generally concluded that the type of harsh treatment that Commerce applied to Hoa Phat in this case is an unlawful abuse of discretion.

For example, most recently, the Trade Court considered a highly analogous situation in *Oman Fasteners*. In that case, respondents submitted an element of one response after the deadline and Commerce ultimately rejected the entire submission and applied facts available with an adverse inference without relying on any information submitted by the party. *Oman Fasteners v. United States*, 2023 Ct. Int'l Trade LEXIS 28 at *4-5 (February 15, 2023). In that case, the Court granted the unusual remedy of a preliminary injunction and described Commerce's ruling as "the very definition of abuse of discretion." *Id.* at *3.

In a similar case, *Celik Halat*, the Trade Court found that Commerce's rejection of an entire questionnaire response as a result of a single untimely exhibit "demonstrate{d} that Commerce abused its discretion to impose a draconian penalty upon plaintiff for a minor and inadvertent technical error by its counsel that had <u>no appreciable effect on the</u>

antidumping duty investigation." *Celik Halat ve Tel Sanayi A.S. v. United States*, 557 F. Supp. 3d 1348, 1362 (Ct. Int'l Trade 2022) (emphasis supplied).

Another relevant, albeit older, case is *Artisan Mfg. Corp.*, in which the Trade Court found that facts available with an adverse inference was far too harsh for a minor filing delay due to counsel's inadvertent error. *Artisan Mfg. Corp. v. United States*, 978 F. Supp. 2d 1334, 1347 (Ct. Int'l Trade 2014). The Trade Court found that Commerce abused its discretion in applying adverse facts available, thereby assigning the respondent exporter the 76.53 percent China-wide AD rate, just because the respondent's quantity and value questionnaire response was submitted the morning after the deadline because of an inadvertent mix-up by counsel. The exporter-respondent had timely filed its separate rate application, which Commerce also removed from the record. *Id.* at 1339. The Court concluded that the delay was inconsequential, as it only took place during non-business hours, *i.e.*, Q&V information was only unavailable between 5:00 PM, close of business on the deadline date, to the beginning of the next business day. *Id*. at 1345. The Court also found that, by contrast the consequences of the unexcused late filing was "particularly severe," subjecting the respondent to the adverse PRC-wide rate. The Trade Court concluded that "Commerce attached a consequence that was grossly disproportionate to the mistake that was made." *Id.*

The Trade Court has also found that Commerce's exclusion of questionnaire responses "must consider the serious consequences it rests upon parties in the light of the allowances it gives itself." *Ajmal Steel Tubes & Pipes Indus. LLC v. United States*, 2022 Ct. Int'l Trade LEXIS 122 at *16 (October 28, 2022). In that case, Commerce rejected a

respondents' questionnaire response due to an untimely Section A submission but later

tolled all AD deadlines as a result of the COVID-19 pandemic, the same issue that

counsel for Ajmal cited as a reason for issues with the Section A questionnaire response.

The Trade Court found that "{h}ere no prejudice to any party could result because

Commerce's tolling completely prevented it." *Id.*

  As we detailed below, the administrative record of the underlying circumvention

proceedings demonstrates that the burden to Commerce of accepting Hoa Phat's

questionnaire response was low, while the negative impact on Hoa Phat from

Commerce's application of total adverse facts available—outright prohibition of

exporting fully compliant merchandise—was very high, far outweighing any burden on

Commerce.

> **B.**  **Commerce Abused Its Discretion When It Refused To Consider Hoa Phat's Questionnaire Response Submitted Nearly 400 Days Before Commerce's Final Determination**

  The key fact in the underlying proceeding was that Hoa Phat's counsel actually

did submit Hoa Phat's questionnaire response prior to the next business day after

receiving an extension until midnight.  As a result, the untimely response did not actually

impede the proceeding or impact the time that Commerce had to review the response.

The impairment to the accuracy of Commerce's determination was, however, large.  The

exclusion of Hoa Phat's questionnaire response removed the data of one of two

companies that were supposed to represent the entire industry in Vietnam.  The practical

result of Hoa Phat's exclusion was that Commerce made a <u>country-wide</u> finding about Vietnam using the data of a single company.

In the course of the underlying circumvention proceedings, Commerce selected Hoa Phat as one of two mandatory respondents in the proceeding under its authority to rely on a representative sample of foreign producers.  *See* Respondent Selection Memorandum (*citing* 19 U.S.C. § 1677f-1(c)(2)) (K.P.R. 39; T.P.R. 34; C.P.R. 38).  As a result, it was important to the representativeness of Commerce's ultimate findings that Hoa Phat's information be included.  In fact, the Federal Circuit has found that Commerce's entire respondent selection process may be unlawful if it fails to select a sufficient number of companies to represent an industry it is examining.  *YC Rubber Co. (N. Am.) LLC v. United States*, 2022 U.S. App. LEXIS 24259 at *11 (Aug. 29, 2022) ("{w}e conclude that a 'reasonable number' is generally more than one.").

We note that Hoa Phat does not raise respondent selection as a separate legal argument but merely as a demonstration that the accuracy of Commerce's determination, an important goal of these proceedings, was diminished by the rejection of Hoa Phat's questionnaire response.  In fact, Hoa Phat was selected because it was one of the top two exporters in an industry with 8 or more companies.  *See* Respondent Selection Memorandum (K.P.R. 39; T.P.R. 34; C.P.R. 38).  Commerce's ultimate <u>country-wide</u> finding therefore rested on actual data from only a single producer in Vietnam for a conclusion about the conduct of the entire Vietnamese LWRPT industry that Commerce itself found was "large".  As a result, Commerce's decision to reject and ultimately ignore Hoa Phat's initial questionnaire response greatly diminished the accuracy of its

decision and may have unfairly ascribed circumvention to numerous producers that never had a say before Commerce, violating Commerce's general obligation of accuracy. *Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1911 (Fed. Cir. 1990) (noting that the "basic purpose of the statute" is to make accurate determinations).

Turning to the burden placed on Commerce by its possible consideration of the untimely questionnaire, the record shows that the burden was very low. At the time that Commerce made the determination to reject Hoa Phat's questionnaire response it had already determined that the staff required to examine Hoa Phat's questionnaire response were available. Respondent Selection Memorandum at 4 (K.P.R. 39; T.P.R. 34; C.P.R. 38). In addition, the Trade Court has criticized Commerce for suggesting that "the usual burden of conducting a thorough review" is a basis for declining to consider information. *Ad Hoc Shrimp Trade Action Comm. v. United States*, 925 F. Supp. 2d 1367, 1371 (Ct. Int'l Trade 2013). As a result, the question is whether the timing of Hoa Phat's filing made it such that the staff members dedicated to examining Hoa Phat did not have sufficient time to review the materials prior to Commerce making its findings. That is the only possible burden that could warrant the rejection of Hoa Phat's information.

Here, it is notable that Hoa Phat's midnight due date was on the Friday before a Federal Holiday during which Commerce was closed. Additionally, Hoa Phat's entire submission was actually filed prior to the next business day after the extended deadline. Thus, at most, Hoa Phat deprived the officials of Office IV of the opportunity to begin their review of Hoa Phat's submission over the holiday weekend. It seems unlikely that any of those officials would have utilized that time in that manner and it took Commerce

thirty days to even issue its decision rejecting Hoa Phat's questionnaire response. And indeed, in Commerce's rejection memorandums, rejections of request for reconsideration, and decision memorandums there is no discussion of whether the untimely response actually imposed a burden on Commerce. Hoa Phat Rejection Memo (K.P.R. 116; T.P.R. 109; C.P.R. 118); Denial of Reconsideration (K.P.R. 121; T.P.R. 115; C.P.R. 128); PDM (K.P.R. 147; T.P.R. 140; C.P.R. 160); IDM (K.P.R. 223; T.P.R. 219; C.P.R. 236). Instead, Commerce's focus is entirely on its determination that good cause did not exist to grant further extensions. But that is not the focus of the jurisprudence in situations where the Court is confronted with whether Commerce abused its discretion in rejecting a technically untimely submission. Good cause is related to whether the extension request should have been granted and not to whether Commerce's approach to rejection of the underlying information was arbitrary.

Despite the hard line that Commerce took with Hoa Phat, Commerce itself would later extend each of its own deadlines numerous times. Indeed, Commerce ultimately stretched the final determination in these proceedings well beyond the 300-day deadline that the statute directs Commerce to attempt to meet. 19 U.S.C. § 1677j(f).

Specifically, after taking a delay prior to initiation, Commerce extended the preliminary determination on December 9, 2023 by 89 days, Prelim. Extension (K.P.R. 120; T.P.R. 114; C.P.R. 127), and later issued a further minor extension of an additional six days. Second Prelim. Extension (K.P.R. 145; T.P.R. 138; C.P.R. 158). With respect to the final determination, on May 15, 2023, Commerce, relying on a finding that the proceedings were extraordinarily complicated under 19 C.F.R. § 351.226(e)(2), extended

the deadline for the final determination by 65 days.  Final Determ. Extension (K.P.R. 179; T.P.R. 173; C.P.R. 192).  Prior to the expiry of that extended deadline, Commerce, relying now on its plenary authority to extend deadlines under 19 C.F.R. § 351.302(b), extended the deadline for the final determination an additional 90 days.  Second Final Determ. Extension (K.P.R. 209; T.P.R. 204; C.P.R. 222).  Effectively, after taking the position that receiving Hoa Phat's questionnaire response after a holiday weekend warranted rejecting it, Commerce gave itself an additional five months to make its decision, stretching the final determination 162 days beyond the 300 days statutory "deadline" in 19 U.S.C. § 1677j(f).  And yet, Commerce concluded that it was completely justified for refusing to accept Hoa Phat's questionnaire response that was filed prior to the practical time that Commerce might have actually reviewed the submission.

Counsel for Hoa Phat in this litigation, and the broader trade bar, appreciate that Commerce has a big job and must use some rules-based system for ensuring adherence to deadlines.  Commerce must, however, balance this general interest with its overarching obligation of fairness and goal of making accurate determinations.  In the context of these types of country-wide findings, the application of the deadline regulations in a manner that robs the record of one of two producers that are supposed to represent the entire country, with no attendant benefit to timing of completion of the proceedings was a clear abuse of discretion and therefore arbitrary.

C.      **Commerce's Reliance on Flexible Statutory Deadlines To Justify Denying Hoa Phat's Extension Request Was Unlawful and Unsupported by the Record**

A key feature of the administrative proceeding was whether Commerce should have granted the extension request filed by Hoa Phat prior to expiration of the midnight deadline on October 7, 2022. At the administrative level, Hoa Phat argued that Commerce's reasons for denying the request, and thus finding its submission untimely, were unfounded because Commerce's decision was premised on a flexible statutory timing provision and an erroneous determination that good cause did not exist. Hoa Phat Case Br. at 10-16 (K.P.R. 165; T.P.R. 160; C.P.R. 180) (detailing Hoa Phat's efforts to convince Commerce to grant more time for a submission covering 5 affiliates and thousands of pages). Commerce took the position that "Commerce's discretion to extend a submission deadline leads Hoa Phat to the conclusion that the statute does not place limitations on when Commerce must complete a circumvention inquiry" and further found that Hoa Phat had already received a number of extensions and "did not demonstrate that good cause supported granting Hoa Phat's last minute extension request." IDM at 14, 15 (K.P.R. 223; T.P.R. 219; C.P.R. 236).

It is true that Hoa Phat, requested and received a number of extensions. Those extensions were, however, commensurate with the extensions granted to Vina One, the other respondent, and the deadline for the initial response was actually short relative to a typical antidumping response. Further, Commerce's basis for rejecting Hoa Phat's October 5, 2022 extension request was that "Commerce must conduct these circumvention inquiries within time limits required by U.S. law, Commerce is denying

Hoa Phat's extension request."  October 6th Extension Request Denial Letter at 2 (K.P.R. 69; T.P.R. 60; C.P.R.65).  As discussed above, Commerce would later come to the conclusion that the U.S. law setting the 300-day deadline actually did not "expressly preclude{}" Commerce taking an additional five months.  *See* Second Final Determ. Extension (K.P.R. 209; T.P.R. 204; C.P.R. 222) (invoking 19 C.F.R. § 351.302(b)). Effectively, Commerce concluded that the statute meant one thing for Hoa Phat and something completely different for Commerce.

This internal inconsistency in Commerce's approach to the meaning of the 300-day deadline in 19 U.S.C. § 1677j(f) was legal error.  Federal agencies are under an obligation to interpret legal rules consistently or provide a credible explanation for such departures.  *Butterbaugh v. DOJ*, 336 F.3d 1332, 2338-39 (Fed. Cir. 2003) ("consistency is not necessarily the paramount imperative of statutory interpretation, we, like other courts, are close-minded enough to expect that administrative agencies ordinarily will construe the same term in closely related statutes consistently.") (*citing Dep't of Revenue of Or. v. ACF Indus.*, 510 U.S. 332, 342 (1994)).  Here, Commerce found that section (f) presented a binding timing provision with respect to Hoa Phat, but expressly concluded the opposite when it invoked 19 C.F.R. § 351.302(b) to extend the final determination.

That regulation states that "{u}nless expressly precluded by statute, the Secretary may, for good cause, extend any time limit established by this part."  19 C.F.R. § 351.302(b).  As a result, Commerce had to conclude that section (f) did not expressly preclude going beyond the 300-day deadline.

Here, Commerce applied one interpretation of the statutory instruction to its treatment of Hoa Phat while relying on another different interpretation when giving itself leniency.  Commerce did not even attempt to explain this obvious inconsistency, stating only that the Commerce's extension of its own deadline "is distinct from the question of whether Commerce lawfully rejected Hoa Phat's extension request for failure to demonstrate good cause."  IDM at 14 (K.P.R. 223; T.P.R. 219; C.P.R. 236).  The two issues are, however, inherently linked because part of the basis for Commerce's finding that good cause did not exist to further extend Hoa Phat's deadline was that it was under an immovable legal deadline.[4]  For these reasons, Commerce's basis for rejecting Hoa Phat's October 5 extension request was unlawful.

On the issue of good cause, Commerce's rejection is also unsupported by substantial evidence.  Commerce found that good cause did not exist to grant Hoa Phat's October 5 extension request because "Commerce must conduct these circumvention inquiries within time limits required by U.S. law."  October 6th Extension Request Denial Letter at 2 (K.P.R. 69; T.P.R. 60; C.P.R.65).  There is no further discussion or finding regarding why the bases asserted in Hoa Phat's October 5 extension request were not credited.  In the final determination, Commerce expanded slightly stating broadly that it had granted a number of prior extensions and was generally not convinced that counsel

---

[4] It is noteworthy that at the same time Commerce was asserting the importance of the 300-day deadline, it was in the process of performing a circumvention proceeding on hardwood plywood from Vietnam that would ultimately last 1,128 days.  *Certain Hardwood Plywood Products From the People's Republic of China: Initiation of Anti-Circumvention Inquiries and Scope Inquiries on the Antidumping Duty and Countervailing Duty Orders Vietnam Assembly*, 85 Fed. Reg. 36,530 (June 17, 2020); *Certain Hardwood Plywood Products From the People's Republic of China: Final Scope Determination and Affirmative Final Determination of Circumvention of the Antidumping and Countervailing Duty Orders*, 88 Fed. Reg. 46,740 (July 20, 2023).

had taken appropriate steps to ensure the submission was timely.  IDM at 14 (K.P.R. 223; T.P.R. 219; C.P.R. 236).

Commerce does not address the various other bases asserted by Hoa Phat, including the need to comply with three investigations simultaneously, the high number of affiliates, illness of counsel, and the pendency of other deadlines before Commerce. October 5th Extension Request (K.P.R. 67; T.P.R. 58; C.P.R. 63).  Those reasons do not suggest a lack of diligence on the part of counsel and are sufficiently company-specific that Commerce's observation that Vina One did submit a timely questionnaire is of no moment.  Further, as Hoa Phat observed in its administrative case brief, extensions granted in other similar proceedings were longer than the time granted to Hoa Phat here. Hoa Phat Case Br. at 13 (K.P.R. 165; T.P.R. 160; C.P.R. 180).

Hoa Phat's later extension request on October 7, 2022 notes further bases upon which Commerce should have found good cause for granting the requested exclusions. Specifically, Hoa Phat's counsel noted serious computer issues related to the formatting and filing of the documents as a result of the size of the submission.  Letter Regarding Final Extension Request (K.P.R. 83; T.P.R. 74; C.P.R. 79); October 7th Extension Request (K.P.R. 71; T.P.R. 62; C.P.R.67).  As discussed in Hoa Phat's administrative case brief, the seventy-two hour notice requirement for a manual filing essentially precluded it from actually utilizing that option in the absence of an extension request. Hoa Phat Case Br. at 15-16 (K.P.R. 165; T.P.R. 160; C.P.R. 180).  Further, Hoa Phat only learned of the rejection of its October 5 extension request on the day of the filing. October 6th Extension Request Denial Letter at 2 (K.P.R. 69; T.P.R. 60; C.P.R.65).  This

progression of events, rather than demonstrating a lack of diligence, is indicative of a

respondent that is trying desperately to comply with Commerce's deadlines but needs

more time. As a result, Commerce's determination that good cause did not exist to grant

either the October 5 extension request or the October 7 extension request was not

supported by substantial evidence.

The substantial evidence standard is a deferential one, especially where, as here,

the Court is reviewing Commerce's interpretation and implementation of its own

procedures. *Baroque Timber Indus. (Zhongshan) Co. v. United States*, 925 F. Supp. 2d

1332, 1141 (Ct. Int'l Trade 2013). That deference is not, however, limitless.

"{S}ubstantial evidence review exists precisely to ensure that . . . {the agency} achieves

minimal compliance with this obligation, which is the foundation of all honest and

legitimate adjudication." *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359,

378-79 (1998). Here, Commerce failed to meet even that low bar and its decision must

be remanded.

> **D.** **Commerce's Refusal To Accept Hoa Phat's Minimally Untimely Questionnaire Response Was Inconsistent With its Own Practice**

Hoa Phat also argued that Commerce should accept its questionnaire under its

practice regarding extension requests that are filed on the day a questionnaire is due.

This practice was the focus of the litigation in the *Oman Fasteners* case. There, the Court

found that "if a required filing encounters technical difficulties of the type that Oman

claims to have suffered here. In the real world, such a last-minute extension request is

virtually certain to obtain at least a 15 1/2-hour extension for completing a filing." *Oman Fasteners*, 2023 Ct. Int'l Trade LEXIS 28 at *12-13.

Hoa Phat argued that its October 7 extension request triggered the rule and thus Commerce should have implemented its practice and accepted the questionnaire response. *See* Req. for Reconsideration (K.P.R. 119; T.P.R. 112; C.P.R. 121). Commerce found that this particular Commerce practice was not triggered because

> the language in the preamble to the revision of 19 CFR 351.302 is clear in that the automatic extension rule applies explicitly to deadlines of 5:00 p.m. Likewise, the preamble does not speak to a scenario where (as here) Commerce acted on a timely extension request before 5:00 p.m. and a filer sought a further extension minutes before the extended filing deadline

IDM at 15-16 (K.P.R. 223; T.P.R. 219; C.P.R. 236).

When reviewing and agency's departure from its own prior practice "it is appropriate to compel the agency to explain whether: (1) good reasons prompt that departure; or (2) the prior determinations are inapposite such that it is not in fact a departure at all." *Dak Ams. LLC v. United States*, 456 F. Supp. 3d 1340, 1356 (Ct. Int'l Trade 2020); *Clearon Corp. v. United States*, 38 CIT 1122, 1133 (2014) (holding that a failure to adequately address a departure from past practice is grounds for remand). Further, the Supreme Court has found that an agency may depart from its past practice only if it also provides an adequate explanation of its reasons for doing so. *FCC v. Fox TV Stations, Inc.*, 556 U.S. 502, 515 (2009).

Here Commerce relies on a technicality to distinguish this case from other invocations of this practice, but its reading of its own practice is illogical. Essentially, Commerce is suggesting that in order to benefit from the "virtually automatic" extension

discussed in *Oman Fasteners*, Hoa Phat should have stayed silent about its difficulties, eschewed its timely extension requests, and instead filed a *pro forma* request at 4:59 PM in order to ensure that it could actually have until 8:30 AM on the following business day to file its response.  In this case that would have given Hoa Phat an additional three days to file its initial questionnaire response.  Instead, counsel for Hoa Phat was honest with Commerce, brought the issues it was having to the attention of agency officials, and was punished for doing so.

Commerce's action here is totally contrary to the purpose and spirit of these timing provisions.  The stated purpose of the regulatory amendments that include the 8:30 AM language is to address

> the situation in which a party filed an extension request so close to the time limit that the Department did not have the opportunity to respond to the request before the time limit expires. These last-minute extension requests often resulted in confusion among the parties, difficulties in the Department's organization of its work, and undue expenditures of Departmental resources, which impeded the Department's ability to conduct AD and CVD proceedings in a timely and orderly manner.

*Extension of Time Limits*, 78 Fed. Reg. 57,790 (Sept. 20, 2013).  Commerce's finding here would have the opposite effect incentivizing respondents to wait until the last minute to file extension requests in order to gain additional time.  Further, Commerce has constantly admonished the trade bar to file extension requests early and otherwise keep it apprised of issues with questionnaire responses.  Perversely, Hoa Phat would have been better off avoiding the type of candor and forward-thinking that the regulations are designed evoke.  Here, the Court can apply the rule of reason and find that Commerce's

determination that the 8:30 AM provision did not apply was inconsistent with its prior

practice, departed from the broader purpose of the regulation, and was deeply unfair.

In short, there are multiple reasons why Commerce's decision to refuse to accept

Hoa Phat's questionnaire response is contrary to law and therefore unlawful.


## II.    COMMERCE'S APPLICATION OF FACTS AVAILABLE WITH AN ADVERSE INFERENCE WAS UNLAWFUL

As a result of finding that Hoa Phat's questionnaire response was untimely,

Commerce removed the data from the record and determined that it would apply adverse

facts available with and adverse inference to Hoa Phat.  In the preliminary determination,

Commerce stated that "Commerce found that Hoa Phat did not make a good faith effort

to submit its questionnaire responses in a timely manner and rejected the untimely filed

responses from the record." Korea PDM at 5 (K.P.R. 147); Taiwan PDM at 5 (T.P.R.

140); China PDM at 6 (C.P.R. 160).  Commerce then concluded that

> Hoa Phat failed to provide timely information in the form and manner
> requested, and significantly impeded this circumvention inquiry, as
> described above. Furthermore, Commerce preliminarily determines that, by
> failing to provide the requested information in a timely manner, Hoa Phat
> failed to cooperate by not acting to the best of its ability by not complying
> with a request for information in this inquiry.

Korea PDM at 5 (K.P.R. 147); Taiwan PDM at 5 (T.P.R. 140); China PDM at 6 (C.P.R.

160)The practical result of Commerce's decision was that Hoa Phat was denied the

ability to participate in the certification regime established for other respondents and

lacked any additional opportunities to reverse that finding at the administrative level

other than presenting its arguments in its case brief.

In its administrative case brief, Hoa Phat argued that Commerce's application of facts available with an adverse inference was unlawful because the absence of Hoa Phat's submission did not trigger the application of an adverse inference against Hoa Phat and was otherwise inconsistent with the controls in 19 U.S.C. § 1677e.  Commerce, however, declined to make any adjustments in the final determination, finding that "barring an uncooperative respondent from participating in certification is necessary to encourage cooperation with Commerce's inquiry. Commerce has a duty both to ensure that an uncooperative party does not benefit from its lack of cooperation and to encourage its future compliance."  Korea  IDM at 22 (K.P.R. 223), Taiwan IDM at 22 (T.P.R. 219); China IDM at 21 (C.P.R. 236). .  For the reasons set forth below, Commerce's finding was unlawful and otherwise unsupported by the record.

The application of facts available is governed by 19 U.S.C. § 1677e which establishes a set of procedures for determining whether it is appropriate to invoke this provision as follows:

(a) In general

If—

(1) necessary information is not available on the record, or

(2) an interested party or any other person—

> (A) withholds information that has been requested by the administering authority or the Commission under this subtitle,

> (B) fails to provide such information by the deadlines for submission of the information or in the form and manner requested, subject to subsections (c)(1) and (e) of section 1677m of this title,

> (C) significantly impedes a proceeding under this subtitle, or

> (D) provides such information but the information cannot be verified as provided in section 1677m(i) of this title,

the administering authority and the Commission shall, <u>subject to section 1677m(d) of this title</u>, use the facts otherwise available in reaching the applicable determination under this subtitle.

19 U.S.C. § 1677e.

As detailed above, Commerce must first conclude whether necessary information is missing from the record or determine that an interested party has withheld information, failed to provide information, impeded the proceeding, or provided unverifiable information. 19 U.S.C. § 1677e(a).

Importantly, these provisions are subject to a <u>separate provision</u> 19 U.S.C. § 1677m(d) which states as follows,

If the administering authority or the Commission determines that a response to a request for information under this subtitle does not comply with the request, the administering authority or the Commission (as the case may be) <u>shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency</u> in light of the time limits established for the completion of investigations or reviews under this subtitle. If that person submits further information in response to such deficiency and either—

(1) the administering authority or the Commission (as the case may be) finds that such response is not satisfactory, or

(2) such response is not submitted within the applicable time limits,

then the administering authority or the Commission (as the case may be) may, subject to subsection (e), disregard all or part of the original and subsequent responses.

19 U.S.C. § 1677m(d). Here, Commerce fails to even mention this important control much less actually offer Hoa Phat an opportunity to remedy the deficiency identified.

Instead, Commerce proceeded directly to 19 U.S.C. § 1677e(b), applying an adverse inference to Hoa Phat.  Specifically, as an adverse inference, Commerce found that:

> Hoa Phat produced and/or exported {merchandise} subject to this inquiry and, as explained below, that the criteria for finding circumvention with respect to Hoa Phat have been met. In addition, as part of our application of AFA, we preliminarily determine that Hoa Phat is not eligible to certify that specific entries of merchandise were not manufactured using {subject} HRS.

Korea PDM at 5-6 (K.P.R. 147); Taiwan PDM at 5 (T.P.R. 140); China PDM at 6 (C.P.R. 160).  These findings suffer from a number of issues but the primary one is that Commerce has essentially conflated the facts available analysis with the adverse inference analysis.  Those two subsections are separate and have separate legal criteria.

Under the statutory scheme Commerce must first find that Hoa Phat failed to comply with an information request. It must then give Hoa Phat an opportunity to correct the deficiency, if practicable.  Only then may Commerce apply an adverse inference to Hoa Phat.  Commerce's analysis treats these distinct steps as an automatic application but more analysis is required.  *See Saha Thai Steel Pipe v. United States*, 605 F. Supp. 3d 1348, 1363 (Ct. Int'l Trade 2022); (finding that a failure to provide an opportunity to remedy under 1677m(d) or to explain the reasons for an adverse inference were grounds for remand); *see also Garg Tube Exp. LLP v. United States*, 2024 Ct. Int'l Trade LEXIS 46 at *13 (Apr. 8, 2024) (remanding a determination under 1677e for a lack of precision). Further, Commerce may not make an adverse inference that is overly punitive and would

diminish the overarching objective of accuracy.  *Timken Co. v. United States*, 354 F.3d 1334, 1340 (Fed. Cir. 2004).

Given the nature of the circumvention proceeding that Commerce was conducting, there were two important conclusions that Commerce relied on.  First, that circumvention was occurring and second, that Hoa Phat should not be allowed to certify which of its shipments were not made with circumventing substrate.

The first conclusion was not particularly adverse since it was the overarching conclusion that Commerce made on the basis of reviewing Vina One's data.  The second conclusion, however, has no grounds in the record and by Commerce's own admission was purely punitive.  Commerce states that "barring an uncooperative respondent from participating in certification is necessary to encourage cooperation with Commerce's inquiry."  Korea  IDM at 22 (K.P.R. 223), Taiwan IDM at 22 (T.P.R. 219); China IDM at 21 (C.P.R. 236).

Notwithstanding the fact that Hoa Phat actually tried to comply, the implicit conclusion that, unlike all of the other respondents, Hoa Phat did not have the ability to understand which of its exports were made using which substrate is entirely Commerce's invention.  In fact, there is actually no factual or evidentiary support for Commerce's factual conclusion that Hoa Phat was not able to distinguish the country of origin of the hot-rolled substrate used to produce its LWRPT.  Indeed, as noted in the statement of facts, Hoa Phat's submitted questionnaire responses were responsive to Commerce's questions and there is no suggestion in the record that the underlying data would not lead Commerce to the same conclusion it made for the other companies.  In a practical sense

there was no information missing from the record with respect to the implicit conclusion that Hoa Phat could not track which hot-rolled suppliers provided the inputs for its exports to the United States.

This is where 19 U.S.C. § 1677m(d) comes in.  Having determined that certain facts were absent, specifically whether Hoa Phat could track the origin of the hot-rolled steel feedstock used to produce its LWRPT exports to the United States, Commerce was under an obligation to give Hoa Phat an opportunity to address the absence of that information.  This could have taken the form of a truncated supplemental questionnaire or some other form of information gathering or Commerce simply could have analyzed the questionnaire response that it had on hand.  By failing to perform that exercise Commerce violated the statute.

The only way that Commerce can avoid the command of 19 U.S.C. § 1677m(d) is if it determines that seeking this type of information is not practicable.  That determination is nowhere in Commerce's written decision.  That omission is an error of law and it is not harmless error.  Commerce's failure to observe this statutory command directly resulted in the impermissibly punitive application of facts available with and adverse inference and was therefore unlawful.

## CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons, Hoa Phat asks that the Court find Commerce's rejection of its questionnaire response an abuse of discretion and otherwise unlawful and remand this case to Commerce so that it may reopen the record, accept the response, and make a decision that is consistent with the record and the law.  Alternatively, Hoa Phat asks that the Court find Commerce's application of facts available with and adverse inference to Hoa Phat to be unlawful and remand the case so that Commerce may either provide Hoa Phat with the benefit of the protections of 19 U.S.C. § 1677m(d) or explain why that provision should not apply in this circumstance.

/s/ Daniel L. Porter

Daniel L. Porter
James C. Beaty
Katherine R. Afzal

**Curtis, Mallet-Prevost, Colt & Mosle LLP**
1717 Pennsylvania Avenue, NW
Washington, D.C., 20006
(202) 452 7340

*Counsel for Hoa Phat Steel Pipe Co., Ltd.*

**Word Count Certificate of Compliance**

This brief has been prepared utilizing Microsoft Word 2010 using a proportionally spaced typeface 13 point Times New Roman font.

In accordance with the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that this brief complies with the word limitations set forth in the Chambers Procedures.  Specifically, excluding those exempted portions of the brief as set forth in 2B(1) of the Chambers Procedures, I hereby certify that this brief contains 8,821.  In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

/s/ Daniel L. Porter

Daniel L. Porter

**Curtis, Mallet-Prevost, Colt & Mosle LLP**
1717 Pennsylvania Avenue, NW
Washington, D.C., 20006

*Counsel for Hoa Phat Steel Pipe Co., Ltd.*

Dated: April 25, 2024