# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| HOA PHAT STEEL PIPE CO., LTD., <br><br> *Plaintiff,* <br><br> *v.* <br><br> UNITED STATES, <br><br> *Defendant,* <br><br> *and* <br><br> ATLAS TUBE INC.; BULL MOOSE TUBE COMPANY; MARUICHI AMERICAN CORPORATION; SEARING INDUSTRIES; UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC; VEST INC.; NUCOR TUBULAR PRODUCTS INC., <br><br> *Defendant-Intervenors.* | Consol. Court No. 23-00248 <br><br> **PUBLIC DOCUMENT** |

## DEFENDANT-INTERVENORS' RESPONSE IN OPPOSITION TO PLAINTIFF'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

Roger B. Schagrin, Esq.
Jeffrey D. Gerrish, Esq.
Nicholas C. Phillips, Esq*.
**SCHAGRIN ASSOCIATES**
900 Seventh Street, NW, Suite 500
Washington, DC 20001
*Counsel for Atlas Tube Inc.; Bull Moose Tube Company; Maruichi American Corporation; Searing Industries; Vest Inc.; and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC*

Alan H. Price, Esq.
Robert E. DeFrancesco III, Esq.
Jake R. Frischknecht, Esq.
Kimberly A. Reynolds, Esq.
**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
*Counsel for Nucor Tubular Products Inc.*

*Admitted only in New York. Practice limited to matters before federal courts and agencies.

PUBLIC DOCUMENT

**TABLE OF CONTENTS**

I.     RULE 56.2 STATEMENT ............................................................................... 1

   A.   Administrative Determination Under Review ..................................................... 1

   B.   Issues Presented for Review ........................................................................... 2

II.    STATEMENT OF FACTS ................................................................................ 3

III.   STANDARD OF REVIEW .............................................................................. 15

IV.    ARGUMENT ................................................................................................. 17

   A.   Summary of Argument ................................................................................... 17

   B.   Commerce Acted Within Its Authority and Discretion to Reject Hoa Phat's Untimely
        Questionnaire Responses ............................................................................... 18

        1. Commerce Possesses Broad Legal Authority to Set and Enforce Deadlines............... 19

        2. Commerce Was Within its Authority to Enforce Hoa Phat's Deadline ...................... 27

   C.   Commerce Properly Applied AFA on the Basis of Hoa Phat's Untimely Questionnaire
        Responses ..................................................................................................... 38

V.     CONCLUSION .............................................................................................. 42

PUBLIC DOCUMENT

# TABLE OF AUTHORITIES

**Cases**

*Ajmal Steel Tubes & Pipes Indus. LLC v. United States*, 2022 WL 15943670
(Ct. Int'l Trade Oct. 28, 2022) .......................................................................... 25, 26

*ArcelorMittal USA LLC v. United States*, 399 F. Supp. 3d 1271 (Ct. Int'l Trade 2019).............. 24

*Artisan Mfg. Corp. v. United States*, 978 F. Supp. 2d 1334 (Ct. Int'l Trade 2014)...................... 24

*Bebitz Flanges Works Priv. Ltd. v. United States*, 433 F. Supp. 3d 1297
(Ct. Int'l Trade 2020) ........................................................................ 22, 34, 39, 40

*Bebitz Flanges Works Private Limited v. United States*, 433 F. Supp. 3d 1309
(Ct. Int'l Trade 2020) .............................................................................................. 24

*Bowman Transp. Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281 (1974) ......................... 16

*Celik Halat ve Tel Sanayi A.S. v. United States*, 557 F. Supp. 3d 1348 (Ct. Int'l Trade 2022).... 25

*Consol. Bearings Co. v. United States*, 412 F. 3d 1266 (Fed. Cir. 2005)................................... 16

*Consol. Fibers, Inc. v. United States*, 535 F. Supp. 2d 1345 (Ct. Int'l Trade 2008) ................... 16

*Consolo v. Federal Maritime* Comm'n, 383 U.S. 607 (1966)...................................................... 15

*Dongtai Peak Honey Indus. Co. v. United States*, 777 F.3d 1343 (Fed. Cir. 2015) .............. passim

*Dongtai Peak Honey Indus. Co., Ltd. v. United States*, 971 F. Supp. 2d 1234
(Ct. Int'l Trade 2014)............................................................................................... 21

*Eckstrom Indus., Inc. v. United States*, 254 F.3d 1068 (Fed. Cir. 2001) ..................................... 36

*Ferrostaal Metals Gmbh v. United States*, 518 F. Supp. 3d 1357 (Ct. Int'l Trade 2021) ........... 41

*Grobest & I-Mei Indus. (Vietnam) Co. v. United States*, 815 F. Supp. 2d 1365
(Ct. Int'l Trade 2012)............................................................................................... 24

*Hyosung Corp. v. United States*, 35 C.I.T. 343 (2011)................................................................ 29

*Hyundai Elecs. Indus. Co. v. I.T.C.*, 899 F.2d 1204 (Fed. Cir. 1990).................................... 16, 20

*In re Gartside*, 203 F.3d 1305 (Fed. Cir. 2000)........................................................................... 16

*Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927 (Fed. Cir. 1984)............................. 16

*Maverick Tube Corp. v. United States*, 107 F. Supp. 3d 1318 (Ct. Int'l Trade 2015)................. 20

*Max Fortune Indus. Co. Ltd. v. United States*, 37 C.I.T. 549 (2013) .......................................... 41

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut.*, 463 U.S. 29 (1983) ........................................... 16

*Nippon Steel Corp. v. United States*, 337 F.3d 1373 (Fed. Cir. 2003)......................................... 41

*NTN Bearing Corp. v. United States*, 74 F.3d 1204 (Fed. Cir. 1995).............................................. 24

*Oman Fasteners, LLC v. United States*, 2023 WL 2233642 (Ct. Int'l Trade Feb. 15, 2023)........ 25

*PSC VSMPO-Avisma Corp. v. United States*, 688 Fed. Cir. 751 (Fed. Cir. 2012)............ 19, 21, 23, 30

*Reiner Brach GmbH & Co. v. United States*, 206 F. Supp. 2d 1323
   (Ct. Int'l Trade 2002), *aff'd*, 300 Fed. Appx. 934 (Fed. Cir. 2008)) ........................................ 19

*Shelter Forest Int'l Acquisition, Inc. v. United States*, 497 F. Supp. 3d 1388
   (Ct. Int'l Trade 2021)............................................................................................................ 24, 25

*Star Fruits S.N.C. v. United States*, 393 F. 3d 1277 (Fed. Cir. 2005)............................................ 16

*Suramerica de Aleaciones Laminadas, C.A. v. United States*, 44 F.3d 978 (Fed. Cir. 1994)
   (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197 (1938)) ............................................... 15

*Tau-Ken Temir LLP v. United States*, 587 F. Supp. 3d 1346 (Ct. Int'l Trade 2022)........ 22, 34, 41

*Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519 (1978)......... 19

*Wheatland Tube Co. v. United States*, 161 F.3d 1365 (Fed. Cir. 1998) .................................. 17, 20

*Yantai Yimken Co. v. United States*, 521 F. Supp. 2d 1356 (Ct. Int'l Trade 2007),
   *aff'd*, 300 F. App'x 934 (Fed. Cir. 2008)............................................................................ 19, 35

**Statutes and Regulations**

19 C.F.R. § 351.104(a)(2)(iii)................................................................................................... 13

19 C.F.R. § 351.226(e)(1)......................................................................................................... 31

19 C.F.R. § 351.226(e)(2)..................................................................................................... 5, 31

19 C.F.R. § 351.226(f)(3)................................................................................................ 4, 19, 33

19 C.F.R. § 351.302............................................................................................................ 26, 36

19 C.F.R. § 351.302(c)............................................................................................................. 26

19 C.F.R. § 351.302(d)(1)(i).......................................................................................... 13, 20, 40

19 U.S.C. § 1516a(b)(1)(B)(i).................................................................................................. 15

19 U.S.C. § 1677e(a)................................................................................................................. 2

19 U.S.C. § 1677e(a)(2)........................................................................................ 14, 18, 38, 39

19 U.S.C. § 1677e(a)(2)(B) and (C)........................................................................................ 40

19 U.S.C. § 1677e(b)(1)........................................................................................................... 40

19 U.S.C. § 1677e(b)(1)(A)...................................................................................................... 14

19 U.S.C. § 1677j(f).................................................................................................................. 31

19 U.S.C. § 1677m(d)......................................................................................................... 38, 39

5 U.S.C. § 706(2)(A) ............................................................................................ 16, 20

**Federal Register Notices**

*Certain Corrosion-Resistant Steel Products From the People's Republic of China:*
   *Affirmative Preliminary Determination of Anti-Circumvention Inquiries on the Antidumping*
   *Duty and Countervailing Duty Orders*, 82 Fed. Reg. 58,170 (Dec. 11, 2017) .......................... 4

*Circular Welded Carbon Quality Steel Pipe From the People's Republic of China*: *Certain*
   *Circular Welded Non-Alloy Steel Pipe From the Republic of Korea*; *Certain Welded Carbon*
   *Steel Standard Pipes and Tubes From India*; *Certain Circular Welded Carbon Steel Pipes and*
   *Tubes From Taiwan*; *Certain Circular Welded Non-Alloy Steel Pipe From Taiwan*; *Light-*
   *Walled Rectangular Pipe and Tube From the People's Republic of China*; *Light-Walled*
   *Rectangular Pipe and Tube From the Republic of Korea*; *Light-Walled Welded Rectangular*
   *Carbon Steel Tubing From Taiwan: Initiation of Circumvention Inquiries on the Antidumping*
   *and Countervailing Duty Orders*, 87 Fed. Reg. 47,711 (Dep't Commerce Aug. 4, 2022) and
   accompanying Circumvention Initiation Memorandum ............................................................ 3

*Circular Welded Carbon-Quality Steel Pipe from the Socialist Republic of Vietnam:*
   *Final Determination of Sales at Less Than Fair Value*, 77 Fed. Reg. 64,483
   (Oct. 22, 2012) ...................................................................................................... 4

*Circular Welded Carbon-Quality Steel Pipe From the Socialist Republic of Vietnam: Final*
   *Determination of Sales at Less Than Fair Value*, 81 Fed. Reg. 75,042 (Oct. 28, 2016) ............ 4

*Extension of Time Limits*, 78 Fed. Reg. 57,790 (Dep't Commerce Sept. 20, 2013) ............... 13, 36

*Light-Walled Rectangular Pipe and Tube From the People's Republic of China: Preliminary*
   *Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing*
   *Duty Orders*, 88 Fed. Reg. 21,985 (Dep't Commerce Apr. 12, 2023) and accompanying
   *Preliminary Decision Memorandum* (Apr. 6, 2023) ................................................................ 14

*Light-Walled Rectangular Pipe and Tube From the Republic of Korea: Final Affirmative*
   *Determination of Circumvention of the Antidumping Duty Order*, 88 Fed. Reg. 77,266
   (Dep't Commerce Nov. 9, 2023) and accompanying Issues and Decision Memorandum
   (Nov. 2, 2023) ........................................................................................................ 2

*Light-Walled Rectangular Pipe and Tube From the Republic of Korea: Preliminary Affirmative*
   *Determination of Circumvention of the Antidumping Duty Order*, 88 Fed. Reg. 22,002
   (Dep't Commerce Apr. 12, 2023) and accompanying *Preliminary Decision Memorandum*

PUBLIC DOCUMENT

(Apr. 6, 2023)................................................................................................................. 14

*Light-Walled Welded Carbon Steel Tubing From Taiwan: Final Affirmative Determination of Circumvention of the Antidumping Duty Order*, 88 Fed. Reg. 77,274 (Dep't Commerce Nov. 9, 2023) and accompanying Issues and Decision Memorandum (Nov. 2, 2023) .............. 2

*Light-Walled Welded Rectangular Carbon Steel Tubing From Taiwan: Preliminary Affirmative Determination of Circumvention of the Antidumping Duty Order*, 88 Fed. Reg. 21,980 (Dep't Commerce Apr. 12, 2023) and accompanying *Preliminary Decision Memorandum* (Apr. 6, 2023)................................................................................................................. 14

*See Light-Walled Rectangular Pipe and Tube From the People's Republic of China: Final Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 88 Fed. Reg. 77,283 (Dep't Commerce Nov. 9, 2023) and accompanying Issues and Decision Memorandum (Nov. 2, 2023) ........................................... 2

On behalf of Defendant-Intervenors Atlas Tube Inc., Bull Moose Tube Company, Maruichi American Corporation, Searing Industries, Vest Inc., the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC, and Nucor Tubular Products Inc. ("Defendant-Intervenors"), we hereby submit this response in opposition to the motion for judgment on the agency record and accompanying brief filed by Hoa Phat Steel Pipe Co., Ltd. ("Hoa Phat") in the above-captioned action. *See* Rule 56.2 Motion and Brief in Support of Hoa Phat Steel Pipe Co. Ltd.'s Motion for Judgment on the Agency Record (April 25, 2024), ECF No. 41 ("Pl.'s Br.").   For the reasons discussed below, Defendant-Intervenors respectfully request that this Court reject the arguments raised by Hoa Phat and affirm the determination of the U.S. Department of Commerce ("Commerce") to reject Hoa Phat's untimely questionnaire responses and apply adverse facts available ("AFA") in three parallel anti-circumvention inquiries concerning the antidumping and countervailing duty orders on *Light-Walled Rectangular Pipe and Tube from the People's Republic of China* and the antidumping orders on *Light-Walled Rectangular Pipe and Tube from the Republic of Korea* and *Light-Walled Welded Rectangular Carbon Steel Tubing from Taiwan* (the "Orders").

## I.      RULE 56.2 STATEMENT

### A.      Administrative Determination Under Review

Hoa Phat's appeal arises from Commerce's anticircumvention inquiry concerning the antidumping and countervailing duty orders on light-walled rectangular pipe and tube ("LWR") from China and the antidumping duty orders on LWR from Korea and Taiwan. *See Light-Walled Rectangular Pipe and Tube From the People's Republic of China: Final Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 88 Fed. Reg. 77,283 (Dep't Commerce Nov. 9, 2023) and accompanying Issues and Decision

Memorandum (Nov. 2, 2023) (CPR 236); *Light-Walled Rectangular Pipe and Tube From the Republic of Korea: Final Affirmative Determination of Circumvention of the Antidumping Duty Order*, 88 Fed. Reg. 77,266 (Dep't Commerce Nov. 9, 2023) and accompanying Issues and Decision Memorandum (Nov. 2, 2023) (KPR 223); *Light-Walled Welded Carbon Steel Tubing From Taiwan: Final Affirmative Determination of Circumvention of the Antidumping Duty Order*, 88 Fed. Reg. 77,274 (Dep't Commerce Nov. 9, 2023) and accompanying Issues and Decision Memorandum (Nov. 2, 2023) (TPR 219) (collectively, the "Final Determination" and "IDM").[1]

### B.    Issues Presented for Review

This action presents the following issues for consideration by the Court:

1.   Was Commerce's rejection of Hoa Phat's initial questionnaire response as untimely supported by substantial evidence and in accordance with law?

<u>Defendant-Intervenors' position</u>:  Yes. Commerce possesses broad authority to set and enforce its administrative deadlines. Even after receiving four extensions of time to file its responses to Commerce's initial questionnaire, Hoa Phat failed to submit its responses by the extended deadline. Hoa Phat's failure to timely submit its responses occurred due to factors that were foreseeable and redressable. However, Hoa Phat did not take reasonable measures to ensure its submissions were timely. Commerce's rejection of Hoa Phat's untimely responses was therefore within Commerce's discretion and supported by substantial evidence.

2.   Was Commerce's application of facts otherwise available with an adverse inference to Hoa Phat supported by substantial evidence and in accordance with law?

<u>Defendant-Intervenors' position</u>:  Yes. Hoa Phat failed to put forth its maximum effort to respond to Commerce's questionnaire in a timely manner. Commerce rejected Hoa Phat's untimely questionnaire response in each anti-circumvention inquiry, creating a gap in the record. Commerce complied with 19 U.S.C. § 1677e(a) by filling this gap with facts otherwise available. Commerce separately and reasonably determined that Hoa Phat failed to cooperate by not acting to the best of its ability to comply with

---

[1] This case has been consolidated from appeals of the circumvention determinations for each country, and therefore each determination has a separate administrative record. In its brief, Hoa Phat adopted the designations "C.P.R." and "C.C.R." for the public and confidential records, respectively, in the China proceeding; "K.P.R." and "K.C.R." for the Korea proceeding; and "T.P.R." and "T.C.R." for the Taiwan proceeding. For the Court's convenience, Defendant-Intervenors adopt the same designations in their citations to the administrative records.

Commerce's requests for information and therefore lawfully used an adverse inference in selecting from the facts otherwise available.

## II.    STATEMENT OF FACTS

On August 4, 2022, Commerce published initiation notices for simultaneous anti-circumvention inquiries to determine whether imports of LWR from Vietnam were circumventing antidumping and countervailing duty orders on LWR from China, Korea, and Taiwan. *Circular Welded Carbon Quality Steel Pipe From the People's Republic of China*; *Certain Circular Welded Non-Alloy Steel Pipe From the Republic of Korea*; *Certain Welded Carbon Steel Standard Pipes and Tubes From India*; *Certain Circular Welded Carbon Steel Pipes and Tubes From Taiwan*; *Certain Circular Welded Non-Alloy Steel Pipe From Taiwan*; *Light-Walled Rectangular Pipe and Tube From the People's Republic of China*; *Light-Walled Rectangular Pipe and Tube From the Republic of Korea*; *Light-Walled Welded Rectangular Carbon Steel Tubing From Taiwan: Initiation of Circumvention Inquiries on the Antidumping and Countervailing Duty Orders*, 87 Fed. Reg. 47,711 (Dep't Commerce Aug. 4, 2022) and accompanying Circumvention Initiation Memorandum (CPR 24, KPR 26, TPR 18). Commerce pursued these three circumvention inquiries in parallel, as each concerned whether LWR exported from Vietnam using hot-rolled steel substrate from China, Korea, and Taiwan circumvented the Orders. *See id.*

On August 30, 2022, Commerce selected Hoa Phat and Vina One Steel Manufacturing Corp. ("Vina One") as the mandatory respondents in each of the LWR inquiries. *See* Memorandum re: *Circumvention Inquiry on Light-Walled Rectangular Pipe and Tube from the People's Republic of China: Respondent Selection*, (August 30, 2022) (CPR 38); Memorandum re*: Circumvention Inquiry on Light-Walled Rectangular Pipe and Tube from the Republic of Korea: Respondent Selection*, (August 30, 2022) (KPR 39); Memorandum re*: Circumvention Inquiry on Light-Walled Welded Rectangular Carbon Steel Tubing From Taiwan: Respondent Selection* (August 30, 2022)

(TPR 34). On September 6, 2022, Commerce issued its initial questionnaire to Hoa Phat and Vina

One. Circumvention Inquiry Initial Questionnaire (Sept. 6, 2022) ("Initial Questionnaire") (CPR

39, KPR 43, TPR 35). Hoa Phat had over a decade of experience with Commerce proceedings,

including anti-circumvention inquiries, and was familiar with the effort required to respond to

Commerce's questionnaires.[2] Pursuant to its authority to set deadlines for questionnaire responses

in anti-circumvention inquiries, Commerce set a due date of September 20, 2022 for Hoa Phat's

and Vina One's responses. *See* 19 C.F.R. § 351.226(f)(3) ("Questionnaire responses are due on

the date specified by the Secretary.").

After receiving the questionnaire, Hoa Phat embarked on a series of extension requests that

Commerce, at its discretion, sought to accommodate. Hoa Phat filed the first of its six extension

requests on September 7, 2022, seeking an additional six weeks to complete its response. *See* Letter

from Hoa Phat to Commerce re*: Extension request for submission of responses to Circumvention

Inquiry Initial Questionnaire* (Sept. 7, 2022) ("First Extension Request") (CPR 41, KPR 45, TPR

39). Commerce granted Hoa Phat's request in part and extended its deadline by one week, to

September 27, 2022. *See* Letter from Commerce to Hoa Phat re*: First Extension Request* (Sept.

14, 2022) ("First Extension of Time") (CPR 45, KPR 50, TPR 41).

On September 21, 2022, Hoa Phat filed its second extension request. *See* Letter from Hoa

Phat to Commerce re*: Request for Extension of Initial Questionnaire* (Sept. 21, 2022) ("Second

Extension Request") (CPR 53, KPR 57, TPR 48). Hoa Phat sought one additional week "in which

---

[2] *See, e.g.*, *Circular Welded Carbon-Quality Steel Pipe from the Socialist Republic of Vietnam: Final Determination of Sales at Less Than Fair Value*, 77 Fed. Reg. 64,483 (Oct. 22, 2012); *Circular Welded Carbon-Quality Steel Pipe From the Socialist Republic of Vietnam: Final Determination of Sales at Less Than Fair Value*, 81 Fed. Reg. 75,042 (Oct. 28, 2016); *Preliminary Decision Memorandum accompanying Certain Corrosion-Resistant Steel Products From the People's Republic of China: Affirmative Preliminary Determination of Anti-Circumvention Inquiries on the Antidumping Duty and Countervailing Duty Orders*, 82 Fed. Reg. 58170 (Dec. 11, 2017) at 4-5 ("After selection of the mandatory respondents, . . . Hoa Phat Steel Pipe Co., Ltd. . . . timely filed voluntary questionnaire responses.").

to submit Hoa Phat's response to Question 46 of the initial questionnaire, and Appendix IV (Factors of Production)." *Id.* at 1-2. Hoa Phat explained that it needed additional time to respond to Question 46 and Appendix IV because the former required information from Hoa Phat's affiliates and the latter involved complex calculations. *Id.* at 2. It sought no extension to respond to the other parts of the questionnaire.

On September 23, 2022, Commerce issued a memorandum in each country segment covering various issues raised by the parties to the anti-circumvention inquiry, in which it extended the deadline for all parties' questionnaire responses by one week, to October 4, 2022. *See* Memorandum from Commerce to All Interested Parties re*: Response to Modification and Extension Requests* (Sept. 23, 2022) ("Second Extension of Time") (CPR 55, KPR 59, TPR 50). The Second Extension noted that "although Hoa Phat's request for a one-week extension pertained only to Question 46 and Appendix IV (Factors of Production) of the {Initial Questionnaire}, because we are granting a one-week extension to all interested parties, Hoa Phat's response to all sections of the {Initial Questionnaire} is due no later than 5:00 p.m. ET, October 4, 2022." *Id.* at 4. Thus, at this point, Hoa Phat had received an extension that went beyond the needs it had represented to Commerce. Commerce warned that "it will be difficult for Commerce to consider granting any further extensions of time given the regulatory deadline that Commerce is required to meet." Commerce's direction was consistent with 19 C.F.R. § 351.226(e)(2), which provides that Commerce "shall, to the maximum extent practicable, make the determinations under this section within 300 days from the date of the initiation of {an anti-circumvention} inquiry under this section."

Hoa Phat soon returned to seek additional relief from Commerce. On September 30, 2022, Hoa Phat filed its third extension request. *See* Letter from Hoa Phat to Commerce re*: Request for*

*Extension of Initial Questionnaire* (Sept. 30, 2022) ("Third Extension Request") (CPR 58, KPR 62, TPR 53). Reciting an incorrect due date for the response, October 3, 2022, Hoa Phat requested "an additional four-day extension, until October 7, 2022, in which to submit the initial response." *Id.* at 1-2. Hoa Phat noted that "{t}he company has shared initial drafts of the response with counsel; however, additional time is needed to address many of the complex and legal issues raised by the questionnaire{.}" *Id.* Demonstrating remarkable flexibility, Commerce granted Hoa Phat's request, and set a new deadline of 5:00 p.m. on October 7, 2022. *See* Letter from Commerce to Hoa Phat re*: Third Extension of Deadline for Submission of Initial Questionnaire Responses* (Oct. 3, 2022) ("Third Extension of Time") (CPR 61, KPR 65, TPR 56).

Not to be deterred, Hoa Phat yet again revised its representations to Commerce concerning the time it needed to complete its questionnaire responses. On October 5, 2022, Hoa Phat filed its fourth extension request. *See* Letter from Hoa Phat to Commerce re*: Request for Extensions of the Initial Questionnaire* (Oct. 5, 2022) ("Fourth Extension Request") (CPR 63, KPR 67, TPR 58). This time, Hoa Phat sought an additional one-week extension to October 14, 2022. The extension request stated that "{a}lthough Hoa Phat has shared drafts of the responses and the voluminous supporting documentation with counsel," Hoa Phat needed more time "to finalize compilation and review of the response and all supporting documents in the manner and form requested by Commerce." *Id.* at 2-3. For the first time in the proceeding, Commerce denied Hoa Phat's extension request. *See* Letter from Commerce to Hoa Phat re*: Request for Fourth Extension of Deadline for Submission of Initial Questionnaire Responses* (Oct. 6, 2022) ("Denial of Fourth Extension Request") (CPR 65, KPR 69, TPR 60). The deadline for Hoa Phat's questionnaire responses remained 5:00 p.m. on October 7, 2022.

At 4:15 p.m. on October 6, 2022, following the receipt of Commerce's Denial of Fourth Extension Request, counsel for Hoa Phat called Commerce and "stated that the response includes thousands of pages, and as such, she was not sure if the responses could be filed by the then current deadline of 5:00 p.m. on October 7." Memorandum from Case Team for Circumvention Inquiry Segments Antidumping and Countervailing Duty Operations to File re: *Rejection of Hoa Phat Steel Pipe Co., Ltd. Response to Initial Questionnaire* (Nov. 17, 2022) ("Rejection Memo") (CPR 118, KPR 116, TPR 109), at 3. Commerce recommended that counsel begin the filing process early. *Id.*

At approximately 12:30 p.m. on October 7, 2022 – shortly before the 5:00 p.m. deadline – counsel for Hoa Phat called Commerce again seeking "clarification on filing the response on multiple segments." *Id.* Commerce "provided the requested information and reminded {counsel} that the deadline to submit the responses in full was only a few hours away, as such, counsel should start filing responses as soon as possible." *Id.* Counsel for Hoa Phat asked for an extension to Tuesday, October 11, 2022, which Hoa Phat submitted in writing at 1:45 p.m. following the call. *See* Letter from Hoa Phat to Commerce re: *Request for Extension of the Initial Questionnaire* (Oct. 7, 2022) ("Fifth Extension Request") (CPR 67, KPR 71, TPR 62). Hoa Phat explained that it "is in the process of finalizing Hoa Phat's response to the questionnaires" but, due to technical problems, "anticipates that there will be insufficient time to fully process the response" by the 5:00 p.m. deadline. *Id.* at 1-2. Hoa Phat related that it needed additional time in order to OCR and flatten the questionnaire responses.[3] *Id.* at 2.

---

[3] "OCR" stands for "optical character recognition" and refers to converting a scanned PDF page into a searchable format. To "flatten" a PDF document means to remove transparency information and convert images to a format a printer or scanner can read.

PUBLIC DOCUMENT

At 2:30 p.m. on October 7, 2022, following receipt of Hoa Phat's Fifth Extension Request, Commerce called Hoa Phat's counsel "to get a better understanding of why counsel needed more time to submit Hoa Phat's questionnaire responses." Rejection Memo at 3 (CPR 118, KPR 116, TPR 109). During this call, counsel for Hoa Phat stated that "only a few additional hours would be sufficient to resolve {its} internal technical challenges and complete the filing" and "confirmed that extending the deadline until midnight on October 7 would give counsel sufficient time to submit Hoa Phat's questionnaire responses." *Id.* at 3, 6. Once again demonstrating flexibility well beyond its legal obligation, Commerce granted a further extension of time to 11:59 p.m. on October 7, 2022, the fourth extension Hoa Phat had received for its initial questionnaire responses. *See* Letter from Commerce to Hoa Phat re: *Request for Fifth Extension of Deadline for Submission of Initial Questionnaire Responses* (Oct. 7, 2022) ("Fourth Extension of Time") (CPR 68, KPR 72, TPR 63). In its Fourth Extension of Time, Commerce explicitly noted that "{b}ased on a conversation with the undersigned, this will provide you sufficient time to address any OCR, document flattening, and filing process issues." *Id.* at 2.

Despite repeated warnings to begin filing early and despite Hoa Phat's assurances that it only needed a few hours to complete the filing, Hoa Phat did not even start the filing process until 11:15 p.m. that night, less than an hour before the deadline. *See* Rejection Memo at 6 (CPR 118, KPR 116, TPR 109).

At 11:47 p.m. on October 7, 2022, Hoa Phat filed its sixth request for an extension of time. *See* Letter from Hoa Phat to Commerce re: *Request for Extension of the Initial Questionnaire* (Oct. 7, 2022) ("Sixth Extension Request") (CPR 79, KPR 83, TPR 74). This extension request did not specify the amount of additional time Hoa Phat sought, instead requesting that the responses "be deemed timely filed even in the wee hours of the night." Rejection Memo at 6 (CPR 118, KPR

116, TPR 109). With 13 minutes remaining before the deadline, Hoa Phat claimed that due to the same technical problems referenced in the Fifth Extension Request, "{t}he OCR and flattening have taken longer than expected." Sixth Extension Request. at 2. Hoa Phat found itself unprepared to file even though "{t}he substantive response was prepared in a timely fashion and ready for filing throughout the day" and notwithstanding that counsel "reviewed all the documents in ample time to make a timely filing." *Id.* at 3. These statements, if true, contradicted the representations Hoa Phat made in its Fourth Extension Request, which claimed that an extension of time to October 14, 2022 was "necessary to finalize compilation and review of the response and all supporting documents in the manner and form requested by Commerce." Fourth Extension Request at 2 (CPR 63, KPR 67, TPR 58).

Hoa Phat's Sixth Extension Request was submitted under the incorrect case segment information in ACCESS, which caused the system to automatically reject it on the next business day, October 11, 2022. *See id.* The 11:59 p.m. deadline on October 7, 2022 came and went, with none of the submissions in any of the country segments completed. *See id.* at 4-5. Over the next few days following the passage of the deadline, Hoa Phat filed its responses to the Initial Questionnaire per the following timeline:[4]

*LWR from China*

- Friday, October 7: At 11:43 p.m., Hoa Phat submitted 25 parts[5] of the one-day lag version of its questionnaire response.

---

[4] This timeline is derived from the Rejection Memo at 4-5 (CPR 118, KPR 116, TPR 109).

[5] The record suggests that each of the three responses consisted of roughly 300 "parts." *See* Memorandum from Bryan Hansen to The File re: *Light-Walled Rectangular Pipe and Tube from the People's Republic of China; Light-Walled Rectangular Pipe and Tube from the Republic of Korea; and Light-Walled Welded Rectangular Carbon Steel Tubing from Taiwan* (Nov. 17, 2022) at 2-25 (China: showing some 340 BPI entries removed from the record); 25-43 (Korea: showing some 370 BPI entries removed from the record); 44-63 (Taiwan: showing some 282 BPI entries removed from the record). Thus, whatever Hoa Phat filed before the deadline was a small fraction of a complete questionnaire response.

- Saturday, October 8: At 2:24 p.m., Hoa Phat finished submitting the remaining parts of the one-day lag version of its response.

- Tuesday, October 11: At 12:02 p.m., Hoa Phat finished submitting the final business proprietary information ("BPI") version of its response. At 12:14 p.m., Hoa Phat finished submitting the public version of its response.

*LWR from Korea*

- Friday, October 7: At 11:55 p.m., Hoa Phat submitted 11 parts of the one-day lag version of its questionnaire response.

- Saturday, October 8: At 5:54 p.m., Hoa Phat submitted additional parts of the one-day lag version of its response.

- Monday, October 10: Hoa Phat finished submitting the one-day lag version of its response.

- Tuesday, October 11: At 9:56 a.m., Hoa Phat finished submitting the final BPI version of its response. At 10:54 a.m., Hoa Phat finished submitting the public version of its response.

*LWR from Taiwan*

- Friday, October 7: At 11:59 p.m., Hoa Phat submitted two parts of the one-day lag version of its questionnaire response.

- Saturday, October 8: At 10:16 p.m., Hoa Phat finished submitting the one-day lag version of its response.

- Tuesday, October 11: At 8:23 a.m., Hoa Phat finished submitting the final BPI version of its response. At 10:50 a.m., Hoa Phat finished submitting the public version of its response.

Thus, Hoa Phat's response to Commerce's Initial Questionnaire, which was due no later than 11:59 p.m. on Friday, October 7, 2022, was not completely submitted until Monday, October 10, 2022 when it finished submitting its response for LWR from Korea. It is notable that Hoa Phat undertook no filing activity on Sunday, October 9, 2022, even though by that point its submission was incomplete. On Tuesday, October 11, 2022, Hoa Phat submitted a letter to the record that attempted to correct the mistaken case segment information that had caused ACCESS to reject the Sixth Extension Request. *See* Letter from Hoa Phat to Commerce re: *Request for Extension of the Initial Questionnaire* (Oct. 12, 2022) (CPR 79, KPR 83, TPR 74). However, this correction letter

also was submitted with incorrect segment-specific information. *See* Rejection Memo at 4-5 (CPR 118, KPR 116, TPR 109). Meanwhile, Vina One, the other respondent in the LWR anti-circumvention inquiries, had timely submitted its responses to the Initial Questionnaire by its 5:00 p.m., October 7, 2022 deadline. *See* IDM at 15 (CPR 236, KPR 223, TPR 219).

The picture that emerges from this fact pattern is clear: Hoa Phat squandered the multiple extensions of time it received from Commerce and failed to take necessary steps to timely file its questionnaire responses, irresponsibly delaying the filing process until the literal eleventh hour. Commerce sought repeatedly to accommodate Hoa Phat's extension requests, but Commerce's information was only as good as Hoa Phat's representations to the agency. Unfortunately, those representations were frequently inaccurate. As the deadline approached, Hoa Phat's counsel repeatedly made inaccurate representations to Commerce concerning the time it required to complete its responses, including by limiting its Second Extension Request solely to Question 46 and Appendix IV, demanding an extension to October 14, 2022 to prepare responses that counsel later revealed were ready for filing early on October 7, 2022, and assuring Commerce that an extension to 11:59 p.m. on October 7 would give it sufficient time to resolve any technical issues and file its responses. *See* Second Extension Request at 2 (CPR 53, KPR 57, TPR 48); Fourth Extension Request at 2 (CPR 63, KPR 67, TPR 58); *cf.* Sixth Extension Request at 2-3 (CPR 79, KPR 83, TPR 74). As late as September 30, 2022, counsel's communications to Commerce reflected unawareness of the correct due date for the responses. *See* Third Extension Request at 1 (CPR 58, KPR 62, TPR 53). Finally, and crucially, Hoa Phat ignored Commerce's persistent advice to begin the filing process early for those parts of the responses that were ready. *See* Rejection Memo at 3-4 (CPR 118, KPR 116, TPR 109). Instead, Hoa Phat waited until only minutes remained before attempting to file any portion of its responses. *See id.* at 4-5.

The outcome was, therefore, unsurprising: Commerce rejected Hoa Phat's untimely responses. On November 17, 2022, Commerce issued a memorandum stating its reasons for the rejection. *See id.* at 5-7. Commerce noted the following: (i) Hoa Phat received multiple extensions of time from Commerce, including an extension that granted it more time than it had asked for; (ii) Hoa Phat could have, but did not, begin filing its responses early, even though it knew by September 30 that the responses were voluminous and would be time-intensive to file; and (iii) Hoa Phat stated to Commerce in an October 7 phone call that it only needed a few hours to resolve technical problems and complete the filing but did not begin filing until minutes before the final extended deadline at 11:15 p.m. *See id.* at 6. Commerce additionally observed that "all other respondents, who also had responses comprising thousands of pages and were also granted multiple extensions, filed their responses in their entirety by 5 p.m. on October 7." *Id.*

Although Hoa Phat's Sixth Extension Request was filed with the incorrect segment information and had therefore been rejected automatically by ACCESS, Commerce determined that even if properly filed, the request had not established good cause for an extension. *See id.* at 7. Commerce found that:

> Commerce was flexible in granting parties' prior extension requests, and extended the deadline for Hoa Phat's filing until 11:59 p.m. ET based upon counsel's own representations that this deadline would be sufficient to resolve any potential issues it faced on its end. The late-night extension request filed by Hoa Phat does not identify any new or different circumstances that would justify a further extension; rather, Hoa Phat's request merely reiterates issues previously known (related to the size of the filing and technical requirements needed to prepare the filing for ACCESS) that could have been prevented had reasonable measures been taken. Moreover, as evidenced by Hoa Phat's previous extension requests, it had available information to begin filing early. However, it elected not to do so and instead waited until minutes before midnight to start filing its voluminous responses.

*Id.* Having determined that Hoa Phat failed to establish good cause in its Sixth Extension Request, Commerce rejected the submission in accordance with 19 C.F.R. § 351.302(d)(1)(i) (providing

that "Unless {Commerce} extends a time limit . . . {Commerce} will not consider or retain in the official record of the proceeding untimely filed factual information") and 19 C.F.R. § 351.104(a)(2)(iii) (providing that "in no case will the official record include any document that {Commerce} rejects as untimely filed").

On November 29, 2022, Hoa Phat filed a letter seeking reconsideration of Commerce's determination to reject the responses. *See* Letter from Hoa Phat to Commerce re: *Request for Reconsideration of Hoa Phat's Initial Response* (Nov. 29, 2022) ("Request for Reconsideration") (CPR 121, KPR 119, TPR 112). Hoa Phat argued that Commerce's mechanism for automatic extensions under certain circumstances (the "Automatic Extension Mechanism") precluded Commerce from rejecting Hoa Phat's submission as untimely. The Automatic Extension Mechanism is set forth in the *Preamble* to the Federal Register notice establishing the current regulations regarding extension requests. *See Extension of Time Limits*, 78 Fed. Reg. 57,790, at 57,792 (Dep't Commerce Sept. 20, 2013). The *Preamble* states as follows with respect to the Automatic Extension Mechanism:

> **For submissions that are due at 5:00 p.m.**, if the Department is not able to notify the party requesting the extension of the disposition of the request **by 5:00 p.m.**, then the submission would be due by the opening of business (8:30 a.m.) on the next work day.

*Extension of Time Limits*, 78 Fed. Reg. at 57,792 (emphasis added). On December 13, 2022, Commerce denied Hoa Phat's Request for Reconsideration. *See* Letter from Commerce to Hoa Phat (Dec. 13, 2022) ("Denial of Request") (CPR 128, KPR 121, TPR 115). Commerce determined that the Automatic Extension Mechanism did not apply to these facts "where Commerce acted on a timely request before 5:00 p.m. ET and a filer sought a further extension after business hours." *Id.* at 1-2.

On April 12, 2023, Commerce published its Preliminary Determination finding circumvention of the Orders. *See Light-Walled Rectangular Pipe and Tube From the People's Republic of China: Preliminary Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 88 Fed. Reg. 21,985 (Dep't Commerce Apr. 12, 2023) and accompanying *Preliminary Decision Memorandum* (Apr. 6, 2023) (CPR 160); *Light-Walled Rectangular Pipe and Tube From the Republic of Korea: Preliminary Affirmative Determination of Circumvention of the Antidumping Duty Order*, 88 Fed. Reg. 22,002 (Dep't Commerce Apr. 12, 2023) and accompanying *Preliminary Decision Memorandum* (Apr. 6, 2023) (KPR 147); *Light-Walled Welded Rectangular Carbon Steel Tubing From Taiwan: Preliminary Affirmative Determination of Circumvention of the Antidumping Duty Order*, 88 Fed. Reg. 21,980 (Dep't Commerce Apr. 12, 2023) and accompanying *Preliminary Decision Memorandum* (Apr. 6, 2023) (TPR 140) (collectively the "Preliminary Determination" and "PDM"). In each anti-circumvention inquiry, Commerce based its circumvention analysis for Hoa Phat on facts otherwise available pursuant to 19 U.S.C. § 1677e(a)(2), because Hoa Phat failed to provide timely information in the form and manner requested and significantly impeded the inquiry. PDM at 5 (CPR 160, KPR 147, TPR 140). Commerce further determined that Hoa Phat failed to cooperate by not acting to the best of its ability. Accordingly, it applied an adverse inference in selecting from among the facts otherwise available pursuant to 19 U.S.C. § 1677e(b)(1)(A). *Id.* Commerce stated that as adverse facts available ("AFA"), it preliminarily found "that the criteria for finding circumvention with respect to Hoa Phat have been met" and that "Hoa Phat is not eligible to certify that specific entries of merchandise were not manufactured" using Chinese, Korean, or Taiwanese-origin hot-rolled steel. *Id.* at 5-6.

On November 9, 2023, Commerce published its final determination in each of the anti-circumvention inquiries, in which it made no change from its preliminary determination. *See* Final Determination and IDM (CPR 236, KPR 223, TPR 219). In a detailed analysis, Commerce found that it was reasonable to determine that Hoa Phat lacked good cause for its Sixth Extension Request, that the plain text of the Automatic Extension Mechanism did not apply to Hoa Phat's Sixth Extension Request, and that Commerce appropriately applied AFA following its rejection of Hoa Phat's untimely responses. *See* IDM at 14-15 and 17 (CPR 236, KPR 223, TPR 219).

On November 29, 2023, Hoa Phat filed actions challenging the final determinations in the three anti-circumvention inquiries, and the Court later consolidated the three actions under Consol. Ct. No. 23-00248. *Order* (Mar. 22, 2024), ECF No. 35.

## III.    STANDARD OF REVIEW

The Court will uphold Commerce's determinations unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law . . ." 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Suramerica de Aleaciones Laminadas, C.A. v. United States*, 44 F.3d 978, 985 (Fed. Cir. 1994) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). "{T}he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Federal Maritime* Comm'n, 383 U.S. 607, 620 (1966). Thus, the Court must decide whether "the administrative record contain{s} substantial evidence to support" Commerce's decision and whether that decision was "rational." *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984) (stating that it is not the weight of the evidence, but whether it reasonably supports a rational decision that is evaluated by

a reviewing court). Although Commerce must, under the standard, "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made," the court "will . . . 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" *Motor Vehicle Mfrs. Ass'n v. State Farm Mut.*, 463 U.S. 29, 43 (1983) (quoting *Bowman Transp. Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974)).

Commerce's determinations are also subject to the requirements of the Administrative Procedure Act, which permits reviewing courts to "set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "An abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors." *Consol. Bearings Co. v. United States*, 412 F. 3d 1266, 1268 (Fed. Cir. 2005) (citing *Star Fruits S.N.C. v. United States*, 393 F. 3d 1277, 1281 (Fed. Cir. 2005)). Like the substantial evidence standard, the "touchstone" of the abuse of discretion standard is "rationality." *Hyundai Elecs. Indus. Co. v. I.T.C.*, 899 F.2d 1204, 1209 (Fed. Cir. 1990).

Although the substantial evidence and abuse of discretion standards are similar, the abuse of discretion standard is even more deferential to agency decision-making than the substantial evidence standard. *See In re Gartside*, 203 F.3d 1305, 1312 (Fed. Cir. 2000) (the abuse of discretion standard "is generally considered to be the most deferential of the APA standards of review."); *see also Consol. Fibers, Inc. v. United States*, 535 F. Supp. 2d 1345, 1353 (Ct. Int'l Trade 2008) (comparing the two standards at length and finding that the abuse of discretion standard is "the narrowest scope of judicial review."). When reviewing agency action for abuse of discretion, "the reviewing court analyzes only whether a rational connection exists between the

agency's factfindings and its ultimate action{.}" *In re Gartside*, 203 F.3d at 1312. Therefore, an agency decision that is supported by a reasoned explanation connecting the facts found and the choice made is not an abuse of discretion. *See Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369 (Fed. Cir. 1998) ("Courts look for a reasoned analysis or explanation for an agency's decision as a way to determine whether a particular decision is arbitrary, capricious, or an abuse of discretion.").

## IV.    ARGUMENT

### A.    Summary of Argument

This is a straightforward case. Commerce has broad discretion to set and enforce its deadlines, a principle that has been repeatedly upheld by this Court and the U.S. Court of Appeals for the Federal Circuit (the "Federal Circuit"). This Court and the Federal Circuit have also upheld Commerce's power to apply AFA to respondents that fail to put forth the maximum effort to meet such deadlines. Here, Commerce bent over backwards to accommodate Hoa Phat's requests for extensions of time, granting Hoa Phat no fewer than four separate extensions of the deadline to file its questionnaire responses. The final extension of time was based on a telephone conversation in which Hoa Phat specifically assured Commerce that it could do everything that needed to be done to file its responses by the extended deadline. However, due to issues that were entirely foreseeable at the time these assurances were made, and which Hoa Phat could have, but did not, take measures to address, Hoa Phat failed to submit its questionnaire responses until well after the deadline had passed. Hoa Phat also audaciously claims that its 11:47 p.m. extension request had the effect of overriding Commerce's established deadline in favor of a deadline four days later that Commerce explicitly rejected.

Confronted with the consequences of its failure to take reasonable steps to meet Commerce's deadline, Hoa Phat now claims that Commerce was legally required to "grant some leeway to Hoa Phat and accept its questionnaire responses." Pl.'s Br. at 13. In fact, Commerce's decision to reject Hoa Phat's untimely questionnaire responses was reasonable, supported by substantial evidence, and well within its lawful discretion. Nor was Commerce required to accept Hoa Phat's questionnaire responses under its Automatic Extension Mechanism, which operates only on extension of time requests made prior to 5:00 p.m. deadlines and did not apply to Hoa Phat's 11:59 p.m. deadline. Because Hoa Phat failed to meet its much-extended deadline, Commerce was required to remove Hoa Phat's untimely questionnaire responses from the record and to fill the resulting gap using facts otherwise available under 19 U.S.C. § 1677e(a)(2). Commerce additionally determined that Hoa Phat's untimeliness stemmed from its failure to act to best of its ability to cooperate with Commerce's request for information, which justified Commerce's use of an adverse inference in choosing from the facts otherwise available. These determinations were reasonable and supported by substantial evidence on the record.

**B.    Commerce Acted Within Its Authority and Discretion to Reject Hoa Phat's Untimely Questionnaire Responses**

Hoa Phat believes that Commerce may not enforce its administrative deadlines if a reviewing court, applying a multi-part balancing test, finds that the burden of enforcement placed on the respondent outweighs the burden of untimeliness placed on Commerce. *See* Pl.'s Br. at 15, 17 (arguing that "the burden to Commerce of accepting Hoa Phat's questionnaire response was low, while the negative impact on Hoa Phat . . . was very high, far outweighing any burden on Commerce."). That is not the law. Rather, the statute, Commerce's regulations, and precedent from this Court, the Federal Circuit, and the Supreme Court make clear that Commerce possesses broad authority to set and enforce its deadlines, to which a reviewing court must defer absent "extremely

compelling circumstances." *Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519, 543 (1978). Hoa Phat derives its balancing test from cases that are either factually inapplicable or that predate the Federal Circuit's precedential opinion in *Dongtai Peak Honey Indus. Co. v. United States*, 777 F.3d 1343 (Fed. Cir. 2015) ("*Dongtai Peak Honey*"). This Court should reject Hoa Phat's attempt to upend the well-established framework for Commerce's enforcement of its deadlines. It should instead find that Commerce may lawfully reject submissions that fail to meet deadlines that have already been extended several times and where the final extended deadline was based on specific representations made by the submitting party.

### 1. Commerce Possesses Broad Legal Authority to Set and Enforce Deadlines

"Absent constitutional constraints or extremely compelling circumstances {} administrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties." *Vt. Yankee*, 435 U.S. at 543. "Accordingly, absent such constraints or circumstances, courts will defer to the judgment of an agency regarding the development of the agency record." *PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751 (Fed. Cir. 2012). Reviewing courts have repeatedly held that an agency's decision to set and enforce time limits lies at the core of such deference. *See Yantai Yimken Co. v. United States*, 521 F. Supp. 2d 1356, 1370 (Ct. Int'l Trade 2007), *aff'd*, 300 F. App'x 934 (Fed. Cir. 2008) ("Commerce has broad discretion to establish its own rules governing administrative procedures, including the establishment and enforcement of time limits.") (quoting *Reiner Brach GmbH & Co. v. United States*, 206 F. Supp. 2d 1323, 1334 (Ct. Int'l Trade 2002), *aff'd*, 300 Fed. Appx. 934 (Fed. Cir. 2008)). Commerce's regulatory authority to establish and enforce time limits for questionnaire responses in anti-circumvention inquiries is codified at 19 C.F.R. § 351.226(f)(3) ("Questionnaire responses are due on the date specified by the Secretary")

and § 351.302(b) ("Unless expressly precluded by statute, the Secretary may, for good cause, extend any time limit established by this part."). If Commerce finds that a respondent has not established good cause to extend the time limit, Commerce "will not consider or retain in the official record of the proceeding . . . {u}ntimely filed factual information, written argument, or other material that the Secretary rejects." *Id.* § 351.302(d)(1)(i).

One "extremely compelling circumstance" permitting a reviewing court to overcome this high degree of deference is a finding that the agency has abused its discretion to enforce time limits. *See* 5 U.S.C. § 706(2)(A). However, because the "touchstone" of the abuse of discretion standard is "rationality," Commerce does not abuse its discretion where it enforces its time limits on the basis of a reasoned analysis. *Hyundai Elecs. Indus. Co.* 899 F.2d at 1209; *Maverick Tube Corp. v. United States*, 107 F. Supp. 3d 1318, 1331 (Ct. Int'l Trade 2015) ("Strict enforcement of time limits and other requirements is neither arbitrary nor an abuse of discretion when Commerce provides a reasoned explanation of its decision."); *see also Wheatland Tube*, 161 F.3d at 1369 ("Courts look for a reasoned analysis or explanation for an agency's decision as a way to determine whether a particular decision is arbitrary, capricious, or an abuse of discretion.").

The Federal Circuit confirmed this framework in *Dongtai Peak Honey*. There, the Federal Circuit upheld Commerce's rejection of a supplemental questionnaire response that was submitted after the deadline had passed and where Commerce had denied respondent Dongtai Peak's argument that good cause existed to retroactively extend the deadline. On appeal, Dongtai Peak made arguments parallel to those of Hoa Phat. Specifically, Dongtai Peak argued that it had established good cause for an extension on the basis of technical problems, counsel's communication difficulties with its overseas client, and overlapping timeframes with other Commerce proceedings. It also contended that Commerce's refusal to extend the deadline was an

abuse of discretion, that "fairness and accuracy" required Commerce to accept Dongtai Peak's late submission, and that Commerce had "ample time" to meet its own deadline for the final determination even with the late submission. *Dongtai Peak Honey*, 777 F.3d at 1350-53; *Dongtai Peak Honey Indus. Co., Ltd. v. United States*, 971 F. Supp. 2d 1234, 1240 (Ct. Int'l Trade 2014).

In addressing Dongtai Peak's arguments, the Federal Circuit did not apply a balancing test in which it weighed the impact of enforcement on Dongtai Peak against the impact of the untimely submission on Commerce, or the interest in fairness and accuracy against the interest in finality. Instead, the court confirmed that "it is fully within Commerce's discretion to 'set and enforce deadlines' and this court 'cannot set aside application of a proper administrative procedure because it believes that properly excluded evidence would yield a more accurate result if the evidence were considered.'" *Dongtai Peak Honey*, 777 F.3d at 1352 (quoting *PSC VSMPO*, 688 F.3d at 760-61). The Federal Circuit made clear that Commerce is "not required to demonstrate good cause for rejecting {respondents'} untimely submission," nor may respondents "establish Commerce's deadlines or {} dictate to Commerce whether and when Commerce actually needs the requested information." *Id.* at 1352. The court held that Commerce's determination to reject Dongtai Peak's extension request for lack of good cause was "reasonabl{e}" because Commerce found that Dongtai Peak had known of "all of the causes of delay" prior to the deadline but had not taken available steps to overcome them. *Id.* at 1351-52.  Because Commerce's determination was reasonable, the Federal Circuit upheld it as a proper exercise of Commerce's discretion. *Id.* at 1352. *Dongtai Peak Honey* therefore stands for the proposition that Commerce's enforcement of deadlines is subject to review for reasonableness, not the multi-factor balancing test that Hoa Phat prefers.

This Court, applying the precedential opinion in *Dongtai Peak Honey*, has reached the same conclusion when deciding claims similar to those raised by Hoa Phat. In *Bebitz Flanges Works Priv. Ltd. v. United States*, 433 F. Supp. 3d 1297 (Ct. Int'l Trade 2020) ("*Bebitz CVD*"), this Court affirmed Commerce's rejection of supplemental questionnaire responses that had been filed less than two hours after the deadline and its application of AFA to the respondent. Like Hoa Phat, plaintiff Bebitz contended that Commerce "abused its discretion by failing to accept the company's late filing or grant its extension requests in full" and argued that "the need for an accurate CVD rate outweighs the need to strictly adhere to the statutory deadlines for the investigation." *Bebitz CVD*, 433 F. Supp. 3d at 1304. Based on *Dongtai Peak Honey*, the Court rejected Bebitz's arguments, finding that Commerce has "substantial discretion whether to grant or deny an extension request" and that there was no abuse of discretion where "Commerce granted Bebitz multiple extensions and had advised Bebitz of the potential consequences of failing to meet the agency's deadlines{.}" *Id.* at 1305.

Likewise, in *Tau-Ken Temir LLP v. United States*, 587 F. Supp. 3d 1346 (Ct. Int'l Trade 2022), this Court upheld Commerce's discretion to deny a respondent's extension request and reject its filing that was made two hours after the deadline due to technical problems encountered while preparing the submission. *Tau-Ken Temir*, 587 F. Supp. 3d at 1353. Tau-Ken Temir's technical problems were similar to Hoa Phat's and included "problems with embedded hyperlinks . . . corrupted files{,} and difficulty in converting Russian language documents into searchable PDF format{.}" *Id.* The Court rejected plaintiff's argument that "{s}uch a brief {two-hour} period could not have delayed the investigation in any meaningful way" as precluded by the Federal Circuit's decision in *Dongtai Peak Honey*. *Id.* at 1358. The Court also rejected plaintiff's argument that "Commerce failed to balance the interests of 'accuracy and fairness' against the 'interest in

finality.'" *Id.* at 1358. The Court concluded that "{t}he circumstances here are parallel to those in *Bebitz CVD*, and the court sees no reason to differ in the outcome, particularly in light of the multiple extensions already granted to {Tau-Ken Temir}." *Id.* Once again, the standard against which Commerce's determination was measured was reasonableness.

This precedent forecloses the balancing test that Hoa Phat urges the Court to apply. Hoa Phat argues that "{t}he Trade Court must consider whether the untimely information was important to ensuring accuracy and fairness and then weigh those interests against the administrative burden imposed on Commerce by accepting the untimely submission." Pl.'s Br. at 15. Applying this balancing test to its own circumstances, Hoa Phat repeats the failed arguments of the plaintiffs in the above cases, including that Commerce had "ample resources for the proceeding"; "the untimely response did not actually impede the proceeding or impact the time that Commerce had to review the response"; and that "the accuracy of Commerce's determination . . . was diminished by the rejection of Hoa Phat's questionnaire response." Pl.'s Br. at 13, 17, 18.

These arguments are unavailing, as "{a} court cannot set aside application of a proper administrative procedure because it believes that properly excluded evidence would yield a more accurate result if the evidence were considered." *PSC VSMPO-Avisma*, 688 F.3d 751 at 761. Nor may a respondent "dictate to Commerce whether and when Commerce actually needs the requested information." *Dongtai Peak Honey*, 777 F.3d at 1352. Instead, "{t}he role of judicial review is limited to determining whether the record is adequate to support the administrative action." *PSC VSMPO-Avisma*, 688 F.3d at 761 (overruling the CIT's order that Commerce must admit untimely-filed information onto the record and holding that "the Trade Court improperly intruded upon Commerce's power to apply its own procedures for the timely resolution of antidumping reviews."). Hoa Phat's application of its balancing test produces absurdities that leave the

substantial evidence and abuse of discretion standards in the dust, as when Hoa Phat claims that "the only possible burden that could warrant the rejection of Hoa Phat's information" is "whether the timing of Hoa Phat's filing made it such that the staff members dedicated to examining Hoa Phat did not have sufficient time to review the materials prior to Commerce making its findings." Pl.'s Br. at 19. Apparently, Commerce's deadlines are meaningless if individual Commerce analysts are found to have had free time on their calendars to review late submissions.

The authority that Hoa Phat cites in support of its balancing test is either factually inapplicable or no longer good law following the Federal Circuit's decision in *Dongtai Peak Honey*. For instance, in support of the proposition that the interests in fairness and accuracy outweigh any burden placed on Commerce in accepting an untimely submission, Hoa Phat cites *NTN Bearing Corp. v. United States*, 74 F.3d 1204 (Fed. Cir. 1995), *Artisan Mfg. Corp. v. United States*, 978 F. Supp. 2d 1334 (Ct. Int'l Trade 2014), and *Grobest & I-Mei Indus. (Vietnam) Co. v. United States*, 815 F. Supp. 2d 1365 (Ct. Int'l Trade 2012) (as cited in *Shelter Forest Int'l Acquisition, Inc. v. United States*, 497 F. Supp. 3d 1388 (Ct. Int'l Trade 2021)). However, *NTN Bearing*, *Artisan Mfg.* and *Grobest & I-Mei* predate *Dongtai Peak Honey* and are no longer good law, as this Court has recognized. *See ArcelorMittal USA LLC v. United States*, 399 F. Supp. 3d 1271, 1281 (Ct. Int'l Trade 2019) (rejecting *Artisan Mfg.* and *Grobest & I-Mei* and instead applying *Vt. Yankee*, *Dongtai Peak Honey*, and *PSC VSMPO-Avisma* to hold that it was not an abuse of discretion for Commerce to reject untimely extension request and submissions); *Bebitz Flanges Works Private Limited v. United States*, 433 F. Supp. 3d 1309, n.6 (Ct. Int'l Trade 2020) ("*Bebitz AD*") (finding that *NTN Bearing*, which concerned the rejection of a respondent's clerical error correction, was inapposite to a respondent that submitted an untimely questionnaire response). The circumstances in *Shelter Forest* are likewise inapposite to Hoa Phat's

circumstances – there, Commerce's rejection of the respondent's new factual information was found to be "unreasonable" because its untimeliness was attributable to Commerce's own failure to provide a notice of deficiency. *Shelter Forest*, 497 F. Supp. 3d at 1401. In contrast, Hoa Phat was all too aware of the untimeliness of its submission, as its many extension requests indicate.

The remaining cases that Hoa Phat cites – *Oman Fasteners, LLC v. United States*, 2023 WL 2233642 (Ct. Int'l Trade Feb. 15, 2023), *Celik Halat ve Tel Sanayi A.S. v. United States*, 557 F. Supp. 3d 1348 (Ct. Int'l Trade 2022), and *Ajmal Steel Tubes & Pipes Indus. LLC v. United States*, 2022 WL 15943670 (Ct. Int'l Trade Oct. 28, 2022) – are likewise factually inapplicable here. First, *Oman Fasteners*, which Hoa Phat optimistically describes as "highly analogous" to its own situation, involved a respondent that received a 154.33 percent AFA rate because it filed the Excel version of one exhibit to one questionnaire section fifteen minutes after the deadline due to an ACCESS malfunction, notwithstanding that it had already timely filed the PDF version. Pl.'s Br. at 15; *Oman Fasteners*, 2023 WL 2233642 at \*2, \*8. Not only were the facts in *Oman Fasteners* a far cry from the present case, but the *Oman Fasteners* court's abuse of discretion analysis hinged on contradictions between certain public statements made by Commerce and Commerce's statements to the respondent. *See Oman Fasteners*, 2023 WL 2233642 at \*6 ("Commerce's response disregards its own prior statements and therefore constitutes an abuse of discretion{.}"). Hoa Phat does not (and cannot) allege anything of the kind. Meanwhile, the facts in *Celik Halat* closely parallel *Oman Fasteners* – the respondent filed a single exhibit to a single questionnaire section 21 minutes after the deadline and the court limited its decision to "the circumstances presented." *Celik Halat*, 557 F. Supp. 3d at 1354, 1358.

Lastly, *Ajmal Steel* involved an even more dissimilar fact pattern in which Commerce rejected the respondent's untimely extension request, submitted in April 2020 at the height of the

COVID-19 pandemic, despite the preamble to 19 C.F.R. § 351.302 enumerating "natural disaster, riot, war, force majeure, or medical emergency" as examples of "extraordinary circumstances" requiring the consideration of untimely extension requests. 19 C.F.R. § 351.302(c). Even so, the court found that "Commerce likely would have been reasonable in denying Ajmal's EOT for a lack of an extraordinary circumstance" were it not for Commerce's decision, one week later, to unilaterally extend all deadlines by 50 days for "operational adjustments due to COVID-19." *Ajmal Steel*, 2022 WL 15943670 at *4. "It was an abuse of discretion for Commerce, on May 7, 2020, with both delays before it, to reason that filing issues due to COVID-19 are so different from operational adjustments due to COVID-19 that they do not constitute sufficient extraordinary circumstances to permit a slightly late filing here . . ." *Id.* The court specifically noted that it had "upheld decisions of Commerce to reject {extension of time} requests that result in late filings and AFA, after the world had more time to adapt to the COVID-19 pandemic." *Id.* at *3. It is these latter circumstances, and not Ajmal's, that are applicable to Hoa Phat.

Hoa Phat frames the alternative to its balancing test as a world in which Commerce has "*carte blanche* authority to reject proffered factual information just because the information . . . was submitted to Commerce beyond a regulatory or agency-established deadline." Pl.'s Br. at 14. But that, too, is not the law. Rather, Commerce's determinations to enforce its deadlines must, like all agency action, be *reasonable*. As the precedents of this Court and the Federal Circuit make clear, Commerce does not abuse its discretion when it rejects untimely filings, even if late by less than two hours, based on a reasoned analysis that considers factors such as whether the respondent was previously aware of the causes of the delay, whether the respondent could have but did not take remedial measures, and the extent to which Commerce attempted to address the respondent's problems through extensions or other means. As demonstrated below, Commerce's actions here

satisfied this standard and were reasonable, supported by substantial evidence on the record, and well within its lawful discretion.

### 2.  Commerce Was Within Its Authority to Enforce Hoa Phat's Deadline

Commerce rejected Hoa Phat's response to the Initial Questionnaire on the basis of a reasoned and detailed analysis. Commerce's Rejection Memo carefully reconstructed the factual timeline and explained how and why Commerce arrived at its decision. Commerce's Issues and Decision Memorandum accompanying the final determination (the "IDM") did the same.

In the Rejection Memo, Commerce first noted that Hoa Phat's Second Extension Request had only requested one additional week to submit its responses to Question 46 and Appendix IV of the questionnaire, which Commerce exceeded by extending the deadline by one week not only for Question 46 and Appendix IV but for the entire response. Rejection Memo at 5 (CPR 118, KPR 116, TPR 109). Hoa Phat subsequently requested a further extension to October 7, 2022, which Commerce granted. *Id.* Commerce then made two key findings. It found that Hoa Phat missed its deadline because of issues that were previously known to it, yet Hoa Phat did not take available measures to address, and that Commerce granted yet another extension to 11:59 p.m. on October 7, 2022 on the basis of Hoa Phat's own representations that such time would be sufficient to complete the filing. As Commerce explained:

> {B}ased on representations in its September 21, 2022, letter, Hoa Phat could have started filing all responses except responses to question 46 and appendix IV, well before the October 7 due date (and it knew at the time of its September 30 extension request that preparation of such a large volume of data is very time- and resource-intensive, and it knew at the time of its October 5 extension request that the response comprised several thousands of pages). Despite those facts, Hoa Phat did not demonstrate a good faith effort to meet the 5:00 p.m. deadline and did not start filing any responses at the time it filed its extension request at approximately 1:45 p.m. on October 7. Because counsel stated in a conversation at 2:30 p.m. with Commerce that only a few additional hours would be sufficient to resolve their internal technical challenges and complete the filing, Commerce granted Hoa Phat

additional time until 11:59 p.m. to file its response, essentially providing more than a few hours.

*Id.* at 6. In finding that Hoa Phat's late-night Sixth Extension Request had failed to establish good cause, Commerce reiterated that it had extended the deadline to 11:59 p.m. "based upon counsel's own representations that this deadline would be sufficient to resolve any potential issues it faced on its end" and that the Sixth Extension Request "does not identify any new or different circumstances that would justify a further extension, rather, Hoa Phat's request merely reiterates issues previously known (related to the size of the filing and the technical requirements needed to prepare the filing for ACCESS) that could have been prevented had reasonable measures been taken." *Id.* at 7.

Commerce's IDM elaborated on why it did not find that Hoa Phat's technical issues constituted good cause to extend the deadline:

> Hoa Phat further argues that it needed more time to properly format documents to submit in the ACCESS system, substantiating its request for an additional extension of time beyond the 11:59 p.m. extension time already granted. Hoa Phat explicitly told Commerce that it only needed until 11:59 p.m. on October 7, 2022, to ensure that its submission could be formatted correctly and submitted in a timely manner. As with its previous claim that it only needed extra time to submit a few sections of its initial questionnaire response, the issues that Hoa Phat describes, including formatting, such as the need to "OCR" documents to be compliant with ACCESS filing requirements, were not unexpected and are technical in nature for any submission as these are general requirements for submission to ACCESS. Hoa Phat clearly understood the tasks required to submit its response as well as the volume of that submission . . . . {A}lthough counsel knew several days before the established deadline that the responses comprised thousands of pages and acknowledged in its communications with Commerce the difficulties with filing voluminous responses, counsel made no attempt to begin filing Hoa Phat's responses until minutes before the deadline.

IDM at 15 (CPR 236, KPR 223, TPR 219). Commerce granted repeated extensions and provided Hoa Phat with enough time, based on Hoa Phat's own representations, to timely complete the filing. Those representations turned out to be wrong due to factors that were entirely foreseeable

at the time they were made. Commerce reasonably found that the consequences of Hoa Phat's own failures should be borne by Hoa Phat and did not constitute good cause for a further extension. None of the arguments that Hoa Phat raises in its brief undermines that conclusion.

### a. Commerce May Enforce Its Deadlines Without Any Showing That It Was Burdened by Respondent's Untimeliness

Hoa Phat contends that "the untimely response did not actually impede the proceeding or impact the time that Commerce had to review the response" because "the "midnight due date was on the Friday before a Federal Holiday" and "{i}t seems unlikely that any {Commerce} officials would have utilized that time" to review Hoa Phat's response. Pl.'s Br. at 17, 19. This line of argument is foreclosed by *Dongtai Peak Honey*, in which the plaintiff-respondent argued that "there were many months yet before Commerce's final results were due" and therefore "ample time for Commerce to complete a very thorough and comprehensive analysis" even with the untimely submission. *Dongtai Peak Honey*, 777 F.3d at 1350-51. The Federal Circuit rejected that argument, stating that "it is not for Dongtai Peak to establish Commerce's deadlines or to dictate to Commerce whether and when Commerce actually needs the requested information." *Id.* at 1352; *see also Hyosung Corp. v. United States*, 35 C.I.T. 343, 347 (2011) ("Commerce rejects untimely information because . . . allowing parties to submit responses to Commerce requests for information at whatever time is most convenient for respondents would amount to relinquishing Commerce's authority to establish due dates for submissions . . . .").

Hoa Phat seeks to invert the regulatory scheme by requiring Commerce to demonstrate hardship stemming from a respondent's late submission as a precondition to enforcing its deadlines. Yet it is the *respondent's* duty to demonstrate good cause for the extension of deadlines, not *Commerce*'s duty to demonstrate good cause for their enforcement. *See id.* ("Commerce was not required to demonstrate good cause for rejecting Dongtai Peak's untimely submissions."). This

Court should reject Hoa Phat's invitation to construct an alternative deadline on the basis of a factual inquiry into the free time available to individual Commerce employees. That is not the Court's job. "The role of judicial review is limited to determining whether the record is adequate to support the administrative action." *PSC VSMPO-Avisma*, 688 F.3d at 761.

Hoa Phat's insistence that Commerce requires good cause to enforce its deadlines leads to further misunderstandings of the regulatory scheme. Hoa Phat faults Commerce's Rejection Memo and IDM for lacking "discussion of whether the untimely response actually imposed a burden on Commerce" and instead "focus{ing} . . . entirely on its determination that good cause did not exist to grant further extensions." Hoa Phat believes that whether it established good cause for an extension was beside the point, asserting that "{g}ood cause is related to whether the extension request should have been granted and not to whether Commerce's approach to rejection of the underlying information was arbitrary." Pl.'s Br. at 20. But because 19 C.F.R. § 351.302(b) specifically assigns the burden of establishing good cause for extensions to *respondents*, it was not necessary for Commerce to establish that it was burdened by Hoa Phat's untimeliness. Rather, it was at Commerce's discretion to determine whether Hoa Phat had carried its burden to establish good cause. Commerce's finding that Hoa Phat's Sixth Extension Request lacked good cause ineluctably led to the rejection of Hoa Phat's questionnaire response and its removal from the record. *See Dongtai Peak Honey*, 777 F.3d at 1352 ("Commerce reasonably determined . . . good cause did not exist to retroactively extend the deadline. Having properly denied the extension requests, Commerce also reasonably determined the Supplemental Response was untimely and removed it from the record pursuant to 19 C.F.R. § 351.302(d)."). Whether Hoa Phat had established good cause for yet another extension of time was therefore the central issue for the Rejection Memo and the IDM to decide. Because Commerce's Rejection Memo and IDM were

based on substantial record evidence and reasonably determined that Hoa Phat lacked good cause for a fifth extension of time, Commerce's rejection of the questionnaire responses for untimeliness was proper.

### b. Commerce's Later Extension of Its Deadlines Did Not Excuse Hoa Phat from Making a Timely Filing

Hoa Phat next claims that because Commerce later extended its own deadlines for the release of the preliminary and final determinations, it abused its discretion and lacked substantial evidence when it rejected Hoa Phat's questionnaire responses for untimeliness. Commerce's deadline for final determinations in anti-circumvention inquiries is codified at 19 U.S.C. § 1677j(f), which provides that Commerce "shall, to the maximum extent practicable, make the determinations under this section within 300 days from the date of {initiation}." The deadline for Commerce's preliminary determinations is set forth at 19 C.F.R. § 351.226(e)(1), which provides that Commerce "will issue a preliminary determination . . . no later than 150 days after the date of publication of the notice of initiation . . . If the Secretary concludes that an extension of the preliminary determination is warranted, the Secretary may extend that deadline by no more than 90 additional days." Commerce also has the power to extend its deadlines under 19 C.F.R. § 351.302(b) (for good cause) and § 351.226(e)(2) (on a finding that the inquiry is extraordinarily complicated).

Hoa Phat argues that "after taking the position that receiving Hoa Phat's questionnaire response after a holiday weekend warranted rejecting it, Commerce gave itself an additional five months to make its decision." Pl.'s Br. at 21. In addition, Hoa Phat contends that because Commerce rejected one of Hoa Phat's extension requests on the basis of Commerce's need to complete its inquiry under its own deadlines, Commerce committed "legal error" by later extending those deadlines. *Id.* at 23. Hoa Phat's theory is that "Commerce found that section (f)

presented a binding timing provision with respect to Hoa Phat, but expressly concluded the opposite when it invoked 19 C.F.R. § 351.302(b) to extend the final determination." *Id.* This argument fails for several reasons.

First, Commerce did not reject Hoa Phat's responses because of any Commerce deadline. In the November 17, 2022 Rejection Memo, Commerce laid out its reasoning for finding that Hoa Phat lacked good cause for its Sixth Extension Request and rejected the company's questionnaire responses as untimely. Rejection Memo at 5-7 (CPR 118, KPR 116, TPR 109). Commerce reached its determination "{b}ased on the totality of circumstances discussed" in the memo. *Id.* at 7. At no point in the memo are Commerce's own deadlines mentioned. This factor simply formed no part of Commerce's determination.

Similarly, Commerce did not cite the constraint of its own deadlines in the final determination to support its rejection of Hoa Phat's questionnaire responses. Because Hoa Phat raised the issue in its administrative case brief, Commerce's IDM discussed the reasons it extended its deadlines and explained that Commerce may reasonably find that good cause exists to extend its deadlines without obligating itself to find good cause for extending a deadline applicable to a respondent. IDM at 14 (CPR 236, KPR 223, TPR 219). This is why Commerce correctly noted that extensions of its deadline "are distinct from the question of whether Commerce lawfully rejected Hoa Phat's extension request for failure to demonstrate good cause{.}" *Id*.

Commerce alluded to its statutory deadline at earlier points in the proceeding. The first instance was Commerce's denial of Hoa Phat's Fourth Extension Request. There, Commerce denied Hoa Phat's request to extend the deadline by one week, from October 7, 2022 to October 14, 2022. Commerce wrote that "{b}ecause Commerce must conduct these circumvention inquiries within time limits required by U.S. law, Commerce is denying Hoa Phat's extension

request. Accordingly, Hoa Phat's response to the initial questionnaire remains due no later than 5:00 p.m. Eastern Time, October 7, 2022." Denial of Fourth Extension Request at 2 (CPR 65, KPR 69, TPR 60). Hoa Phat describes this denial as "unsupported by substantial evidence." Pl.'s Br. at 24. Yet § 351.302(b) commits the granting of extensions to Commerce's discretion, providing that Commerce "*may*, for good cause, extend any time limit" – meaning that Commerce is not required to provide substantial evidence in support of its denial of an extension request. 19 C.F.R. § 351.302(b) (emphasis added); *see also Dongtai Peak Honey*, 777 F.3d at 1352 ("Commerce was not required to demonstrate good cause for rejecting Dongtai Peak's untimely submissions."); 19 C.F.R. § 351.226(f)(3) ("Questionnaire responses are due on the date specified by the Secretary."). In fact, Commerce is not compelled to extend a deadline even where good cause exists.

Hoa Phat subsequently submitted its Fifth Extension Request, seeking an extension to Tuesday, October 11, 2022. Commerce then contacted Hoa Phat by phone to better understand the issues Hoa Phat was facing. After the call, Commerce partially granted the Fifth Extension Request, extending the deadline to 11:59 p.m. on October 7, 2022. *See* Fourth Extension of Time at 2 (CPR 67, KPR 71, TPR 62). Commerce again stated that "because we are obliged to conduct this circumvention inquiry within time limits required by U.S. law, we cannot grant your request in full." *Id*. However, "{b}ased on a conversation with the undersigned, {an extension to 11:59 p.m. on October 7} will provide you sufficient time to address any OCR, document flattening, and filing process issues." *Id.* Hence, this second invocation of Commerce's deadline did not interfere with an extension that Hoa Phat itself represented as sufficient to timely prepare and submit its filing. Because Commerce has no legal obligation to grant any extensions to its deadlines, even where good cause may exist, and because Commerce later granted a fourth extension that was

tailored to accommodate Hoa Phat's expressly stated needs, Commerce's extension of its own

deadlines has no bearing on its lawful rejection of Hoa Phat's untimely questionnaire responses.

### c. Commerce Repeatedly Extended Hoa Phat's Deadline and Reasonably Found a Lack of Good Cause for Granting Additional Extensions

Commerce showed enormous flexibility in accommodating Hoa Phat by granting four

separate extensions of time for its questionnaire responses, and Hoa Phat has offered no basis to

undermine the reasonableness of Commerce's finding that the four previous extensions it had

granted Hoa Phat weighed against finding good cause for a fifth. *See* Rejection Memo at 7 (CPR

118, KPR 116, TPR 109) ("Commerce demonstrated a willingness to be flexible with deadlines

and granted Hoa Phat multiple extensions, including a last-minute extension on the day the

submissions were due, beyond the extensions granted to other companies in these circumvention

inquiries . . ."); IDM at 16-17 (CPR 236, KPR 223, TPR 219) ("We continue to find that there was

no indication that Hoa Phat took appropriate steps to file its initial questionnaire response in its

entirety before the deadline, despite being granted additional time on multiple occasions.").

Indeed, this Court has repeatedly denied abuse of discretion claims from parties that previously

received extensions of time from Commerce but believed they were entitled to more. *See Bebitz

CVD*, 433 F. Supp. 3d at 1305 (finding no abuse of discretion where "Commerce granted Bebitz

multiple extensions and had advised Bebitz of the potential consequences of failing to meet the

agency's deadlines{.}"); *Tau-Ken Temir*, 587 F. Supp. 3d at 1358 (finding no abuse of discretion

"particularly in light of the multiple extensions already granted to {plaintiff}.").

Hoa Phat claims that although "{i}t is true that Hoa Phat requested and received a number

of extensions," those extensions were "commensurate with the extensions granted to Vina One,

the other respondent, and the deadline for the initial response was actually short relative to a typical

antidumping response." Pl.'s Br. at 22. In fact, Hoa Phat's extension to 11:59 p.m. on October 7,

2022 meant that it received more time to complete its responses than Vina One. *See* IDM at 15 (CPR 236, KPR 223, TPR 219) ("all other respondents, who also had responses comprising thousands of pages and were also granted multiple extensions, filed their responses in their entirety by 5 p.m. on October 7 . . . . Hoa Phat was even granted time beyond what the other respondent in the instant circumvention inquiry was granted."). Nor was Hoa Phat's deadline especially "short" – its four extensions more than doubled the time it had to submit its responses, from 14 to 31 days, a window that was sufficient for other respondents to respond to an anti-circumvention questionnaire that Hoa Phat itself admitted asks for less information than an antidumping questionnaire. *See* Pl.'s Br. at 13.

Hoa Phat apparently believes it was entitled to as much time as it deemed necessary to file its responses. Indeed, that was the premise of Hoa Phat's Sixth Extension Request, which did not actually request a new deadline but merely asserted that its responses should "be deemed timely filed" at whatever time they happened to arrive. Sixth Extension Request at 3 (CPR 79, KPR 83, TPR 74). That is not how the antidumping law works – it is for Commerce, not respondents, to determine the timeliness of submissions. *See Dongtai Peak Honey*, 777 F.3d at 1352 (respondents may not "establish Commerce's deadlines"); *see also Yantai Timken*, 521 F. Supp. 2d at 1371 ("In order for Commerce to fulfill its mandate to administer the antidumping duty law, including its obligation to calculate accurate dumping margins, it must be permitted to enforce the time frame provided in its regulations.").

### d.  Commerce's Automatic Extension Mechanism Did Not Apply

Hoa Phat's last refuge is its argument that its submission was timely under Commerce's Automatic Extension Mechanism, which provides that "for submissions that are due at 5:00 p.m., if the Department is not able to notify the party requesting the extension of the disposition of the

request by 5:00 p.m., then the submission would be due by the opening of business (8:30 a.m.) on the next work day." *Extension of Time Limits*, 78 Fed. Reg. at 57,792. Hoa Phat's submission was due at 11:59 p.m., not 5:00 p.m. Hoa Phat nevertheless contends that because it received no response to its 11:47 p.m. Sixth Extension Request before the 11:59 p.m. deadline on Friday, October 7, and because it completed its submission before 8:30 a.m. on the next workday, Tuesday, October 11, the "purpose and spirit" of the Automatic Extension Mechanism applied to its submission and rendered it timely. Pl.'s Br. at 28. Commerce disagreed, determining that "the language in the preamble to the revision of 19 CFR § 351.302 is clear in that the automatic extension rule applies explicitly to deadlines of 5:00 p.m. Likewise, the preamble does not speak to a scenario where (as here) Commerce acted on a timely extension request before 5:00 p.m. and a filer sought a further extension minutes before the extended filing deadline." IDM at 16 (CPR 236, KPR 223, TPR 219).

Commerce's interpretation is a straightforward application of the plain text of the regulatory preamble, which took care to specify that the Automatic Extension Mechanism was "for submissions that are due at 5:00 p.m.," a clause that would be rendered meaningless surplusage if the mechanism applied to submissions due at any time. *See Eckstrom Indus., Inc. v. United States*, 254 F.3d 1068, 1073 (Fed. Cir. 2001) (rejecting interpretation of scope language in Commerce's antidumping order that would "render{} this language mere surplusage."). Elsewhere in the regulatory preamble, Commerce created other timeliness rules that hinged on the specific time of day at which the submission was due. *See, e.g.*, 78 Fed. Reg. at 57,792 (noting that "if a submission is due on Monday, December 2, 2013, for example, the submission must be received by 5:00 p.m." but "{o}n the other hand, if the Department specifies that a submission is due on Monday, December 2, 2013, at 12:00 noon, the party's extension request must be received before 12:00

noon{.}"). Commerce clearly attached significance to the specific times of day at which submissions could be due, and it would therefore be improper to read "5:00 p.m." out of the Automatic Extension Mechanism.

Hoa Phat's argument is a naked attempt to game the Automatic Extension Mechanism. On the day of the deadline, Hoa Phat requested, and Commerce explicitly rejected, an extension of the deadline to the morning of the next workday. Rather, Commerce adopted the 11:59 p.m. deadline as an alternative. *See* Fourth Extension of Time (CPR 68, KPR 72, TPR 63). Commerce made this decision on the afternoon of the due date in question based on Hoa Phat's explicit representations that the 11:59 p.m. deadline provided sufficient time. If the Automatic Extension Mechanism were deemed to apply here, Hoa Phat would be allowed to grant itself the exact extension that Commerce specifically rejected.

Hoa Phat believes that the plain text of the Automatic Extension Mechanism can be overcome by a concern that Commerce's interpretation would incentivize gamesmanship, by encouraging parties to stay silent about problems and wait until 4:59 p.m. to file an extension request and benefit from the Automatic Extension Mechanism. *See* Pl.'s Br. at 28. This policy concern is a matter for Commerce, not the Court, to consider. Further, it is unclear how Hoa Phat's interpretation would diminish the incentive to make last-minute extension requests. Indeed, Hoa Phat's 11:47 p.m. extension request appears to be an example of the very gamesmanship that Commerce sought to avoid, and that Hoa Phat claims to be above. Finally, Hoa Phat's interpretation would have distortive effects of its own. An Automatic Extension Mechanism that applies only to 5:00 p.m. deadlines would reflect the reasonable expectation of respondents that extension requests submitted prior to that time, during normal business hours, should normally receive a response from Commerce. But an 11:59 p.m. deadline, falling in the middle of the night

when Commerce is closed, can create no such expectation. It is unreasonable to imagine that when Commerce intentionally assigns an 11:59 p.m. deadline, a time at which it is highly unlikely to respond to any extension requests, Commerce is in fact creating a de facto automatic extension to 8:30 a.m. on the next workday based on its failure to respond.

Faced with these conflicts over the "purpose and spirit" of Commerce's words, the Court should instead apply their plain meaning and find that when Commerce says "5:00 p.m.," it means "5:00 p.m." Such an interpretation is, at the absolute minimum, reasonable.

## C. Commerce Properly Applied AFA Based on Hoa Phat's Untimely Questionnaire Responses

Hoa Phat argues that, having rejected its questionnaire responses and removed its information from the record, Commerce unlawfully applied facts available with an adverse inference to the company. Hoa Phat first claims that Commerce failed to provide notice of any deficiency in the questionnaire responses as required by 19 U.S.C. § 1677m(d) or provide Hoa Phat with an opportunity to correct the deficiency before applying an adverse inference. *See* Pl.'s Br. at 31-32. Next, Hoa Phat claims that the adverse inference that Commerce chose – that Hoa Phat was ineligible to certify that its shipments were not made with circumvented steel – was "impermissibly punitive," again because Commerce failed to provide Hoa Phat with notice that information regarding the origin of its steel was missing. These claims are nonsensical and foreclosed by both the plain text of the statute and court precedent.

Pursuant to 19 U.S.C. § 1677e(a)(2), if a respondent (i) withholds information that has been requested by Commerce; (ii) *fails to provide such information by the deadlines for submission of the information* or in the form and manner requested; (iii) *significantly impedes a proceeding*; or (iv) provides such information but the information cannot be verified, then Commerce "shall, subject to section 1677m(d) of this title, use the facts otherwise available in reaching the applicable

determination under this subtitle." 19 U.S.C. § 1677e(a)(2) (emphasis added). In turn, § 1677m(d)

provides that:

> If {Commerce} determines that a response to a request for information under this subtitle does not comply with the request, {Commerce} shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency in light of the time limits established for the completion of investigations or reviews under this subtitle.

19 U.S.C. § 1677m(d) (emphasis added).

Hoa Phat apparently believes that after it submitted its questionnaire responses past the

deadline, Commerce was then obligated to provide it with notice of this "deficiency" and give Hoa

Phat an opportunity to correct it. *See* Pl.'s Br. at 31. Hoa Phat imagines that § 1677m(d) creates an

additional round of extra time after the passage of Commerce's deadline. If that were true, every

respondent could submit out of time, wait for Commerce's "notice," and then "remedy" the

"deficiency" with an even later submission. This would not "remedy" the deficiency of

untimeliness at all but would instead exacerbate it, highlighting the absurdity of Hoa Phat's

imagined system.

In fact, Hoa Phat had all too much "notice" of the deficiency that would be created if it

submitted its questionnaire responses past the deadline. Commerce's constant communication with

Hoa Phat regarding the deadline, and Hoa Phat's repeated attempts to extend it, reflect Hoa Phat's

knowledge that its questionnaire responses would be rejected if it failed to meet the deadline.

Hence, Commerce provided Hoa Phat with notice. *See Bebitz AD*, 433 F. Supp. 3d at 1323

(rejecting claim of lack of § 1677m(d) notice for rejection of untimely questionnaire responses

where "Commerce was in constant contact with Bebitz regarding its questionnaire responses{.}").

Rather, because Hoa Phat knowingly "fail{ed} to provide {} information by the deadlines for

submission of the information," it fell squarely within the statutory ambit of § 1677e(a)(2),

permitting Commerce to reject Hoa Phat's untimely questionnaire responses and fill the resulting

gap in the record with facts otherwise available. 19 U.S.C. § 1677e(a)(2)(B); *see also* 19 C.F.R. §

351.302(d)(1)(i) ("Unless {Commerce} extends a time limit . . . {Commerce} will not consider or

retain in the official record of the proceeding untimely filed factual information").

After determining that the criteria for applying facts otherwise available have been met,

Commerce may select from such facts using an adverse inference if it "finds that an interested

party has failed to cooperate by not acting to the best of its ability to comply with a request for

information from {Commerce}{.}" 19 U.S.C. § 1677e(b)(1). Here, Commerce did not "conflate

the facts available analysis with the adverse inference analysis," as Hoa Phat claims, but instead

made a separate determination regarding whether the reasons for Hoa Phat's untimeliness satisfied

the statutory criteria to apply an adverse inference in selecting from the facts otherwise available.

Pl.'s Br. at 32. Commerce first determined that Hoa Phat "failed to provide timely information in

the form and manner requested and significantly impeded this circumvention inquiry" pursuant to

19 U.S.C. § 1677e(a)(2)(B) and (C). Commerce then additionally and separately determined that

"Hoa Phat failed to cooperate by not acting to the best of its ability by not complying with a request

for information in this inquiry{.}" IDM at 17 (CPR 236, KPR 223, TPR 219). As Commerce found,

Hoa Phat failed to take appropriate steps to file its questionnaire responses before the deadline

despite receiving multiple extensions of time. It made no attempt to begin filing sections of the

responses earlier in the day and instead started filing its responses only minutes before the mutually

agreed-upon extended deadline. *See id.* at 16-17; PDM at 5 (CPR 160, KPR 147, TPR 140).

The courts have repeatedly found AFA appropriate for respondents like Hoa Phat that fail

to do the maximum they are able to do to respond to requests for information on a timely basis.

*See, e.g., Dongtai Peak Honey*, 777 F.3d at 1355-56 ("Because Dongtai Peak was aware of the

deadline and had the opportunity to file an extension request prior to its expiration, its failure to do so . . . warranted application of AFA."); *Bebitz CVD*, 433 F. Supp. 3d at 1329 (upholding application of AFA where plaintiff-respondent "did not act to the best of its ability to provide Commerce timely and complete information."); *Tau-Ken Temir*, 587 F. Supp. 3d at 1363 (rejecting plaintiff-respondent's argument that "an adverse inference may not be drawn from failing to provide a questionnaire response," finding that plaintiffs "seem to misapprehend the applicable precedent regarding facts available. To avoid AFA, interested parties must 'do the maximum they are able to do.'") (quoting *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003)).

Moreover, this Court has repeatedly affirmed Commerce's practice of precluding non-cooperative respondents in anti-circumvention proceedings from participating in certification regimes as a consequence of the application of AFA. *See, e.g.*, *Max Fortune Indus. Co. Ltd. v. United States*, 37 C.I.T. 549, 560 (2013); *Ferrostaal Metals Gmbh v. United States*, 518 F. Supp. 3d 1357, 1376 (Ct. Int'l Trade 2021). The purpose of AFA is to "ensure that the party does not obtain a more favorable result by failing to cooperate than if it had cooperated fully." *Nippon Steel*, 337 F.3d at 1381 (quoting the Urugay Round Agreements Act Statement of Administrative Action, H.R. Doc. No. 103-316, vol. 1, at 870). Here, given Hoa Phat's own acknowledgement that Commerce's AFA determination that circumvention was occurring "was not particularly adverse," Commerce's exclusion of Hoa Phat from its certification regime was the sole adverse measure Commerce had to accomplish that purpose. Pl.'s Br. at 33. Thus, Commerce's finding that Hoa Phat's exclusion from the certification regime "is necessary to encourage cooperation with Commerce's inquiry" was reasonable and supported by substantial evidence. IDM at 22 (CPR 236, KPR 223, TPR 219).

PUBLIC DOCUMENT

## V.    CONCLUSION

For the above reasons, Defendant-Intervenors respectfully request that the Court deny Hoa Phat's motion for judgment on the agency record and sustain Commerce's determination in full.

Respectfully submitted,

*/s/*  Jeffrey D. Gerrish
Roger B. Schagrin, Esq.
Jeffrey D. Gerrish, Esq.
Nicholas C. Phillips, Esq.
**SCHAGRIN ASSOCIATES**
900 Seventh Street, NW
Suite 500
Washington, DC 20001
*Counsel for Atlas Tube Inc.; Bull Moose Tube Company; Maruichi American Corporation; Searing Industries; Vest Inc.; and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC*

*/s/*  Robert E. DeFrancesco III
Alan H. Price, Esq.
Robert E. DeFrancesco III, Esq.
Jake R. Frischknecht, Esq
Kimberly A. Reynolds, Esq.
**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
*Counsel for Nucor Tubular Products Inc.*

July 19, 2024

PUBLIC DOCUMENT

### CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing response brief contains 13,985 words (including text, quotations, footnotes, headings, and attachments) and therefore complies with the word limitation set forth in this Court's Chamber's Procedures. In preparing this certificate of compliance, I have relied upon the word count function of the word processing system used to prepare the brief.

Dated:  July 19, 2024                                    /s/ Jeffrey D. Gerrish
                                                                Jeffrey D. Gerrish

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE**

| | |
|---|---|
| _____ ) | |
| HOA PHAT STEEL PIPE CO., LTD., ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| *v.* ) | |
| ) | |
| UNITED STATES, ) | Consol. Court No. 23-00248 |
| ) | |
| *Defendant,* ) | |
| ) | |
| *and* ) | |
| ) | |
| ATLAS TUBE INC.; BULL MOOSE TUBE ) | |
| COMPANY; MARUICHI AMERICAN ) | |
| CORPORATION; SEARING INDUSTRIES; ) | |
| UNITED STEEL, PAPER AND FORESTRY, ) | |
| RUBBER, MANUFACTURING, ENERGY, ) | |
| ALLIED INDUSTRIAL AND SERVICE ) | |
| WORKERS INTERNATIONAL UNION, ) | |
| AFL-CIO, CLC; VEST INC.; NUCOR ) | |
| TUBULAR PRODUCTS INC., ) | |
| ) | |
| *Defendant-Intervenors.* ) | |
| _____ ) | |

## <u>ORDER</u>

Upon consideration of Plaintiff's Rule 56.2 motion for judgment on the agency record, the

responses in opposition, and all other papers and pleadings herein, it is hereby

**ORDERED** that the motion is denied; and it is further

**ORDERED** that the challenged decision of the U.S. Department of Commerce is affirmed.

_____
Hon. Timothy M. Reif

Dated: _____, 2024
            New York, New York