IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:    THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| HOA PHAT STEEL PIPE CO., LTD., | |
| Plaintiff, | |
| v. | |
| THE UNITED STATES, | Consol. Ct. No. 23-00248 |
| Defendant, | |
| and | |
| ATLAS TUBE INC., BULL MOOSE TUBE COMPANY, MARUICHI AMERICAN CORPORATION, SEARING INDUSTRIES, UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC, VEST INC., NUCOR TUBULAR PRODUCTS INC., | |
| Defendant-Intervenors. | |

DEFENDANT'S RESPONSE TO PLAINTIFF'S RULE 56.2
MOTION FOR JUDGMENT ON THE AGENCY RECORD

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

FRANKLIN E. WHITE, JR.
Assistant Director

KRISTIN E. OLSON
Trial Attorney
Commercial Litigation Branch
U.S. Department of Justice
Civil Division
P.O. Box 480 | Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-6299
kristin.olson@usdoj.gov

*Attorneys for the United States*

OF COUNSEL

JonZachary Forbes
Office of the Chief Counsel for
Trade Enforcement & Compliance
U.S. Department of Commerce

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

STATEMENT PURSUANT TO RULE 56.2 ....................................................... 1

    I.      Administrative Determinations Under Review ........................................ 1

    II.     Statement Of Issues ............................................................................... 2

SUMMARY OF ARGUMENT ......................................................................... 10

ARGUMENT ................................................................................................... 11

    I.      Standard Of Review ............................................................................. 11

    II.     Commerce's Rejection of Hoa Phat's Untimely Initial
           Questionnaire Responses Is Not An Abuse Of Discretion And Is
           Otherwise In Accordance With Law .................................................... 13

          A.    Legal Framework ...................................................................... 13

          B.    Commerce Did Not Abuse Its Discretion By Rejecting Hoa
               Phat's Submissions ................................................................... 15

               1.    Commerce Reasonably Decided To Reject Hoa
                       Phat's Untimely Submissions And Found No Good
                       Cause to Further Extend the Submission Deadline ...... 16

               2.    The Cases Cited By Hoa Phat Do Not Establish That
                       Commerce Abused Its Discretion In This Case ........... 19

               3.    Hoa Phat's Remaining Arguments Are Unavailing ..................... 22

          C.    Commerce's Determination to Extend the Final
                Determinations Does Not Undermine Its Rejection of Hoa
                Phat's Untimely Submission ..................................................... 24

          D.    Commerce's Next-Business-Day Policy as Stated in the
               *Final Rule* Is Not Applicable ..................................................... 25

    III.    Commerce's Application Of AFA Was Supported By Substantial
           Evidence And In Accordance With Law ............................................... 27

          A.    Legal Framework ...................................................................... 27

          B.    19 U.S.C. § 1677m(d) Is Inapplicable To These Facts ............. 28

          C.    Commerce Properly Determined Hoa Phat Is Ineligible To
               Participate In The Certification Regime ................................... 30

CONCLUSION ................................................................................................ 31

TABLE OF AUTHORITIES

CASES                                                                    PAGE(S)

*Ajmal Steel Tubes & Pipes Indus. LLC v. United States*,
    No. 21-00587, 2022 WL 15943670 (Ct. Int'l Trade Oct. 28, 2022) .......................... 20, 22

*Altx, Inc. v. United States*,
    370 F.3d 1108 (Fed. Cir. 2004)........................................................................ 12

*ArcelorMittal USA LLC v. United States*,
    399 F. Supp. 3d 1271 (Ct. Int'l Trade 2019) .................................................. 22

*Artisan Mfg. Corp. v. United States*,
    978 F. Supp. 2d 1334 (Ct. Int'l Trade 2014) .................................................. 22

*Bebitz Flanges Works Priv. Ltd. v. United States*,
    433 F. Supp. 3d 1309 (Ct. Int'l Trade 2020) .................................................. 14

*Bebitz Flanges Works Priv. Ltd. v. United States*,
    433 F. Supp. 3d 1297 (Ct. Int'l Trade 2020) ...................................... 19, 23, 25

*Bio-Lab, Inc. v. United States*,
    487 F. Supp. 1291 (Ct. Int'l Trade 2020) ...................................................... 30

*Burlington Truck Lines, Inc. v. United States*,
    371 U.S. 156 (1962)........................................................................................ 13

*Celik Halat ve Tel Sanayi A.S. v. United States*,
    557 F. Supp. 3d 1348 (Ct. Int'l Trade 2022) ............................................ 20, 21

*Consol. Bearings Co. v. United States*,
    412 F.3d 1266 (Fed. Cir. 2005)...................................................................... 12

*Dongtai Peak Honey Indus. Co. v. United States*,
    777 F.3d 1343 (Fed. Cir. 2015)............................................... 14, 22, 23, 24

*Essar Steel, Ltd. v. United States*,
    678 F.3d 1268 (Fed. Cir. 2012)...................................................................... 28

*F.C.C. v. Fox Television Stations, Inc.*,
    556 U.S. 502 (2009)........................................................................................ 13

*F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States*,
    216 F.3d 1027 (Fed. Cir. 2000)...................................................................... 28

*Fed. Power Comm'n v. Transcon. Gas Pipe Line Corp.*,
    423 U.S. 326 (1976)........................................................................................ 14

*Ferrostaal Metals Gmbh v. United States*,
  518 F. Supp. 3d 1357 (Ct. Int'l Trade 2021) .................................................... 14, 23, 29, 31

*Fujitsu Gen. Ltd. v. United States*,
  88 F.3d 1034 (Fed. Cir. 1996) ............................................................................... 11

*In re Section 301 Cases*,
  628 F. Supp. 3d 1235 (Ct. Int'l Trade 2023) .................................................... 13

*Maverick Tube Corp. v. United States*,
  107 F. Supp. 3d 1318 (Ct. Int'l Trade 2015) .......................................................... 14, 23

*Mitsubishi Heavy Indus., Ltd. v. United States*,
  275 F.3d 1056 (Fed. Cir. 2001) ............................................................................... 12

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) ................................................................................................. 13

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*,
  422 F.3d 782 (9th Cir. 2005) .................................................................................. 12

*Nippon Steel Corp. v. Int'l Trade Comm'n*,
  345 F.3d 1379 (Fed. Cir. 2003) ............................................................................... 13

*Nippon Steel Corp. v. United States*,
  337 F.3d 1373 (Fed. Cir. 2003) ............................................................................... 27

*NTN Bearing Corp. v. United States*,
  74 F.3d 1204 (Fed. Cir. 1995) ................................................................................. 19

*Oman Fasteners, LLC v. United States*,
  No. 22-00348, 2023 WL 2233642 (Ct. Int'l Trade Feb. 15, 2023) ........................... 20, 21

*PSC VSMPO-Avisma Corp. v. United States*,
  688 F.3d 751 (Fed. Cir. 2012) ............................................................................... 13, 14, 23

*Reiner Brach GmbH & Co. v. United States*,
  206 F. Supp. 2d 1323 (Ct. Int'l Trade 2002) .................................................... 14

*Seneca Foods Corp. v. United States*,
  663 F. Supp. 3d 1325 (Ct. Int'l Trade 2023) .................................................... 13

*Shelter Forest Int'l Acquisition, Inc. v. United States*,
  497 F. Supp. 3d 1388 (Ct. Int'l Trade 2021) .................................................... 20

*Sunpreme Inc. v. United States*,
  946 F.3d 1300 (Fed. Cir. 2020) ............................................................................... 12

*Tau-Ken Temir LLP v. United States*,
    587 F. Supp. 3d 1346 (Ct. Int'l Trade 2022) ....................................... 19, 22, 25

*United States v. Eurodif S. A.*,
    555 U.S. 305 (2009)............................................................................... 12

*Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
    435 U.S. 519 (1978) .............................................................................. 14

*Yantai Timken Co. v. United States*,
    521 F. Supp. 2d 1356 (Ct. Int'l Trade 2007) ..................................... 14

Statutes

19 U.S.C. § 1677e(a)................................................................................ 4, 27, 29

19 U.S.C. § 1677e(b) ............................................................................... 4, 30

19 U.S.C. § 1677e(b)(1)........................................................................... 27

19 U.S.C. § 1677m(d)............................................................................... 11, 20, 28, 29

Regulations

19 C.F.R. § 351.226(c)............................................................................. 2

19 C.F.R. § 351.226(d) ............................................................................ 2

19 C.F.R. § 351.302(b) ............................................................................ 7, 15, 25

19 C.F.R. § 351.302(c)............................................................................. 15

19 C.F.R. § 351.302(d) ............................................................................ 4

19 C.F.R. § 351.302(d)(i)......................................................................... 7

19 C.F.R. § 351.303(b)(1)........................................................................ 15

Other Authorities

*Circular Welded Carbon Quality Steel Pipe from the People's Republic of China; Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea; Certain Welded Carbon Steel Standard Pipes and Tubes from India; Certain Circular Welded Carbon Steel Pipes and Tubes from Taiwan; Certain Circular Welded Non-Alloy Steel Pipe from Taiwan; Light-Walled Rectangular Pipe and Tube from the People's Republic of China; Light- Walled Rectangular Pipe and Tube from the Republic of Korea; Light-Walled Welded Rectangular Carbon Steel Tubing from Taiwan,*
    87 Fed. Reg. 47,711 (Dep't of Commerce Aug. 4, 2022)................................... 3

*Final Rule: Extension of Time Limits*,
    78 Fed. Reg. 57,790 (Dep't of Commerce Sept. 20, 2013) .......................................... 8, 15

*Light-Walled Rectangular Pipe and Tube from Mexico, the People's Republic of China, and the Republic of Korea*,
    73 Fed. Reg. 45,403 (Dep't of Commerce Aug. 5, 2008).................................................. 2

*Light-Walled Rectangular Pipe and Tube from the People's Republic of China*,
    73 Fed. Reg. 45,405 (Dep't of Commerce Aug. 5, 2008).................................................. 2

*Light-Walled Rectangular Pipe and Tube From the People's Republic of China*,
    88 Fed. Reg. 77,283 (Dep't of Commerce Nov. 9, 2023)............................................ 1, 10

*Light-Walled Rectangular Pipe and Tube From the Republic of China*,
    88 Fed. Reg. 21,985 (Dep't of Commerce Apr. 12, 2023) .................................................. 9

*Light-Walled Rectangular Pipe and Tube From the Republic of Korea*,
    88 Fed. Reg. 22,002 (Dep't of Commerce Apr. 12, 2023) .................................................. 8

*Light-Walled Rectangular Pipe and Tube From the Republic of Korea*,
    88 Fed. Reg. 77,266 (Dep't of Commerce Nov. 9, 2023)............................................ 1, 10

*Light-Walled Rectangular Welded Carbon Steel Pipe And Tube From Taiwan*,
    88 Fed. Reg. 21,980 (Dep't of Commerce Apr. 12, 2023) .................................................. 9

*Light-Walled Welded Rectangular Carbon Steel Tubing from Taiwan*,
    54 Fed. Reg. 12,467 (Dep't of Commerce Mar. 27, 1989).................................................. 2

*Light-Walled Welded Rectangular Carbon Steel Tubing From Taiwan*,
    88 Fed. Reg. 77,274 (Dep't of Commerce Nov. 9, 2023)............................................ 1, 10

Pursuant to Rule 56.2 of the Rules of this Court, defendant, the United States, respectfully responds to the motion for judgment on the agency record filed by plaintiff, Hoa Phat Steel Pipe Co., Ltd. (Hoa Phat), challenging the Department of Commerce's final affirmative determinations of circumvention of the antidumping duty orders covering light-walled rectangular pipe and tube (LWRPT) from the Republic of Korea (Korea), light-walled welded rectangular carbon steel tubing (LWR) from Taiwan, and the antidumping and countervailing duty orders on light-walled rectangular pipe and tube (LWRPT) from the People's Republic of China (China). As explained below, the motion should be denied because the final affirmative determinations of circumvention are supported by substantial evidence and are otherwise in accordance with law.

## STATEMENT PURSUANT TO RULE 56.2

I.    Administrative Determinations Under Review

The administrative determinations under review are: *Light-Walled Rectangular Pipe and Tube From the Republic of Korea*, 88 Fed. Reg. 77,266 (Dep't of Commerce Nov. 9, 2023) (final affirm. circumvention determin.) and accompanying Issues and Decision Memorandum (Korea IDM) (Nov 2, 2023) (K.P.R. 223); *Light-Walled Welded Rectangular Carbon Steel Tubing From Taiwan*, 88 Fed. Reg. 77,274 (Dep't of Commerce Nov. 9, 2023) (final affirm. circumvention determin.) and accompanying Issues and Decision Memorandum (Taiwan IDM) (Nov 2, 2023) (T.P.R. 219); and *Light-Walled Rectangular Pipe and Tube From the People's Republic of China*, 88 Fed. Reg. 77,283 (Dep't of Commerce Nov. 9, 2023) (final affirm. circumvention

determin.) and accompanying Issues and Decision Memorandum (China IDM) (Nov 2, 2023)

(C.P.R. 236).[1]  The period of each inquiry is January 1, 2017, through December 31, 2021.

II.    <u>Statement Of Issues</u>

      1.     Whether Commerce reasonably exercised its discretion in rejecting Hoa Phat's

initial questionnaire response and in enforcing the applicable deadline.

      2.     Whether Commerce's decision to exclude Hoa Phat from the certification regime

is supported by substantial evidence and is in accordance with law.

STATEMENT OF FACTS

      On May 17, 2022, domestic interested parties submitted a circumvention inquiry request

pursuant to 19 C.F.R. § 351.226(c) alleging circumvention of antidumping and countervailing

duty orders covering LWRPT from China, the antidumping duty order covering LWRPT from

Korea, and the antidumping duty order covering LWR from Taiwan.  *See generally* Domestic

Interested Parties Circumvention Allegation (K.P.R. 1, T.P.R. 1, C.P.R. 1); *see also Light-Walled

Rectangular Pipe and Tube from Mexico, the People's Republic of China, and the Republic of

Korea*, 73 Fed. Reg. 45,403 (Dep't of Commerce Aug. 5, 2008) (antidumping duty order) (AD

Korea and China Orders); *Light-Walled Rectangular Pipe and Tube from the People's Republic

of China*, 73 Fed. Reg. 45,405 (Dep't of Commerce Aug. 5, 2008) (countervailing duty order)

(CVD China Order); *Light-Walled Welded Rectangular Carbon Steel Tubing from Taiwan*, 54

Fed. Reg. 12,467 (Dep't of Commerce Mar. 27, 1989) (antidumping duty order) (Taiwan Order).

Consistent with 19 C.F.R. § 351.226(d), Commerce published an initiation notice for three

simultaneous circumvention inquires to determine whether certain imports of LWRPT and LWR

---

[1] For ease of reference, we follow plaintiff's citation format in citing to the three separate administrative records: we cite to the Korea record as "K.P.R." or "K.C.R."; the Taiwan record as "T.P.R." or "T.C.R."; the China record as "C.P.R." or "C.C.R."  *See* Pl. Br. 3 n.1.

2

completed in Vietnam using hot-rolled steel substrate manufactured in Korea, China, and Taiwan are circumventing the respective orders on a country-wide basis, as well as an additional four simultaneous circumvention inquiries on other orders covering various other pipe products.  *See Circular Welded Carbon Quality Steel Pipe from the People's Republic of China; Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea; Certain Welded Carbon Steel Standard Pipes and Tubes from India; Certain Circular Welded Carbon Steel Pipes and Tubes from Taiwan; Certain Circular Welded Non-Alloy Steel Pipe from Taiwan; Light-Walled Rectangular Pipe and Tube from the People's Republic of China; Light- Walled Rectangular Pipe and Tube from the Republic of Korea; Light-Walled Welded Rectangular Carbon Steel Tubing from Taiwan*, 87 Fed. Reg. 47,711 (Dep't of Commerce Aug. 4, 2022) (initiation notice).

On August 30, 2022, Commerce selected Hoa Phat and Vina One Steel Manufacturing Corp (Vina One) as the mandatory respondents in each of the circumvention inquiries.  See Memorandum: Circumvention Inquiry on Light-Walled Rectangular Pipe and Tube from the Republic of Korea: Respondent Selection (Aug. 30, 2022) (K.P.R. 39); Memorandum: Circumvention Inquiry on Light-Walled Welded Rectangular Carbon Steel Tubing From Taiwan: Respondent Selection (Aug. 30, 2022) (T.P.R. 34); Memorandum: Circumvention Inquiry on Light-Walled Rectangular Pipe and Tube from the People's Republic of China: Respondent Selection, (August 30, 2022) (C.P.R. 38).

Commerce then issued questionnaires to Hoa Phat in each respective circumvention inquiry on September 6, 2022, with an initial due date 14 days later on September 20, 2022.  *See* Initial Questionnaires (K.P.R. 43; T.P.R. 35; C.P.R. 39)  The questionnaire comprised 55 questions, with question 55 directing Hoa Phat to report factors of production of information

pursuant to Appendix IV. *Id.* at 2-15. The initial questionnaire also provided this guidance in

Appendix II:

> Commerce will not accept any requested information submitted
> after the deadline. As required by {19 C.F.R. § 351.302(d)}, we will
> reject such submissions as untimely. Therefore, failure to properly
> request extensions for all or part of a questionnaire response may
> result in the application of partial or total facts available, pursuant
> to {19 U.S.C. § 1677e(a)}, which may include adverse inferences,
> pursuant to {19 U.S.C. § 1677e(b)}.

*Id.* at II-23. The initial questionnaire further provided instructions for manual submission of the

responses, including clarification that Commerce would accept manual filing of a "bulky

document," *i.e.*, a document exceeding 500 pages in length. *Id.* at II-19-II-20.

> The following day on September 7, 2022, Hoa Phat submitted a letter requesting

Commerce extend the deadline by six weeks. *See* Hoa Phat Letter (Sept. 7, 2022) (K.P.R. 45;

T.P.R. 39; C.P.R. 41) (First Extension Request). Commerce granted the extension in part,

establishing a new deadline of September 27, 2022, while also noting that "our decision to grant

this extension in part may affect the amount of time that we are able to afford you to submit

responses to any supplemental questions and/or requests for additional information." *See*

Commerce Letter (Sept. 14, 2022) (K.P.R. 50, T.P.R 41. C.P.R. 45) (Commerce First Extension).

> On September 21, Hoa Phat submitted a second letter requesting a week extension until

October 4, 2022, specifically, "to submit Hoa Phat's response to Question 46 of the initial

questionnaire, and Appendix IV (Factors of Production)." Hoa Phat Letter (Sept. 21, 2022)

(K.P.R. 57; T.P.R. 48; C.P.R. 53) (Second Extension Request). On September 23, 2022,

Commerce granted the full extension request to the initial questionnaire response making the

new deadline October 4, 2022. *See* Commerce Letter (Sept. 23, 2022) (K.P.R. 59; T.P.R. 50;

C.P.R. 55) (Commerce Second Extension). Commerce stated even though Hoa Phat requested a

one-week extension only to respond to Question 46 and Appendix IV that it was granting a one-

week extension for Hoa Phat's response to all sections of the questionnaire.  *Id.* at 4.

Additionally, Commerce announced that it was not requiring responses to certain questions and

limited the scope of other questions in the initial questionnaire.  *Id.* at 2-3 (*e.g.*, parties are not

required to respond to questions 43 and 44, parties may report information for only calendar year

2021 for questions 41 and 42).

On September 30, 2022, even though Commerce granted its second extension request in

full and narrowed the scope of the requested information, Hoa Phat submitted its third extension

request asking that the deadline again be extended until October 7, 2022.  *See* Hoa Phat Letter

(Sept. 30, 2022) (K.P.R. 62; T.P.R. 53; C.P.R. 58) (Third Extension Request).  On October 3,

2022, Commerce again granted the third extension request in full[2], extending the deadline until

October 7, 2022.  *See* Commerce Letter (Oct. 3, 2022) (K.P.R. 65; T.P.R. 56; C.P.R. 61)

(Commerce Third Extension).  Again, Commerce noted that "alternative arrangements must be

made for manual filings that are excepted from the electronic filing requirement.  If an exception

applies and you are unable to file your submission electronically, please contact an official in

charge at least 72 hours before the due date."  *Id.*

On October 5, 2022, Hoa Phat submitted a fourth extension request asking the deadline

be further extended until October 14, 2022.  *See* Hoa Phat Letter (Oct. 5, 2022) (K.P.R. 67;

T.P.R. 58; C.P.R. 63) (Fourth Extension Request).  On October 6, 2022, Commerce declined to

grant this fourth extension request, explaining that it had already granted multiple extensions.

*See* Commerce Letter (Oct. 6, 2022) (K.P.R. 69; T.P.R. 60; C.P.R.65) (Commerce Extension

Denial).  The same day, at approximately 4:15 p.m., Commerce spoke to Hoa Phat's counsel by

---

[2] We note that Hoa Phat refers to this as a "Partial Extension" despite Commerce granting
the requested extension in full.  *See* Hoa Phat Br. 7.

phone and recommended that counsel start filing early to meet the October 7, 2022 deadline. *See* Commerce Rejection Memorandum (Nov. 17, 2022) at 3 (K.P.R. 116,117; T.P.R. 109, 110; C.P.R. 118, 119) (Rejection Memo).

On October 7, 2022, at approximately 12:30 p.m., Hoa Phat's counsel contacted Commerce, which provided guidance on filing requirements and again encouraged Hoa Phat's counsel to start filing the response as soon as possible. *Id.* At approximately 1:30 p.m., Hoa Phat's counsel again contacted Commerce to seek an extension of the deadline from October 7, 2022, 5:00 p.m. ET until 11:59 p.m. ET. *Id.* At roughly the same time, Hoa Phat filed another written extension request on ACCESS, requesting the deadline be extended until October 11, 2022, at 10:00 a.m. ET due to technical aspects of preparing documents for submission. Hoa Phat Letter (Oct. 7, 2022) (K.P.R. 71; T.P.R. 62; C.P.R.67) (Fifth Extension Request). At approximately 2:30 p.m., Commerce contacted Hoa Phat's counsel and confirmed that Hoa Phat could complete submission of its initial questionnaire response if the deadline were extended until October 7, 2022, at 11:59 p.m. ET. *See* Rejection Memo at 3. At approximately 3:11 p.m., Commerce released a letter granting Hoa Phat's extension request in part and establishing a new deadline for Hoa Phat of October 7, 2022, at 11:59 p.m. ET, stating that, based on its conversation with Hoa Phat's counsel, this additional time would provide Hoa Phat sufficient time to address any filing process issues. *See* Commerce Letter (Oct. 7, 2022) (K.P.R. 72; T.P.R. 63; C.P.R.68) (Commerce Fourth Extension). Notably, Commerce extended the deadline for Hoa Phat beyond the 5 p.m. ET deadline still applicable to the other mandatory respondent, Vina One, who had timely submitted its questionnaire response before 5 p.m. ET. *See* IDM (K.P.R. at 223) at 15; (C.P.R. 236) at 14; (T.P.R. 219) at 15.

At approximately 11:46 p.m. on October 7, 2022, Hoa Phat submitted yet another extension request that did not request a specific extension of the deadline but did "respectfully request that Hoa Phat's submission be deemed timely filed even in the wee hours of the night." *See* Hoa Phat Letter (Oct. 12, 2022) at Exhibit 2 and Exhibit 3 (establishing Oct. 7, 2022 submission to ACCESS) (K.P.R. 83; T.P.R. 74; C.P.R. 79) (Sixth Extension Request). In this sixth extension request, Hoa Phat's counsel stated that Hoa Phat had "completed their response and sent all documents to counsel well in advance of the deadline. Counsel also reviewed all the documents in ample time to make a timely filing. The problem has been solely technical and due to the strain on computers to process in the format required by ACCESS (principally the OCR and flattening process)." *Id.* at Exhibit 2 at 3.

Hoa Phat began submission of part of its initial questionnaire responses across all three inquiry records by its new October 7, 2022 11:59 p.m. ET deadline, but it did not finish submission until October 8, 2022 at approximately 2:24 p.m. for the China inquiry, October 8, 2022 at approximately 10:16 p.m. for the Taiwan inquiry, and not until October 10, 2022 for the Korea inquiry. *See* Rejection Memo (K.P.R. 116,117; T.P.R. 109, 110; C.P.R. 118, 119) at 4-5.

On November 17, 2022, Commerce issued a memorandum notifying Hoa Phat that it had determined that Hoa Phat had not established good cause to have extended the deadline beyond the October 7, 2022 11:59 p.m. deadline pursuant to 19 C.F.R. § 351.302(b), and therefore determined the questionnaire response submissions were untimely consistent with 19 C.F.R. § 351.302(d)(i) and (2). *Id.* at 7.

On November 29, 2022, Hoa Phat submitted a letter requesting Commerce reconsider its decision, asserting that Commerce's policy establishes that if a request for an extension is filed and Commerce does not notify the party of the disposition of the deadline before 5:00 p.m., then

the submission would be due by 8:30 a.m. the following business day.  *See* Req. for

Reconsideration (K.P.R. 119; T.P.R. 112; C.P.R. 121) (citing *Final Rule: Extension of Time*

*Limits*, 78 Fed. Reg. 57,790, at 57,792 (Dep't of Commerce Sept. 20, 2013) (*Final Rule*)).  On

December 13, 2022, Commerce notified Hoa Phat that it was declining to reconsider its prior

determination, and it further stated the policy described in the regulatory preamble did not apply

to this situation because the *Final Rule* provides, "{f}or submissions that are *due at 5:00 p.m.*

{ET}, if the Department is not able to notify the party requesting the extension of the disposition

of the request by 5:00 p.m. {ET}, then the submission would be due by the opening of business

(8:30 a.m.) on the next work day."  *See* Commerce Letter (K.P.R. 121; T.P.R. 115; C.P.R. 128)

(emphasis added).  Commerce stated that it had responded to Hoa Phat's earlier extension

request and granted the further extension until 11:59 p.m. ET, and that the *Final Rule* does not

speak to a scenario where Commerce acted on a timely extension request before 5:00 p.m. ET

and a filer sought a further extension after business hours (*i.e.*, where the deadline is no longer

5:00 p.m. as stated in the *Final Rule*).  *Id.* at 1-2.

        Over the next few months, Commerce issued two supplemental questionnaires to Vina

One on January 9, 2023, and February 17, 2023, in the Korea inquiry (K.P.R. 124, 131), and

three supplemental questionnaires to Vina One on November 29, 2022, February 3, 2023, and

February 24, 2023 (C.P.R. 122, 132, 136).  Commerce continued to receive multiple submissions

from parties leading up to the preliminary determinations.  See Korea PDM at 2-3; China PDM

at 2-3; Taiwan PDM at 2-3.

        On April 6, 2023, Commerce issued its Preliminary Issues and Decision Memoranda in

each circumvention inquiry.  *See Light-Walled Rectangular Pipe and Tube From the Republic of*

*Korea*, 88 Fed. Reg. 22,002 (Dep't of Commerce Apr. 12, 2023) (prelim. affirm. circumvention

determin.) and accompanying Issues and Decision Memorandum (K.P.R. 147); *Light-Walled Rectangular Welded Carbon Steel Pipe And Tube From Taiwan*, 88 Fed. Reg. 21,980 (Dep't of Commerce Apr. 12, 2023) and accompanying Issues and Decision Memorandum (T.P.R. 140); *Light-Walled Rectangular Pipe and Tube From the Republic of China*, 88 Fed. Reg. 21,985 (Dep't of Commerce Apr. 12, 2023) (prelim. affirm. circumvention determin.) and accompanying Issues and Decision Memorandum (C.P.R. 160).  In each inquiry, Commerce preliminarily made an affirmative circumvention determination on a country-wide basis.  *Id.* Additionally, in each inquiry Commerce determined to apply facts available with an adverse inference (AFA) to Hoa Phat to determine that Hoa Phat had produced and/or exported merchandise subject to the inquiries and that the criteria with respect to Hoa Phat supported an affirmative finding of circumvention.  *See* PDM (C.P.R. 6).  Commerce further preliminarily determined that Hoa Phat was not eligible to participate in the certification regime that Commerce had established consistent with its practice.  *Id.*  Cooperative companies, such as Vina One, were able to participate in the certification regime.  *Id.* at 30.

Following the preliminary determinations, Commerce provided parties an opportunity to submit two administrative case briefs in advance of the final determinations.  *See* Schedule for First Set of Deadlines for Case and Rebuttal Briefs (Apr. 20, 2023) (K.P.R. 151); Second Set of Deadlines for Case and Rebuttal Briefs (May 16, 2023) (K.P.R. 180).  On July 26, 2023, Commerce held an administrative hearing as requested by parties.  *See* Hearing Transcript (K.P.R. 210).

On November 9, 2023, Commerce published notices of its final affirmative determinations making no changes from its conclusions in the preliminary determinations with respect to its treatment of Hoa Phat.  *See Light-Walled Rectangular Pipe and Tube From the*

*Republic of Korea*, 88 Fed. Reg. 77,266 (Dep't of Commerce Nov. 9, 2023) (final affirm. circumvention determin.) and accompanying Issues and Decision Memorandum (Nov 2, 2023) (K.P.R. 223); *Light-Walled Welded Rectangular Carbon Steel Tubing From Taiwan*, 88 Fed. Reg. 77,274 (Dep't of Commerce Nov. 9, 2023) (final affirm. circumvention determin.) and accompanying Issues and Decision Memorandum (Nov 2, 2023) (T.P.R. 219); *Light-Walled Rectangular Pipe and Tube From the People's Republic of China*, 88 Fed. Reg. 77,283 (Dep't of Commerce Nov. 9, 2023) (final affirm. circumvention determin.) and accompanying Issues and Decision Memorandum (Nov. 2, 2023) (C.P.R. 236).

<u>SUMMARY OF ARGUMENT</u>

Commerce provided a reasoned explanation for why it declined to find good cause to extend the deadline for Hoa Phat's initial questionnaire response and as such did not abuse its discretion. Commerce granted Hoa Phat multiple extensions in advance of the ultimate October 7, 2022 deadline, including granting two extension requests in full. As a result, Hoa Phat received an additional 17 days to submit its responses – more than doubling its original response time – from September 20, 2022, to October 7, 2022. On the day of October 7, 2022, Commerce confirmed explicitly with Hoa Phat's counsel that a further extension beyond the 5:00 p.m. deadline applicable to other parties in the inquiries to the 11:59 p.m. deadline on October 7, 2022, would allow for it timely submit its responses. However, despite earlier multiple extensions of time, Hoa Phat failed to submit its responses by that extended deadline. Even though Hoa Phat claims technical difficulties with its filings, it began filing only minutes before the extended deadline, even though Commerce had repeatedly encouraged it to begin filing. Moreover, Hoa Phat could have avoided potential technical issues entirely had it arranged in advance for a manual submission of its responses. Hoa Phat did not finish filing its questionnaire responses until the following afternoon for the Taiwan inquiry, the following

10

evening for the Korea inquiry, and three days later for the China inquiry.  Commerce therefore

did not abuse its discretion in rejecting the untimely submissions.  Commerce's later

determination to extend the issuance of the final determinations is a separate determination

following Commerce's evaluation of the other voluminous submissions that parties had timely

submitted on the record and the evaluation of multiple party administrative briefs.  Commerce's

next-business-day policy as explained in the *Final Rule* does not save Hoa Phat's untimely

submissions, because the policy did not apply in Hoa Phat's situation here.

Commerce also lawfully applied AFA to Hoa Phat and in doing so also lawfully found

Hoa Phat to be ineligible to participate in the resulting certification regime.  Commerce was not

required to provide another opportunity to Hoa Phat to submit its response before rejecting the

submission under 19 U.S.C. § 1677m(d) and requiring Commerce to do so would lead to absurd

results where Commerce would be unable to enforce its deadlines.  Finally, Commerce's

decision to bar Hoa Phat from participating in the certification regime is consistent with

Commerce's policy and is necessary to ensure that non-cooperative parties do not receive the

exact treatment as cooperative parties in circumvention inquiries.  The Court has upheld this

reasoning, and Hoa Phat fails to offer any basis for the Court to revisit its prior holdings.

Importantly, Commerce provided notice to parties that they may participate in future

administrative reviews of the respective orders to regain their ability to participate in the

certification regime, undermining Hoa Phat's arguments that the policy is punitive.

ARGUMENT

I.    Standard Of Review

Commerce's determinations, findings, or conclusions in a countervailing duty proceeding

are upheld unless "unsupported by substantial evidence on the record, or otherwise not in

accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i); *see also Fujitsu Gen. Ltd. v. United*

11

*States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996).  "The specific factual findings on which {Commerce} relies in applying its interpretation are conclusive unless unsupported by substantial evidence." *United States v. Eurodif S. A.*, 555 U.S. 305, 316 n.6 (2009).  A party challenging a determination under the substantial evidence standard "has chosen a course with a high barrier to reversal."  *Mitsubishi Heavy Indus., Ltd. v. United States*, 275 F.3d 1056, 1060 (Fed. Cir. 2001).  Substantial evidence is "more than a mere scintilla" and is evidence that "a reasonable mind might" accept as adequate.  *Sunpreme Inc. v. United States*, 946 F.3d 1300, 1308 (Fed. Cir. 2020) (citation omitted).  The agency's findings may be supported by substantial evidence even if the possibility of drawing two inconsistent conclusions exists.  *Id.* at 1308-09. The Court must sustain the determination if it is "reasonable and supported by the record as a whole, even if some evidence detracts from {Commerce's} conclusion."  *Altx, Inc. v. United States*, 370 F.3d 1108, 1121 (Fed. Cir. 2004).

    "An abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors."  *Consol. Bearings Co. v. United States*, 412 F.3d 1266, 1269 (Fed. Cir. 2005) (citation omitted); *see also Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 422 F.3d 782, 798 (9th Cir. 2005) ("An abuse of discretion is 'a plain error, discretion exercised to an end not justified by the evidence, a judgment that is clearly against the logic and effect of the facts as are found.'" (citation omitted)).

    Further, agency action is arbitrary and capricious when the agency has "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or made a decision so implausible that it could not be ascribed to a difference in view or

the product of agency expertise." *Seneca Foods Corp. v. United States*, 663 F. Supp. 3d 1325, 1335 (Ct. Int'l Trade 2023) (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). The record supporting an agency's decision must ultimately support a "rational connection between the facts found and the choice made." *See Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962). Moreover, arbitrary and capricious review is a "narrow" inquiry. *See F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009). In reviewing agency action, the court may not reweigh evidence or substitute the agency's reasoned decisionmaking with its own reasoning. *See Nippon Steel Corp. v. Int'l Trade Comm'n*, 345 F.3d 1379, 1381–82 (Fed. Cir. 2003); *In re Section 301 Cases*, 628 F. Supp. 3d 1235, 1248 (Ct. Int'l Trade 2023) (explaining that agency action cannot be overturned on the basis of "mere disagreement").

II.    Commerce's Rejection of Hoa Phat's Untimely Initial Questionnaire Responses Is Not An Abuse Of Discretion And Is Otherwise In Accordance With Law

Commerce provided a reasoned explanation supporting its decision to reject Hoa Phat's untimely submission of its initial questionnaire response, after having provided Hoa Phat multiple extensions, including a final extension on the day of the deadline, which Hoa Phat's counsel confirmed would provide it with sufficient time to finish submission of the response. Contrary to arguments by Hoa Phat, Commerce's determination not to grant an extension in such a scenario is not an abuse of discretion.

A.    Legal Framework

The Court of Appeals for the Federal Circuit has made clear that "{a}bsent constitutional constraints or extremely compelling circumstances the administrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties." *PSC VSMPO-Avisma Corp. v. United States*, 688

F.3d 751, 760 (Fed. Cir. 2012) (quoting *Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 543–44 (1978)).  "Accordingly, absent such constraints or circumstances, courts will defer to the judgment of an agency regarding the development of the agency record."  *Dongtai Peak Honey Indus. Co. v. United States*, 777 F.3d 1343, 1351 (Fed. Cir. 2015) (citing *PSC VSMPO*, 688 F.3d at 760).  "To do otherwise would 'run the risk of propelling the courts into the domain which Congress has set aside exclusively for the administrative agency.'"  *PSC VSMPO*, 688 F.3d at 760 (cleaned up) (quoting *Fed. Power Comm'n v. Transcon. Gas Pipe Line Corp.*, 423 U.S. 326, 333 (1976)).  As a result, "Commerce has broad discretion to establish its own rules governing administrative procedures, including the establishment and enforcement of time limits."  *Yantai Timken Co. v. United States*, 521 F. Supp. 2d 1356, 1370–71 (Ct. Int'l Trade 2007) (citing *Reiner Brach GmbH & Co. v. United States*, 206 F. Supp. 2d 1323, 1334 (Ct. Int'l Trade 2002)); *see also Bebitz Flanges Works Priv. Ltd. v. United States*, 433 F. Supp. 3d 1309, 1325 (Ct. Int'l Trade 2020) (*Bebitz AD*).  Further, "it is fully within Commerce's discretion to 'set and enforce deadlines' and a court 'cannot set aside application of a proper administrative procedure because it believes that properly excluded evidence would yield a more accurate result if the evidence were considered.'"  *See Ferrostaal Metals Gmbh v. United States*, 518 F. Supp. 3d 1357, 1367 (Ct. Int'l Trade 2021) (citing *Dongtai Peak*, 777 F.3d at 1351) (citations omitted).  Importantly, "{s}trict enforcement of time limits and other requirements is neither arbitrary nor an abuse of discretion when Commerce provides a reasoned explanation for its decision."  *Maverick Tube Corp. v. United States*, 107 F. Supp. 3d 1318, 1331 (Ct. Int'l Trade 2015).

Commerce's regulations provide that "{a}n electronically filed document must be received successfully in its entirety by the Department's electronic records system, . . . on the

due date." 19 C.F.R. § 351.303(b)(1).  However, a party may request an extension "{b}efore the

applicable time limit . . . expires," 19 C.F.R. § 351.302(c), and Commerce "may, for good cause,

extend any time limit established by this part," 19 C.F.R. § 351.302(b).  Commerce's *Final Rule*

warns, however, that "the likelihood of the Department granting an extension will decrease the

closer the extension request is filed to the applicable time limit because the Department must

have time to consider the extension request and decide on its disposition." *Final Rule*, 78 Fed.

Reg. 57,790, at 57,792 (Dep't of Commerce Sept. 20, 2013).  Accordingly, "{p}arties should not

assume that they will receive an extension of a time limit if they have not received a response

from the Department." *Id.*  However, the *Final Rule* does provide that "{f}or submissions that

are due at 5:00 p.m., if the Department is not able to notify the party requesting the extension of

the disposition of the request by 5:00 p.m., then the submission would be due by the opening of

business (8:30 a.m.) on the next work day." *Id.*

    B.    Commerce Did Not Abuse Its Discretion By Rejecting Hoa Phat's Submissions

    Commerce's decision to reject Hoa Phat's untimely submissions across the three

circumvention inquiries was not an abuse of discretion.  The applicable regulation is permissive

– it provides that Commerce "*may*, for good cause, extend any time limit established by this

part." 19 C.F.R. § 351.302(b) (emphasis added).  Commerce provided a reasoned explanation

for why it found that Hoa Phat failed to demonstrate good cause to further extend the deadline

under these specific facts.  IDM at 14-17 (K.P.R. 223).[3]  In light of the circumstances –

including Hoa Phat's receipt of multiple extensions, its receipt of repeated advice to begin filing

early, and its counsel's same-day commitment that the final seven-hour extension would be

---

[3] For purposes of this section, the citations and page numbers are to the Korea IDM
though Commerce's analysis is reproduced across all three records' IDMs.  *See* China IDM
(C.P.R. 236) at 14-17; Taiwan IDM (T.P.R. 219) at 14-17.

sufficient – Commerce did not abuse its discretion in rejecting Hoa Phat's ultimately untimely submissions.

      1.     Commerce Reasonably Decided To Reject Hoa Phat's Untimely Submissions And Found No Good Cause to Further Extend the Submission Deadline

Commerce reasonably decided to reject Hoa Phat's untimely submissions.  First, Commerce had previously granted Hoa Phat three extensions before the initial October 7, 2022 5 p.m. deadline, and in the last two of which Commerce had granted Hoa Phat's full request.  IDM at 14; *see also* Commerce First Extension, Commerce Second Extension, Commerce Third Extension.  As a result, Hoa Phat received an additional 17 days to submit its responses, which more than doubled its original response time.  Additionally, in Hoa Phat's September 21, 2022 extension request, it only requested an extension to submit a response for question 46 and Appendix IV of the questionnaire, which indicates that Hoa Phat was in the position to file the other parts of its response well before the then-October 4 deadline.  *See* Commerce Rejection Memo at 5-6.  In its letter granting the second extension, Commerce provided Hoa Phat additional time to submit the entirety of its response and limited the number and scope of the questions.  *See* Commerce Second Extension.  Further, in each letter, Commerce included language informing parties that they may file large submissions manually.  *See* Commerce First Extension, Commerce Second Extension, Commerce Third Extension.

Second, Hoa Phat's counsel had confirmed to Commerce that a final extension of seven hours would be sufficient.  On the day of the October 7, 2022 deadline, Commerce explicitly confirmed with Hoa Phat's counsel that if it were granted additional time – moving Hoa Phat's deadline beyond other parties' 5 p.m. deadline to until 11:59 p.m. – that Hoa Phat could submit its response before the new 11:59 p.m. deadline.  IDM at 15; *see* Rejection Memo at 3.  Relying

on its conversation with Hoa Phat's counsel, Commerce granted a final extension until 11:59 p.m. on October 7, 2022.  IDM at 15; Commerce Fourth Extension.

Third, after being granted its last-minute extension request, Hoa Phat did not begin filing its submissions until minutes before the deadline for each inquiry.  IDM at 15.  Instead of timely filing its response by the extended 11:59 p.m. October 7, 2022 deadline, Hoa Phat filed its *sixth* extension request at approximately 11:46 p.m. on October 7, 2022, just hours after Hoa Phat's counsel had assured Commerce that the new 11:59 p.m. deadline would be met, if granted.  *See* Hoa Phat Letter (Oct. 12, 2022) at Exhibit 2 and Exhibit 3 (establishing Oct. 7, 2022 submission to ACCESS) (K.P.R. 83; T.P.R. 74; C.P.R. 79) (Sixth Extension Request). The *Final Rule* put Hoa Phat and counsel on notice of Hoa Phat's decreasing likelihood of receiving an extension of time the closer the extension request was to the deadline. *See Final Rule*, 78 Fed. Reg. at 57,792 (stating that "the likelihood of the Department granting an extension will decrease the closer the extension request is filed to the applicable time limit because the Department must have time to consider the extension request and decide on its disposition.").  Hoa Phat's sixth request did not specify the amount of additional time Hoa Phat needed, but rather requested that "Hoa Phat's submission be deemed timely filed even in the wee hours of the night."  *See* Hoa Phat Letter (Oct. 12, 2022) at Exhibit 2 and Exhibit 3 (establishing October 7, 2022 submission to ACCESS) (K.P.R. 83; T.P.R. 74; C.P.R. 79) (Sixth Extension Request).

Fourth, until the final extension, Commerce had treated all respondents in a consistent manner and had granted the same extensions to all interested parties.  Vina One faced circumstances similar to those faced by Hoa Phat – it was required to submit the same amount of information requested in the questionnaire and it faced the same filing requirements – yet it was able to complete the submission of its questionnaire response in a timely manner by 5:00 p.m. on

October 7, 2022.  *Id.*  In its last extension request, Hoa Phat did not point to any unexpected or unforeseeable issues beyond needing more time to prepare documents for filing, for which it had had ample time before that day to begin preparing.  IDM at 14-15; *see also* Sixth Extension Request.  Moreover, Hoa Phat had had an alternative path – Commerce had provided the parties with instructions for manual submission of the responses, including clarification that Commerce would accept manual filing of a "bulky document," *i.e.*, a document exceeding 500 pages in length.  *See* Initial Questionnaires at II-19-II-20 (K.P.R. 43; T.P.R. 35; C.P.R. 39).  However, as Commerce noted, Hoa Phat's counsel made no attempts to manually file the responses, which would have obviated any potential technical difficulties.  IDM at 15.

All of these facts demonstrate that Commerce had repeatedly accommodated Hoa Phat by granting it additional time, and ultimately granted Hoa Phat an additional extension beyond the extensions it had provided to other parties after Hoa Phat's counsel had confirmed that such extension would be sufficient to complete the filing.  Taking these facts into consideration, and consistent with the *Final Rule*, which provides that the likelihood of Commerce granting an extension will decrease the closer the extension request is filed to the applicable time limit, Commerce reasonably declined to find good cause to extend its already extended deadline yet further based on Hoa Phat's sixth extension request that Hoa Phat had waited to make until minutes before the applicable deadline.  *See* IDM at 14-17; *see also Final Rule*, 78 Fed. Reg. at 57,792.

In similar circumstances, this Court has held that substantial evidence supports Commerce's decision to reject an untimely filing.  In the *Bebitz CVD* case, the Court held that Commerce's rejection of an untimely submission was supported by substantial evidence where Commerce had previously granted the plaintiff multiple extensions and had advised the plaintiff

of the potential consequences of failing to meet the agency's deadlines.  *See Bebitz Flanges Works Priv. Ltd. v. United States*, 433 F. Supp. 3d 1297, 1305 (Ct. Int'l Trade 2020) (*Bebitz CVD*).  In *Tau-Ken Temir LLP v. United States*, the Court followed the *Bebitz CVD* decision in affirming Commerce's reject of an untimely initial questionnaire response.  *See Tau-Ken Temir LLP v. United States*, 587 F. Supp. 3d 1346, 1358 (Ct. Int'l Trade 2022).  The Court noted that the initial questionnaire had clearly stated that Commerce would not accept any requested information submitted after the established deadlines, the *Final Rule* had put the plaintiff and its counsel on notice of the decreasing likelihood of receiving an extension of time the closer the request was to the deadline, and the plaintiff had already received multiple extensions.  *Id.*

Commerce's decision to deny the sixth extension request and reject Hoa Phat's untimely submission was reasonable and in accordance with the law, and its decision should be affirmed.

2.    The Cases Cited By Hoa Phat Do Not Establish That Commerce Abused Its Discretion In This Case

The cases cited by Hoa Phat all are distinguishable from the above facts and do not undermine a conclusion that Commerce had reasonably exercised its discretion in this case. First, Hoa Phat cites *NTN Bearing* for the proposition that a regulation not required by statute must be waived where failure to do so would be an abuse of discretion.  *See* Hoa Phat Br. 14 (citing *NTN Bearing Corp. v. United States*, 74 F.3d 1204, 1207 (Fed. Cir. 1995)).  However, the Federal Circuit's analysis in *NTN Bearing* concluding that Commerce had abused its discretion when it declined to accept corrections to clerical errors identified by the respondent was within the context of correcting clerical errors.  *See NTN Bearing*, 74 F.3d at 1207 ("Thus, NTN makes a persuasive argument that clerical errors of a respondent are different in nature from substantive errors, e.g., errors that result from errors of judgment, and that the information it supplied does not fall within the purview of the cited regulation.").  Here, clerical issues are not at issue;

instead (despite multiple extensions of time), Hoa Phat failed to timely submit the entirety of its initial questionnaire response in each of the circumvention inquiries.

Second, Hoa Phat cites *Shelter Forest Int'l Acquisition, Inc. v. United States*, 497 F. Supp. 3d 1388, 1402 (Ct. Int'l Trade 2021), Hoa Phat Br. at 14, but *Shelter Forest* involved a situation in which a party had submitted timely statements demonstrating that inquiry merchandise was commercially available prior to the relevant orders. *Shelter Forest*, 497 F. Supp. 3d at 1398-1401. In its preliminary determination, Commerce found such statements deficient because the party had failed to provide supporting documentation, and it then rejected the party's attempt to provide such documentation after it became aware of the deficiency. *Id.* The Court held that "Commerce abused its discretion by rejecting Shelter Forest's submission as untimely when it had not provided notice to Shelter Forest regarding any deficiencies {in its original timely submission}, as required by 19 U.S.C. § 1677m(d)." *Id.* at 1400. Here, however, Hoa Phat did not file a timely submission and then attempt to remedy identified deficiencies. Hoa Phat failed to timely file any submission, even after Commerce had granted Hoa Phat multiple extensions, including a last-minute extension beyond the extensions received by other parties in the inquiries.

Third, Hoa Phat cites three recent cases – *Oman Fasteners*, *Celik Halat*, and *Ajmal* – to highlight prior instances where the Court has held that Commerce abused its discretion in rejecting untimely filings in certain factual instances. *See* Hoa Phat Br. 15-17 (citing *Oman Fasteners, LLC v. United States*, No. 22-00348, 2023 WL 2233642, at *4–5 (Ct. Int'l Trade Feb. 15, 2023); *Celik Halat ve Tel Sanayi A.S. v. United States*, 557 F. Supp. 3d 1348, 1362 (Ct. Int'l Trade 2022); *Ajmal Steel Tubes & Pipes Indus. LLC v. United States*, No. 21-00587, 2022 WL 15943670 (Ct. Int'l Trade Oct. 28, 2022)). These cases are factually distinguishable from the

current situation.  In *Oman Fasteners*, (1) Commerce did not grant multiple extensions to the party in question in advance of the deadline, (2) the party in question alleged that the ACCESS electronic filing system's "check file" feature had caused counsel to incorrectly believe their submission would not be rejected from the system, and (3) the submission was filed in its entirely only sixteen minutes after the deadline had passed.  *See Oman Fasteners*, 2023 WL 2233642 at *2-3.  Here, however, (1) Commerce granted multiple extensions to Hoa Phat, (2) Hoa Phat's counsel did not allege any issues with the ACCESS electronic filing system, and (3) the submissions in each inquiry were all filed much further past the original deadline.  *See* IDM at 16.

Similarly, in *Celik Halat*, (1) Commerce did not grant multiple extensions to the party in question in advance of the deadline, (2) the party in question alleged that it had specific issues with submission in ACCESS, and (3) the submission was filed in its entirety by the deadline except for a single exhibit of the party's section B questionnaire response, which was filed twenty-one minutes after the deadline.  *See Celik Halat*, 557 F. Supp. 3d at 1354-55.  These facts are not comparable to the facts presented in this case, where Commerce had granted multiple extension requests to Hoa Phat, Commerce confirmed with Hoa Phat's counsel on the date the submission was due that granting the further extension to 11:59 p.m. on the same date would provide Hoa Phat with sufficient time to file the submission, and the only cause for lateness was Hoa Phat's counsel alleged issues with preparing the large document for submission, which were known to the counsel in advance of the deadline.  IDM at 14-15.

*Ajmal* concerned a very specific factual scenario where Commerce rejected a section A questionnaire response that was filed within two hours after the established deadline and then subsequently tolled the deadlines for the remaining sections of the questionnaire by 50 days.

2022 WL 15943670 at *2.  Additionally, Amjal had explained that the delay was caused by
multiple complications caused by the COVID pandemic that delayed the preparation and
submission of the section A response, including the fact that their entire staff was quarantined at
home and working from laptops.  *Id.* at *2-3.  These facts are not comparable to Hoa Phat's
situation and Commerce's reasoned basis for rejecting Hoa Phat's submission.

Fourth, Hoa Phat cites *Artisan* to support its position.  Hoa Phat Br. 16 (citing *Artisan
Mfg. Corp. v. United States*, 978 F. Supp. 2d 1334, 1347 (Ct. Int'l Trade 2014)).  But  *Artisan* is
inapposite because it predates the guidance from the Court of Appeals for the Federal Circuit in
*Dongtai Peak*.  *See Tau-Ken Temir LLP*, 587 F. Supp. 3d at 1359 ("The court agrees with
Commerce that Plaintiffs' reliance on *Artisan* is misplaced."); *ArcelorMittal USA LLC v. United
States*, 399 F. Supp. 3d 1271, 1281 (Ct. Int'l Trade 2019) ("The court notes that both *Artisan* and
*Grobest* were issued prior to the Federal Circuit's precedential decision in *Dongtai Peak
Honey* . . . ."); *see also Dongtai Peak*, 777 F.3d at 1353 ("{T}he record shows Dongtai Peak was
afforded both notice and a meaningful opportunity to be heard.  In particular, as Commerce
noted, Appellant "was well aware of the established deadlines in this case"; Commerce "advised
Dongtai Peak of the importance of submitting its documents in a timely manner"; and Dongtai
Peak "was aware of the consequences of its not doing so.").  *Artisan* is also distinguishable
because here, Commerce had granted multiple extension requests to Hoa Phat including a same-
day extension, which went beyond the extensions granted to the other parties in the inquiries.
IDM at 14-15.

### 3.    Hoa Phat's Remaining Arguments Are Unavailing

Hoa Phat argues that its untimely submission did not actually impede Commerce's
multiple circumvention inquiries because Hoa Phat had submitted the response prior to the start
of the next business day.  Hoa Phat Br. 17.  However, it is not for a respondent "to establish

Commerce's deadlines or dictate to Commerce whether and when Commerce actually needs the requested information." *Bebitz CVD*, 433 F. Supp. 3d at 1305 (citing *Dongtai Peak*, 777 F.3d at 1352)). "{I}t is fully within Commerce's discretion to 'set and enforce deadlines' and a court 'cannot set aside application of a proper administrative procedure because it believes that properly excluded evidence would yield a more accurate result if the evidence were considered.'" *Dongtai Peak*, 777 F.3d at 1352; *see also Ferrostaal*, 518 F. Supp. 3d at 1367. Further, "{s}trict enforcement of time limits and other requirements is neither arbitrary nor an abuse of discretion when Commerce provides a reasoned explanation for its decision." *Maverick Tube*, 107 F. Supp. 3d at 1331. Accordingly, Commerce must have the authority and discretion to give effect to the deadlines that it establishes and may even strictly do so when it provides a reasoned explanation. Here, after providing Hoa Phat with multiple extensions, Commerce provided several reasons for why it declined to find good cause to grant Hoa Phat an additional extension as explained above. IDM at 14-17.

Hoa Phat also seems to raise certain arguments regarding the "representativeness" of Commerce's circumvention determinations due to Commerce's rejection of its questionnaire response. *See* Hoa Phat Br. 18. Hoa Phat clarifies it is not making a separate legal claim regarding respondent selection, but rather advancing an accuracy argument. *Id.* However, such arguments are inconsistent with the Federal Circuit's precedent in *Dongtai Peak Honey*, which stated: "It is fully within Commerce's discretion to 'set and enforce deadlines' and this court 'cannot set aside application of a proper administrative procedure because it believes that properly excluded evidence would yield a more accurate result if the evidence were considered.'" 777 F.3d at 1352 (citing *PSC VSMPO*, 688 F.3d at 760-61). The Federal Circuit also explained that "Commerce's rejection of untimely filed factual information does not violate

a respondent's due process rights when the respondent had notice of the deadline and an opportunity to reply." *Id.* at 1353. Here, Hoa Phat had notice of the deadline, had notice of the consequences of failing to meet the deadline, was advised to file early, and had already received multiple extensions. Moreover, Hoa Phat's counsel was contacted by Commerce and affirmed that a seven-hour extension would be sufficient.

> C.    Commerce's Determination to Extend the Final Determinations Does Not Undermine Its Rejection of Hoa Phat's Untimely Submission

Hoa Phat also contends that Commerce abused its discretion when it declined to extend the deadline for Hoa Phat but extended the deadline for the preliminary and final determinations of the inquiries. Hoa Phat Br. 20-24. However, Commerce lawfully concluded that its ability to determine good cause in extending an administrative deadline for submission of a questionnaire is a distinct question of whether given the complexity of analyzing all record information (which was timely submitted) and all party arguments there is good cause to extend the final determinations date. IDM at 14. Notably, Hoa Phat does not challenge Commerce's decision to extend the deadline for the final determinations.

First, contrary to Hoa Phat's assertions, Commerce denied its sixth extension request based on its consideration of multiple factors and circumstances surrounding Hoa Phat's extension requests. *See generally* Initial Rejection Memo, *see also* IDM at 14-17. Therefore, Hoa Phat's argument that Commerce was in some way inconsistent is not supported by the record. Even so, Commerce's conducting of the three circumvention inquiries did not begin and end with Hoa Phat's initial questionnaire response. Indeed, in advance of the April 6, 2022 preliminary determinations, Commerce had issued two supplemental questionnaires to Vina One on January 9, 2023, and February 17, 2023, in the Korea inquiry (K.P.R. 124, 131) and three supplemental questionnaires to Vina One on November 29, 2022, February 3, 2023, and

February 24, 2023 (C.P.R. 122, 132, 136).  Further Commerce had continued to receive multiple

submissions from parties leading up to the preliminary determinations.  *See* Korea PDM at 2-3;

China PDM at 2-3; Taiwan PDM at 2-3.

Following the preliminary determinations, Commerce provided parties with an

opportunity to submit two sets of administrative case briefs and rebuttal briefs in advance of the

final determinations.  *See* Schedule for First Set of Deadlines for Case and Rebuttal Briefs (Apr.

20, 2023) (K.P.R. 151); Second Set of Deadlines for Case and Rebuttal Briefs (May 16, 2023)

(K.P.R. 180).  On July 26, 2023, Commerce held an administrative hearing as requested by

parties.  *See* Hearing Transcript (K.P.R. 210).

Commerce did ultimately extend the final determination of these three extraordinarily

complicated circumvention inquiries until November 2, 2023, along with three other

extraordinarily complicated circumvention inquiries that Commerce was concurrently

conducting pursuant to 19 C.F.R. § 351.302(b).  *See* Second Final Determ. Extension (K.P.R.

209; T.P.R. 204; C.P.R. 222).  This determination though is not inconsistent with the stated

explanations Commerce provided when it found no good cause to grant a further extension to

Hoa Phat as explained above.  "It is not for the respondent 'to establish Commerce's deadlines or

dictate to Commerce whether and when Commerce actually needs the requested information.'"

*Tau-Ken Temir LLP*, 587 F. Supp. 3d at 1358 (quoting *Bebitz* CVD, 433 F. Supp. 3d at 1305).

> D.    Commerce's Next-Business-Day Policy as Stated in the *Final Rule* Is Not Applicable

Finally, Hoa Phat contends that Commerce's stated policy in the *Final Rule* means that

Commerce was required to accept Hoa Phat's submission as it was filed before 8:30am the next

business day despite not being filed in time for the established deadline.  Hoa Phat Br. 26-29.

However, the next-business-day policy as laid out in the *Final Rule* applies only in the situations

actually described in the *Final Rule*, which Commerce lawfully found were not presented in this instance.

The next-business-day policy as stated in the *Final Rule* provides that "*{f}or submissions that are due at 5:00 p.m.*, if the Department is not able to notify the party requesting the extension of the disposition of the request by 5:00 p.m., then the submission would be due by the opening of business (8:30 a.m.) on the next work day." 78 Fed. Reg. at 57,792 (emphasis added). The *Final Rule* expressly limits filings to which the next-day policy applies by referencing "submissions that are due at 5:00 p.m." *Id*. Commerce's finding that this policy only applies to submissions that are due at 5:00pm deadlines is consistent with the language of the *Final Rule*. IDM at 15-16. Indeed, while Hoa Phat may argue that Commerce's lenient policy should be even more lenient, the express language of the stated next-business-day policy demonstrates that Commerce did not abuse discretion or act arbitrarily in finding that that the next-day policy is not applicable to a submission that was not due at 5:00 p.m. Further, although Hoa Phat presents certain hypotheticals to demonstrate how a technical application of the policy would discourage party communication, the arguments ring hollow. Commerce communicated with Hoa Phat's counsel *on the day of the deadline*, and Hoa Phat's counsel confirmed that Hoa Phat would only need until 11:59 p.m. that evening to complete the submission of its initial questionnaire response, which led Commerce to grant Hoa Phat's fifth extension request. As a result, Commerce gave Hoa Phat more time to submit its initial questionnaire response – more time than other parties received in the circumvention inquiries. IDM at 16. Additionally, Commerce actively communicated with Hoa Phat to effectuate its ability to file on time, including on the date of the filing, and Hoa Phat's failure to file on time did not result from lack of communication with the agency.

III.    Commerce's Application Of AFA Was Supported By Substantial Evidence And In Accordance With Law

After Hoa Phat failed to timely file its questionnaire response in each inquiry, Commerce properly applied AFA to Hoa Phat to conclude that Hoa Phat produced and/or exported inquiry merchandise and that the factors support an affirmative finding of circumvention.  IDM at 17. Further, consistent with Commerce policy, Commerce properly determined that Hoa Phat was not eligible to participate in the certification regime established for other cooperative parties.  *Id.* Hoa Phat's arguments to the contrary are unavailing.

A.    Legal Framework

Commerce uses facts otherwise available to fill a gap in the record when necessary information is not available on the record, or when an interested party: (1) withholds information that has been requested by Commerce, (2) fails to provide information by a deadline established by Commerce, (3) significantly impedes a proceeding, or (4) provides information that cannot be verified.  *See* 19 U.S.C. § 1677e(a).  Commerce may use an adverse inference when selecting among the facts otherwise available when it "finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with {Commerce's} request for information." 19 U.S.C. § 1677e(b)(1).  An interested party fails to cooperate by not acting to the best of its ability when it does not exert its "maximum effort to provide Commerce with *full and complete* answers to all inquiries in an investigation."  *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003) (emphasis added).

Relatedly, if Commerce determines that a submission is deficient, Commerce "shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency in light of the time limits."  19 U.S.C. § 1677m(d).  However, importantly, as

explained in the Statement of Administrative Action accompanying the Uruguay Round Agreements Act:

> New {19 U.S.C. § 1677m(d)} requires Commerce and the Commission to notify a party submitting deficient information of the deficiency, and to give the submitter an opportunity to remedy or explain the deficiency. *This requirement is not intended to override the time-limits for completing investigations or reviews*, nor to allow parties to submit continual clarifications or corrections of information or to submit information that cannot be evaluated adequately within the applicable deadlines.

H.R. Rep. No. 103–316, at 865 (1994) (SAA) (emphasis added).

Because Commerce lacks subpoena power, its statutorily granted authority to apply facts available with adverse inferences serves as an essential tool to incentivize cooperation with investigations and administrative reviews. *See Essar Steel, Ltd. v. United States*, 678 F.3d 1268, 1276 (Fed. Cir. 2012) (citing *F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000)); *see also* SAA, H.R. Rep. No. 103-316, at 868 (1994) (noting that, because Commerce has no subpoena power, using adverse inference is "essential investigative tool" to induce cooperation from interested parties in antidumping proceedings).

B.    19 U.S.C. § 1677m(d) Is Inapplicable To These Facts

After Hoa Phat untimely filed its initial questionnaire response, Commerce properly rejected it from the record in accordance with 19 C.F.R. § 351.302(d)(1)(i) and (2). Hoa Phat contends that Commerce was precluded from applying facts otherwise available until it provided Hoa Phat "an opportunity to address the absence of that information {ostensibly contained in its initial questionnaire response}." Hoa Phat Br. 34. However, the statute does not require Commerce to accept untimely submissions under 19 U.S.C. § 1677m(d) and Hoa Phat's interpretation of the provision would lead to absurd results.

For example, Hoa Phat argues that after it failed to timely file its questionnaire response that Commerce was then obligated to notify Hoa Phat that it had failed to meet the deadline and *then* also provide another opportunity to provide responses to answers it sought or "simply could have analyzed the questionnaire response." *Id.* Taken to its logical end, Hoa Phat's argument would render every administrative deadline set by Commerce ineffective, meaning a party could ignore the deadline, wait for Commerce to affirmatively "notify" the party that it missed the communicated deadline, and receive additional opportunity and time to file. Why would any party comply with an administrative deadline if Commerce were legally required to set a new deadline before it could assign an adverse consequence for failing to provide information by the deadline established by Commerce? Section 1677m(d) does not provide for such an absurd outcome, and indeed Congress made clear that the requirements of 19 U.S.C. § 1677m(d) are not intended to override the time-limits for completing investigations or reviews, nor to allow parties to submit continual clarifications or corrections of information or to submit information that cannot be evaluated adequately within the applicable deadlines. *See* SAA at 865; *see also* 19 U.S.C. § 1677e(a) (providing that Commerce may apply facts available when, among other things, a party fails to provide information by the deadline established by Commerce). Further, this Court has already evaluated whether 19 U.S.C. § 1677m(d) is applicable when determining whether Commerce properly rejected an untimely filing in a circumvention inquiry and held that it does not proscribe Commerce from rejecting an untimely submission. *See Ferrostaal*, 518 F. Supp. 3d at 1367-69. Accordingly, Hoa Phat's arguments that Commerce is required to provide another opportunity to submit information in a situation where a party fails to make a timely submission are incorrect and this Court should reject them as it did in *Ferrostaal*.

C.    Commerce Properly Determined Hoa Phat Is Ineligible To Participate In The Certification Regime

As a result of Commerce's application of AFA, Commerce properly determined that Hoa Phat was ineligible to participate in the established certification regime.  Commerce explained how such action is consistent with its policy in circumvention inquiries and importantly why it is necessary to induce cooperation amongst parties.  IDM at 21-26; 19 U.S.C. § 1677e(b); *see also Bio-Lab, Inc. v. United States*, 487 F. Supp. 1291, 1310 (Ct. Int'l Trade 2020) ("The purpose of AFA is to provide respondents with an incentive to cooperate . . . ").  Hoa Phat contends that such a determination is punitive and not supported by the record.  Hoa Phat Br. 33-34.

Within the context of these circumvention inquiries, Commerce made affirmative country-wide determinations and established a certification regime wherein cooperative producers and/or exporters may certify that their entries do not contain the relevant order country input (i.e., not inquiry merchandise).  IDM at 21.  This certification regime is available to the cooperative parties in the circumvention inquiries, including the cooperative other mandatory respondent Vina One.  *Id.*

Hoa Phat asks that this Court find Commerce's certification regime policy barring it from participating unlawful.  Hoa Phat Br. 33.  However, Hoa Phat freely admits that the other part of Commerce's AFA determination, *i.e.*, that the circumvention factors weigh in favor of finding circumvention, "was not particularly adverse."  Hoa Phat Br. 33.  Instead, Hoa Phat is asking to be treated exactly the same as the cooperative mandatory respondent (and other companies that Commerce did not find failed to cooperate).  The SAA makes clear that the application of AFA is a tool given to Commerce "to ensure that {a} party does not obtain a more favorable result by failing to cooperate than if it had cooperated fully."  SAA, H.R. Doc. Rep. No. 103-316, at 870 (1994).  As Commerce explained, "Commerce's decision to bar an uncooperative respondent

from participating in the certification process has proven necessary to encourage cooperation and does not go beyond what is minimally necessary and reasonable to encourage cooperation." IDM at 33.  Indeed, this Court has already affirmed the policy and the rationale undergirding it, which Hoa Phat does not mention.  *See Ferrostaal*, 518 F. Supp. 3d at 1374-75.  Importantly with respect to Hoa Phat's contentions that the policy is punitive, Commerce also explained that "{a}n uncooperative respondent retains the right, and has the opportunity, to participate in a future review {of the relevant order} and, thus, to remedy its uncooperative status and gain eligibility to participate in a certification regime."  IDM at 33.

Accordingly, this Court should conclude that Commerce lawfully excluded Hoa Phat from the certification regime and decline to require Commerce place Hoa Phat in the same position as other cooperative parties to these inquiries.

<u>CONCLUSION</u>

For these reasons, we respectfully request that the Court deny plaintiff's motion for judgment on the agency record and sustain Commerce's final determinations in their entirety.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

s/ Franklin E. White, Jr. by Patricia M. McCarthy
FRANKLIN E. WHITE, JR.
Assistant Director

OF COUNSEL                          s/ Kristin E. Olson
                                    KRISTIN E. OLSON
JonZachary Forbes                   Trial Attorney
Office of the Chief Counsel for     Commercial Litigation Branch
Trade Enforcement & Compliance      Civil Division
U.S. Department of Commerce         Department of Justice
                                    Ben Franklin Station
                                    P.O. Box 480
                                    Washington, D.C. 20044
                                    (202) 307-6299
                                    kristin.olson@usdoj.gov

July 19, 2024                       *Attorneys for the United States*

CERTIFICATE OF COMPLIANCE

Pursuant to the Court's Standard Chamber Procedure 2(b)(1), the undersigned certifies that Defendant's Response to Plaintiff 's Rule 56.2 Motions for Judgment on the Agency Record, filed on July 19, 2024, complies with the word limitation requirement.  The word processing software used to prepare this brief indicates there are a total of 9,631 words, excluding the portions of the brief identified in the rules.

s/ Kristin E. Olson
Kristin E. Olson