## UNITED STATES COURT OF INTERNATIONAL TRADE

*Before*: **The Honorable Timothy M. Reif, Judge**

| | |
|---|---|
| **Hoa Phat Steel Pipe Co., Ltd,** ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| **v.** ) | |
| ) | |
| **United States,** ) | |
| ) | |
| *Defendant*, ) | **Consol. Court No. 23-00248** |
| ) | |
| **Atlas Tube Inc.; Bull Moose Tube Company;** ) | |
| **Maruichi American Corporation; Searing** ) | |
| **Industries; United Steel, Paper and Forestry,** ) | |
| **Rubber, Manufacturing, Energy, Allied** ) | |
| **Industrial and Service Workers International** ) | |
| **Union, AFL-CIO, CLC; Vest Inc., Nucor** ) | |
| **Tubular Products Inc.** ) | |
| ) | |
| *Defendant-Intervenors*. ) | |
| ) | |

## PLAINTIFF HOA PHAT STEEL PIPE CO. LTD.'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE AGENCY RECORD

Daniel L. Porter
Katherine R. Afzal
Ana Amador-Gil

**Curtis, Mallet-Prevost, Colt, & Mosle LLP**
1717 Pennsylvania Avenue, NW
Washington, DC 20006

**August 30, 2024**

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY ARGUMENT ........................................................ 1

ARGUMENT ................................................................................................................... 3

I.    COMMERCE'S REFUSAL TO ACCEPT HOA PHAT'S QUESTIONNAIRE RESPONSE WAS AN ABUSE OF DISCRETION AND OTHERWISE UNLAWFUL ............................................................................................................... 3

    A.    Contrary to Defendant and Defendant-Intervenors' Arguments Hoa Phat's Previous Extensions do not Mean that Hoa Phat had Ample Time to Respond to Commerce's Request ................................................. 3

    B.    The Defendant's Attempts to Distinguish the Relevant Precedent Based on Factual Minutiae But Those Distinctions Ignore the Trade Court and Federal Circuit Reasoning ............................................................................ 5

    C.    Contrary to Defendant and Defendant-Intervenors Representation Commerce's Justification for Denying Hoa Phat's Extension Request was an Abuse of Discretion and Otherwise not Supported by the Record .......... 9

    D.    Contrary to Defendant and Defendant-Intervenors Argument Commerce's Next Business Day Policy as Stated in the Final Rule is Applicable to Hoa Phat ............................................................................................................... 16

II.    COMMERCE'S APPLICATION OF FACTS AVAILABLE WITH AN ADVERSE INFERENCE WAS UNLAWFUL ...................................................... 18

    A.    Defendant And Defendant-Intervenors Conflate The Analysis Under Facts Available And Adverse Facts Available ...................................................... 19

    B.    Contrary To Defendant And Defendant-Intervenors Arguments The Application Of AFA Was Punitive Since Hoa Phat Acted To The Best Of Its Ability .................................................................................................... 21

    C.    The Application Of AFA Should Not Have Resulted In Exclusion From Certification ................................................................................................ 24

CONCLUSION AND PRAYER FOR RELIEF ............................................................. 27

# TABLE OF AUTHORITIES

## Cases

*Ajmal Steel Tubes & Pipes Indus. LLC v. United States*,
    No. 21-00587, 2022 Ct. Intl. Trade LEXIS 122 (Ct. Int'l Trade Oct. 28, 2022) ........... 12

*Allentown Mack Sales & Serv., Inc. v. NLRB*,
    522 U.S. 359 (1998) ................................................................................................ 17

*Artisan Manufacturing Corp. v. United States*,
    978 F. Supp. 2d 1334 (Ct. Int'l Trade 2014) ................................................................ 28

*Bebitz Flanges Works Priv. Ltd. v. United States*,
    433 F. Supp. 3d 1297 (Ct. Int'l Trade 2020) ..................................................... 10, 11, 25

*BMW of N. Am. LLC v. United States*,
    926 F.3d 1291 (Fed. Cir. 2019) ................................................................................. 24

*Bosun Tools Co. v. United States*,
    405 F. Supp. 3d 1359 (Ct. Int'l Trade 2019) .................................................................. 6

*Cambria Co. LLC v. United States*,
    No. 23-00007, 2024 Ct. Intl. Trade LEXIS 62, (Ct. Int'l Trade May 28, 2024) ........... 15

*Celik Halat Ve Tel Sanayi A.S. v. United States*,
    557 F. Supp. 3d 1363 (Ct. Int'l Trade 2022) .............................................................. 6, 9

*Chaparral Steel Co. v. United States*,
    901 F.2d 1097 (Fed. Cir. 1990) ................................................................................... 4

*Dongtai Peak Honey Indus. Co. v. United States*,
    777 F.3d 1343 (Fed. Cir. 2015) ........................................................................... 7, 8, 10

*Dupont Teijin Films v. United States*,
    931 F. Supp. 2d 1297 (Ct. Int'l Trade 2013) .............................................................. 3, 14

*Essar Steel Ltd. v. United States*,
    678 F.3d 1268 (Fed. Cir. 2012) ................................................................................... 4

*F.lli De Cecco Di Filippo Fara S. Marino S.p.A. v. United States*,
    216 F.3d 1027 (Fed. Cir. 2000) .............................................................................. 4, 24

*Ferrostaal Metals Gmbh v. United States*,
    518 F. Supp. 3d 1357 (Ct. Int'l Trade 2021) ............................................................ 24, 25

*Grobest & I-Mei Indus. (Viet.) Co. v. United States*,
 815 F. Supp. 2d 1342 (Ct. Int'l Trade 2012)......................................................3, 14, 26

*Nan Ya Plastics Corp. v. United States*,
 810 F.3d 1333 (Fed. Cir. 2016)...................................................................................24

*NTN Bearing Corp. v. United States*,
 74 F.3d 1204 (Fed. Cir. 1995).......................................................................................7

*Oman Fasteners, LLC v. United States*,
 No. 22-00348, 2023 Ct. Intl. Trade LEXIS 28 (Ct. Int'l Trade Feb. 15, 2023) ..........8, 9

*Pro-Team Coil Enter., Inc. v. United States*,
 419 F. Supp. 3d 1319 (Ct. Int'l Trade 2019)...................................................................4

*Shelter Forest Int'l Acquisition, Inc. v. United States*,
 497 F. Supp. 3d 1388 (Ct. Int'l Trade 2021)...................................................................7

*Shelter Forest Int'l Acquisition, Inc. v. United States*,
 No. 2021-2281, 2022 U.S. App. LEXIS 16491 (Fed. Cir. June 15, 2022).....................8

*SolarWorld Americas, Inc. v. United States*,
 962 F.3d 1351 (Fed. Cir. 2020)...................................................................................28

*Tau-Ken Temir LLP v. United States*,
 587 F. Supp. 3d (Ct. Int'l Trade 2022) ...............................................................8, 10, 26

*Tejin Wuhu Fenglian Co. v. United States*,
 836 F. Supp. 2d 1398 (Ct. Int'l Trade 2012)..................................................................3

## Statutes

19 U.S.C. § 1677e(a) ............................................................................20, 21, 22, 27

19 U.S.C. § 1677m(d)............................................................................20, 21, 22, 23

5 U.S.C. §706(2)(A) .......................................................................................................28

## Regulations

19 C.F.R. § 351.302(d)(1) ...............................................................................................5

19 C.F.R. § 351.303(b)(1) .............................................................................................18

**Administrative Decisions**

*Certain Cold-Rolled Steel Flat Products From the People's Republic of China:*
  *Affirmative Final Determination of Circumvention of the Antidumping Duty and*
  *Countervailing Duty Orders*, 83 Fed. Reg. 23,891 (May 23, 2018)..............................28

**Legislation**

H.R. Rep. No. 103–316, at 865 (1994)...............................................................................23

**Other Authorities**

*Extension of Time Limits*, 78 Fed. Reg. 57,790  (Sept. 20, 2013)............................7, 18, 19

## INTRODUCTION AND SUMMARY ARGUMENT

In its opening brief Plaintiff, Hoa Phat, presented detailed arguments as to why Commerce's refusal to accept Hoa Phat's initial questionnaire response was an abuse of discretion as well as how Commerce's application of facts available with an adverse inference was unlawful. Hoa Phat hereby provides its Reply Brief to rebut the arguments set forth by the Defendant and Defendant-Intervenors in their respective response briefs.

Both Defendant and Defendant-Intervenors argue that Commerce's rejection of Hoa Phat's initial questionnaire response is not an abuse of discretion and that Commerce's application of adverse facts available was supported by substantial evidence and is therefore in accordance with the law; but their efforts fail.

First, when considering whether Commerce's application of a non-statutory deadline in a given case constitutes an abuse of discretion, Commerce's discretion "is bounded at the outer limits by the obligation to carry out its statutory duty of determining dumping margins as accurately as possible." *Dupont Teijin Films v. United States,* 931 F. Supp. 2d 1297, 1305 (Ct. Int'l Trade 2013); *see also Tejin Wuhu Fenglian Co. v. United States*, 836 F. Supp. 2d 1398, 1403 (Ct. Int'l Trade 2012). Thus, when deciding whether to reject a filing as untimely, Commerce is required to weigh "the burden imposed upon the agency by accepting the late submission and the need for finality at the final results stage." *Grobest & I-Mei Indus. (Viet.) Co. v. United States*, 815 F. Supp. 2d 1342, 1365 (Ct. Int'l Trade 2012) (citations omitted). Finality is usually not implicated prior to the preliminary determination. *Pro-Team Coil Enter., Inc. v. United States*, 419 F. Supp. 3d 1319, 1332 (Ct. Int'l Trade 2019).

Second, concerning the application of adverse facts available, the antidumping duty laws are remedial, not punitive in nature. *Chaparral Steel Co. v. United States*, 901 F.2d 1097, 1103-1104 (Fed. Cir. 1990). "The purpose of the adverse fact statute 'is to provide respondents with an incentive to cooperate' with Commerce's investigation, not to impose punitive damages." *Essar Steel Ltd. v. United States*, 678 F.3d 1268,1276 (Fed. Cir. 2012) (quoting *F.lli De Cecco Di Filippo Fara S. Marino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000). In the case before this court, Commerce stepped away from these principles of well settled law. Commerce regarded Hoa Phat submission as untimely, despite a timely request for extension of a mere business day was on the record backed by good cause, namely multiple technical problems.

Commerce's rejection of Hoa Phat's submission and subsequent application of adverse facts available is an abuse of discretion, unsupported by substantial evidence and therefore unlawful.

**ARGUMENT**

**I.    COMMERCE'S REFUSAL TO ACCEPT HOA PHAT'S QUESTIONNAIRE RESPONSE WAS AN ABUSE OF DISCRETION AND OTHERWISE UNLAWFUL**

In response to Plaintiff's primary argument that Commerce's refusal to accept Hoa Phat's questionnaire response was an abuse of discretion and otherwise unlawful, Defendant and Defendant-Intervenors advance four arguments.  As we detail below, these arguments can are easily refuted given that (1) contrary to Defendant and Defendant-Intervenors' claim, Hoa Phat's previous extensions do not mean that Hoa Phat had ample time to respond to Commerce's request, (2) Defendant's attempts to distinguish the relevant precedent based on factual minutiae ignore the Trade Court and Federal Circuit reasoning, (3) Commerce's justification for denying Hoa Phat's extension request was an abuse of discretion and not supported by the record, and (4) Commerce's next business day policy as stated in the final rule is applicable to Hoa Phat.

**A.    Contrary to Defendant and Defendant-Intervenors' Arguments Hoa Phat's Previous Extensions do not Mean that Hoa Phat had Ample Time to Respond to Commerce's Request**

Defendant's first argument focuses on the past extension requests filed by Hoa Phat arguing that Hoa Phat and counsel had ample time to complete the initial questionnaire and submit the response.  Defendant and Defendant-Intervenors arguments are not supported by recent precedent before this Court or the evidentiary record. Commerce regulations state that Commerce "will not consider or retain in the official record of the proceeding … {u}ntimely filed factual information … that the Secretary rejects." 19 C.F.R. § 351.302(d)(1).  However, this does not excuse Commerce from its

statutory obligations to avoid abusing its discretion or acting arbitrarily. This Court has recently and repeatedly held that, while Commerce has some authority to reject untimely filings, the agency "abuse{s} its discretion" by "imposing a drastic and disproportionate penalty" for a late filing that (1) was an unintentional minor "technical error" by counsel; and (2) "had no appreciable effect on the investigation." *Celik Halat Ve Tel Sanayi A.S. v. United States*, 557 F. Supp. 3d 1363, 1366 (Ct. Int'l Trade 2022); *Bosun Tools Co. v. United States*, 405 F. Supp. 3d 1359, 1365-66 (Ct. Int'l Trade 2019).

First, as noted in the opening brief, Commerce issued its initial questionnaire on September 6, 2022, to which, in a pro se capacity, Hoa Phat requested an extension of six weeks. See Initial Questionnaire (K.P.R. 43; T.P.R. 35; C.P.R. 39). Commerce only granted Hoa Phat a single week, pushing the deadline to September 27th. On September 15th, Fox Rothschild LLP entered an appearance on behalf of Hoa Phat. In contrast to Defendant and Defendant-Intervenors' characterization, Hoa Phat's counsel had less than a month to become familiar with Hoa Phat's situation, gather and organize the required factual information, and prepare the responses to the initial questionnaire in all three separate circumvention inquiries.

Commerce denied Hoa Phat's October 5th extension request in its entirety. October 6th Extension Request Denial Letter (K.P.R. 69; T.P.R. 60; C.P.R. 65). Then, when Hoa Phat's counsel went back to Commerce explaining in detail the technical difficulties and requesting only to extend the deadline to 10am on the following business-day, Commerce still refused to provide a minimal extension, only granting until midnight. Finally, right before midnight, again Hoa Phat's counsel filed another

extension request outlining the technical difficulties impeding the filing, as is standard practice in Commerce proceedings based on the final rule preamble. *Extension of Time Limits*, 78 Fed. Reg. 57,790, 57,792 (Sept. 20, 2013); see Letter Regarding Final Extension Request (K.P.R. 83; T.P.R. 74; C.P.R. 79).

Despite the Defendant's characterization that Hoa Phat's counsel should have been more prepared and only waited "until minutes before the applicable deadlines", Def. Br. at 18, Hoa Phat's counsel repeatedly told Commerce of the technical difficulties occurring leading up to the deadline and its tireless efforts to rectify the situation. In the end, the initial questionnaire response was filed in all three cases before 8:30am on the next business-day.

### B.    The Defendant's Attempts to Distinguish the Relevant Precedent Based on Factual Minutiae But Those Distinctions Ignore the Trade Court and Federal Circuit Reasoning

First, the Defendant argues that *NTN Bearing Corp. v. United States*, 74 F.3d 1204 (Fed. Cir. 1995) and *Shelter Forest Int'l Acquisition, Inc. v. United States*, 497 F. Supp. 3d 1388, 1402 (Ct. Int'l Trade 2021), do not support a finding of abuse of discretion due to distinguishable facts. Def. Br. 19. Hoa Phat cited both cases for the legal framework, demonstrating how this Court approaches Commerce's rejection of information and addresses abuse of discretion. In contrast to Defendant's characterization that the two parts of the balancing test is no longer good law due to *Dongtai Peak Honey Indus. Co. v. United States*, 777 F.3d 1343 (Fed. Cir. 2015), this Court and the Federal Circuit have applied this test since 2015 as can be seen in *Shelter Forest,* 497 F. Supp. at 1402, which

was affirmed by the Court of Appeals for the Federal Circuit in *Shelter Forest Int'l Acquisition, Inc. v. United States*, No. 2021-2281, 2022 U.S. App. LEXIS 16491 (Fed. Cir. June 15, 2022).

Second, Defendant attempts to discount multiple cases cited in the Opening Brief by overstating minute factual differences of no consequence. The first case Defendant addresses is *Oman Fasteners*. Defendant stresses the number of extensions, issues with the ACCESS "check file" feature, and the time at which the submission was filed. Def. Br. 21. In that case, the Court makes no mention of a perquisite number of extension requests affecting Commerce's decision making in rejecting a respondent's information from the record. Additionally, the "check file" function on ACCESS will alert counsel if the document being uploaded is not OCR'd or if it is only partially OCR'd it will detect it and let the filer know that it might not pass the filing requirements. As Hoa Phat's counsel was having technical difficulties with the OCRing of the submissions for all three cases, this is precisely the type of technical difficulty that Oman Fastener's counsel experienced. Additionally, the Court specifically emphasized that Oman Fastener's filing was completed in the window of time before 8:30am on the next business-day, which distinguished it from *Tau-Ken Temir LLP v. United States*, 587 F. Supp. 3d 1346 (Ct. Int'l Trade 2022) and *Dongtai Peak,* 777 F.3d 1343. *Oman Fasteners, LLC v. United States*, No. 22-00348, 2023 Ct. Intl. Trade LEXIS 28, at *FN 10 (Ct. Int'l Trade Feb. 15, 2023). As in *Oman Fasteners*, Hoa Phat's complete submission in all three cases was also filed in its entirety before 8:30am on the following business-day.

Defendant's brief focused on similar factual differences in *Celik Halat*. Again, Defendant mentions that Commerce did not grant "multiple extensions" as it did in this case. Def Br. 21. However, both cases are very similar. As in this case Commerce rejected in part multiple extension requests. Also similar to this case, Commerce found that failure to file part of the responses to sections B and C was not an unexpected event that could have been prevented if reasonable measures had been taken. The Court rejected Commerce analysis finding that the late filing "was no more than a minor incident of non-compliance with an ACCESS filing requirement that had no appreciable effect on the antidumping duty investigation." *Celik Halat*, 557 F. Supp. 3d at 1358. The Court further criticized Commerce's position in rejecting in part, stating "Commerce was somewhat parsimonious in granting those requests. The Department's grounding of its reasoning for denying extension requests in its "statutory deadlines" is <u>open to question</u>.") *Id.* at 1359 (emphasis added).

Second, both the Defendant and Defendant-Intervenors cite multiple times to *Dongtai Peak,* a 2015 case before the Federal Circuit. The Defendant even goes as far as to present the same quote at least three times. However, *Dongtai Peak,* is not an analogous case and has been distinguished by this Court for situations similar to this one. See *Oman Fasteners,* No. 22-00348, LEXIS 28, at *FN 10. First, in *Dongtai Peak*, the submission at issue was a supplemental Section A questionnaire response, not as in this case, three entire initial questionnaire responses accounting for all of a respondent's available information on the record. Second, and perhaps most important, the supplemental questionnaire was due on April 17th, 2012 and the respondent, Dongtai

Peak, did not even file its extension request until 2 full days <u>after the deadline</u> for the submission on April 19th, 2012. *Dongtai Peak,* 777 F.3d at 1347. Subsequently, Dongtai Peak submitted its supplemental questionnaire response a full 10 days after the initial deadline, without any response from Commerce regarding its untimely filed extension request. *Id.* at 1347. This could not be more different than the situation before the Court in the this case. The Federal Circuit's number one reason for agreeing that Commerce did not abuse its discretion is that the extension requests were submitted *<u>after</u>* the deadline and the second reason was that Dongtai Peak's requests did not show any good cause for not filing an *extension request* before the deadline. *Id.* at 1351. Neither of the main reasons the Federal Circuit relied on are applicable in this case and therefore does not supersede the other cases, which involve situations where Commerce denied or did not address extension requests that were filed before the submission deadline, as required by 19 C.F.R. § 351.302(c).

Third, Defendant cites to *Bebitz* and *Tau-Ken* as analogous cases in which Commerce's rejection of a respondent's filing was not an abuse of discretion. Def. Br. 18-19. Again, the cases are not comparable. In both cases the respondent filed a last extension request shortly before the deadline was set to expire, however, in both cases the respondent did not manage to file their actual responses before 8:30am on the following "work day." *Bebitz Flanges Works Priv. Ltd. v. United States*, 433 F. Supp. 3d 1297, 1301 (Ct. Int'l Trade 2020); *Tau-Ken*, 587 F. Supp. 3d at 1358. Additionally, in *Bebitz*, this court noted that Bebitz had been given multiple opportunities by Commerce to provide the requested information regarding affiliates in the initial questionnaire and

then again through supplemental questionnaires, from the date of the initial questionnaire (October 4th) until the deadline for the final supplemental (December 4th).  *Bebitz,* 433 F. Supp. 3d at 1301-1302.  In contrast, Hoa Phat had barely a month to respond to entire initial questionnaires in three separate proceedings, whereas Bebitz had two months for a single issue.

As can be seen from the above, the Trade Court has reviewed Commerce actions in numerous past cases with similar circumstances and has generally concluded that the type of harsh treatment that Commerce applied to Hoa Phat in this case is an unlawful abuse of discretion.

**C.    Contrary to Defendant and Defendant-Intervenors Representation Commerce's Justification for Denying Hoa Phat's Extension Request was an Abuse of Discretion and Otherwise not Supported by the Record**

Defendant and Defendant-Intervenors continue to set a dual standard, alleging that Hoa Phat was required to comply with strict deadlines, while Commerce could go beyond the statutory deadline for issuing its determination, because both issues are distinct.  Def. Br. 24; Def.-Invrs. Br. 31. Their argument fails from the moment Commerce itself justified the denial of the extension requests on the basis of the need to comply with the statutory deadline. October 6th Extension, Request Denial Letter (K.P.R. 69; T.P.R. 60; C.P.R.65).  Indeed, some of the very reasons which Commerce cited to extend the time of the investigation ("three extraordinarily complicated circumvention inquiries"), equally applied to Hoa Phat.

The Defendant excuses Commerce's delay, because Commerce had to review "multiple submissions from parties leading up to the preliminary determinations." Def. Br. 25.  Although this could justify the extension of the deadline for the preliminary determination, it does not justify the two extensions of time for issuing a final determination.  Commerce had all the factual information it needed by April 6, 2023, when it issued its preliminary determination, that is, more than 6 months ahead its final determination issued on November 9, 2023.  Hoa Phat was also facing a complex investigation and needed to gather information from 5 affiliates but not even a business day was afforded to it despite seeking 4th, 5th and its 6th extension. In sum, a very different yardstick was used for Commerce and Hoa Phat. Commerce cannot reasonably enforce deadlines on parties in the "strictest way possible with a seeming disregard for Commerce's own actions." *Ajmal Steel Tubes & Pipes Indus. LLC v. United States,* No. 21-00587, 2022 Ct. Intl. Trade LEXIS 122, at 16 (Ct. Int'l Trade Oct. 28, 2022).

Separately, Defendant-Intervenors convey the misleading idea that Commerce "accommodated" Hoa Phat extension requests, and that Hoa Phat did not take all the necessary steps to comply with the deadline. Def.-Invrs. 11, 35. This argument is flawed as evidenced by the timeline below:

- Commerce issued three lengthy initial questionnaires to Hoa Phat with an original deadline of fourteen days. See Initial Questionnaires (K.P.R. 43; T.P.R. 35; C.P.R. 39).

- Hoa Phat filed an extension request for 6 additional weeks. (K.P.R. 45; T.P.R. 39; C.P.R. 41). Commerce ***denied*** in part granting only one week extension. First Extension Request (K.P.R. 45; T.P.R. 39; C.P.R. 41).

- Hoa Phat filed a second extension request. (K.P.R.57; T.P.R.48; C.P.R.53). Commerce then issued a memorandum extending the deadline *for all respondents*, until October 4, 2023. Extension Memorandum (K.P.R.59; T.P.R.50; C.P.R.55)

- Hoa Phat filed a third extension request for only three more days. (K.P.R.65; T.P.R.56; C.P.R.61).

- Hoa Phat had 31 days to file the three initial questionnaires. In similar investigations respondents have been given up to seven and a half weeks to respond to a *single* circumvention questionnaire. Vina One 4th Extension Request at 2 (K.P.R. 66; T.P.R. 57; C.P.R. 62).

- On October 5, 2022, Hoa Phat requested a 4th extension of a short time (one week), which Commerce ***denied*** a day prior to the deadline on the basis that "Commerce must conduct these circumvention inquiries within time limits required by U.S. law." October 6th Extension, Request Denial Letter (K.P.R.69; T.P.R.60; C.P.R.65).

- On October 7, 2022, at 12.30 pm Hoa Phat called Commerce reiterating the difficulties it was encountering for a timely filing, requesting an additional business day. 5th Extension Request (K.P.R. 62; (K.P.R. 71; T.P.R. 62; C.P.R.67). The request was ***denied*** in part and Commerce merely granted 7 additional hours. October 7th Extension Memorandum (K.P.R. 72; T.P.R. 63; C.P.R.68).

- On October 7, 2022, at 11:49 pm Hoa Phat described all its efforts to meet the 11:59 pm deadline, but that it was not able to overcome technical issues despite "staff of six people working on OCR and flattening" and that the submission was larger than initially formatted and "almost 8000 pages." It requested a 6th extension request until the next business day. Letter Regarding Final Extension Request (K.P.R. 83; T.P.R. 74; C.P.R. 79).

- Hoa Phat filing was concluded on the next business day, and before Vina One finalized filing BPI and PV final versions. Commerce received all documentation needed (over 9,000 pages) before 8:30am on the following business day.

- Commerce retroactively rejected the 6th extension request around a month after. Rejection of Hoa Phat Steel Pipe Co., Ltd. Response to Initial Questionnaire (November 17, 2022) (K.P.R. 116,117; T.P.R. 109, 110; C.P.R. 118, 119)

- Commerce itself took over 6 months between the hearing and the issuance of the Final Determination on November 2022. (K.P.R. 223; T.P.R. 219; C.P.R. 236).

Contrary to Defendant-Intervenors' argument:(1) Commerce practically denied in full or in part every single extension request; (2) Hoa Phat worked diligently over the course of days assembling and preparing the huge quantity of data, processing PDFs, Excel documents concerning five affiliates, (3) Hoa Phat sought reasonable extensions which were not dilatory and had exchanges in real time with Commerce on the difficulties faced; (4) Hoa Phat's experienced team despite working around the clock could not process the overwhelming amount of information under the unrealistic times set by Commerce.

The timeline also demonstrates that because Commerce received Hoa Phat's filing the next business day to the original deadline (and even before Vina One filed the final BPI and PV versions), there was absolutely no harm to the investigation. Defendant and Defendant-Intervenors do not deny this point. This Court has found that when a party's submission is untimely and causes no prejudice, Commerce is "not free to apply" it's deadline "in so harshly a way as to produce an unjust and punitive result." *Ajmal Steel Tubes*. Here, there was no undue administrative burden that outweighed by the statutory obligation of fairness and accuracy. *Dupont Teijin Films v. United States*, 931 F.Supp.2d 1297, 1304-05, (Ct. Int'l Trade 2013), citing *Grobest*, 815 F.Supp.2d at 1365.

Next, contrary to Defendant and Defendant-Intervenors arguments, good cause existed to grant the extension request.

First, Defendant-Intervenors argue that Commerce denied the extension request "based on the totality of circumstances," Def.-Invs. Br. 32. Commerce however mentioned very generic reasons (need to comply with statutory deadline). October 6th Extension, Request Denial Letter (K.P.R. 69; T.P.R. 60; C.P.R.65). Commerce, remained silent as to the different arguments presented by Hoa Phat, which were flatly rejected. Hoa Phat communicated the complexities concerning the three parallel investigations, as well as the need to provide information on 5 affiliates. This circumstance was compounded with illness of counsel, and the pendency of other deadlines before Commerce. October 5th Extension Request (K.P.R. 67; T.P.R. 58; C.P.R. 63).  Hoa Phat also communicated experiencing technical problems. Thus, the reasons supporting each of the extensions were sufficiently company-specific for Commerce to address them, and their complete disregard is an abuse of discretion. This Court has overturned Commerce's decision for not accepting a five-hours late filing since it did not take into consideration the specific of the case, including the unusual timing of the filing. *Cambria Co. LLC v. United States*, No. 23-00007, 2024 Ct. Intl. Trade LEXIS 62, *15-18 (Ct. Int'l Trade May 28, 2024).

Second, Defendant and Defendant-Intervenors argue that Hoa Phat was not diligent enough since Vina One was able to file its questionnaire on time. Def. Br. 17, Def.-Invrs. Br. 11. We disagree. Hoa Phat's situation was quite unique.  Hoa Phat had to report information on a large number of affiliates and experienced technical problems. Vina One did not face such cumbersome situations. Moreover, the fact that Vina One also filed multiple extension requests only demonstrates that the timeline set by the

Department was unrealistic. In any case, Defendant and Defendant-Intervenors omit that Vina One still required a full additional business day to file the final BPI and PV, which was granted in full by Commerce on the same day of the deadline.

Third, Defendant and Defendant-Intervenors argue that Commerce denied the additional extension precisely because of Hoa Phat itself represented as sufficient time the extension until 11:59 pm. Def.-Invrs Br. 33. This argument mirrors Commerce rationale for rejecting Hoa Phat's fourth extension request, referring to Hoa Phat's prior extension.  Rejection Memorandum (K.P.R. 121, T.P.R. 115; C.P.R. 128) Defendant and Defendant-Intervenors ignore that a first extension request do not preclude Hoa Phat from later encountering challenges and requiring additional time.  Hoa Phat's earlier communications and extension requests do not nullify the substantial evidence supporting that good cause existed for filing a subsequent extension request due to technical difficulties on the day of filing.

Fourth, Defendant and Defendant-Intervenors argue that Hoa Phat could have started the filing earlier in the day instead of minutes before the extended deadline. Def. Br. 10,40.  The argument is disingenuous.  Hoa Phat communicated on October 6th and in the morning of the deadline that it was experiencing delays OCR and flattening the documents.  As explained, the "check file" function on ACCESS alerts counsel if the document being uploaded is not OCR'd or if it is only partially OCR'd it will detect it and let the filer know that it might not pass the filing requirements.  Therefore, no filing can be started before the preparation is completed for the documents.

Defendant also argued Hoa Phat had as an alternative, the possibility to file manually. Def. Br. 18. As stated in the opening brief, manual filing was not an option as it was not possible to comply with seventy-two hour notice requirement in the absence of an extension request. Pl. Br. 25.

Equally unfounded is Defendant and Defendant-Intervenors' argument that Hoa Phat did not specify a deadline in its sixth extension request which is interpreted as Hoa Phat's entitlement to obtain an extension of time of "as much time as it deems necessary". Def. Br. 7; Def.-Invs Br. 8. As admitted by Defendant and Defendant-Intervenors, the extension request mentioned "even in the wee hours of the night". (K.P.R. 83; T.P.R. 74; C.P.R. 79) (Sixth Extension Request). The extension request thus acknowledged the technical problems which would be resolved in a matter of hours, or maximum, before the next business day.

Substantial evidence is deferential but not unlimited. Commerce still needs to exercise honest and legitimate adjudication. *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359,378-79 (1998).  Because Commerce ignored Hoa Phat good cause to allow for a minimal extension, and because there was no burden for Commerce in light of Vina One simultaneous filing, Commerce's decision on excluding Hoa Phat from certification was punitive and its determination needs to be remanded.

**D.      Contrary to Defendant and Defendant-Intervenors Argument Commerce's Next Business Day Policy as Stated in the Final Rule is Applicable to Hoa Phat**

Defendant and Defendant-Intervenors argue that Commerce's next business day policy as described in the preamble to its Final Rule is not applicable because the deadline in question was not 5pm exactly.  Def. Br. 24;Def.-Invs35.  Hoa Phat does not dispute that it is within Commerce's discretion to 'set and enforce deadlines.'  However, Commerce then is required to abide by its past-practice and guidance.  The policy as described is in the preamble to the Final Rule, not as a regulation itself.  The preamble is addressing "Untimely Extension Requests in General" and specifically describing how extensions will be handled in situations where Commerce is unable able to respond before the deadline has expired.  Specifically stating, "the Department frequently encountered the situation in which a party filed an extension request so close to the time limit that the Department did not have the opportunity to respond to the request before the time limit expires. These last-minute extension requests often resulted in confusion among the parties, difficulties in the Department's organization of its work,…" *Extension of Time Limits* 78 Fed. Reg. 57,792 (September 20, 2013).  As quoted by the Defendant and Defendant Intervenors, the preamble does state "if the Department is not able to notify the party requesting the extension of the disposition of the request by 5:00 p.m., then the submission would be due by the opening of business (8:30 a.m.) on the next work day."  However, in the paragraph immediately preceding this statement, the Department explains that although most deadlines are for 5pm (as is directly stated in the regulations 19 C.F.R. § 351.303(b)(1)), deadlines may be extended to other times.

Commerce gives the example of a noon deadline explaining that in those circumstances the time limit would expire at noon, not at 5pm as required by the regulation.[1]

Additionally, the procedure specifically described in the plain language instructions to the questionnaire stated:

> Scenario 2: I experienced difficulties yet was able to file an extension request right before the deadline. However, it is now after 5:00 pm on the due date, and I still haven't received a response.
> ☐ If you could not meet the deadline because of ACCESS filing difficulties *__or other technical issues__*, you automatically get until 8:30 am the next business day to file your submission.

As discussed above, in this case, Hoa Phat filed an extension request citing technical difficulties and describing in detail counsel efforts in rectifying those issues. Letter Regarding Final Extension Request (K.P.R. 83; T.P.R. 74; C.P.R. 79). Given the 11:50 pm filing time, Commerce did not respond for extension during the last ten minutes of October 7, or on October 8 (Saturday) or October 9 (Sunday) or October 10 (federal holiday). Commerce would not officially re-open until Tuesday, October 11.

Pursuant to Scenario 2 of the Commerce Instructions (above), Hoa Phat therefore had until 8:30 am the next business day in which to file its submission. It is undisputed

---

[1] "Concerning when the time limit expires, if a submission is due on Monday, December 2, 2013, for example, the submission must be received by 5:00 p.m. Eastern Time on that date. {citing 19 C.F.R. § 351.303(b)(1)}  If a party requests an extension of that time limit, the party's extension request must be received before 5:00 p.m. on Monday, December 2, 2013, or it will be considered untimely. On the other hand, if the Department specifies that a submission is due on Monday, December 2, 2013, at 12:00 noon, the party's extension request must be received before 12:00 noon on Monday, December 2, 2013, or it will be considered untimely. *Extension of Time Limits*, 78 Fed. Reg. 57,792 (September 20, 2013).

that Hoa Phat completed its filings well before the opening of business on Tuesday, October 11. *See* Request for Reconsideration of Hoa Phat's Initial Response at 4-5. Based on the plain language of Scenario 2 of Commerce's Instructions which articulate Commerce's policy with regard to Requests for Extension in plain English, Hoa Phat's responses to the initial questionnaire were timely filed because: (1) Hoa Phat requested an extension prior to the midnight deadline on October 7, 2022, and did not receive a response from Commerce: (2) and the submissions were filed well before to 8:30 am on the first business day after the midnight October 7, 2022 deadline. For these reasons, Commerce's rejection of Hoa Phat's initial questionnaire response is an abuse of discretion.

## II.    COMMERCE'S APPLICATION OF FACTS AVAILABLE WITH AN ADVERSE INFERENCE WAS UNLAWFUL

In response to Plaintiffs' second primary argument, Defendant and Defendant intervenors argue that Commerce correctly applied adverse facts available "AFA" in accordance with the statutory requirements under 19 U.S.C. § 1677e(a).  Defendant and Defendant-Intervenors argue that 19 U.S.C. § 1677m(d) is inapplicable and that it would "lead to absurd results," namely to the possibility to correct deficiencies after a missed deadline. Def. Br. 28.

However, as we detail below, this argument is inconsistent with the record and contrary to the statute because (1) Defendant and Defendant-Intervenors conflate the analysis under facts available and adverse facts available, (2) Contrary to Defendant and Defendant-Intervenors arguments, the application of AFA was punitive since Hoa Phat

acted to the best of its ability, and (3) the application of AFA and resulting exclusion from certification is not Commerce's only method of incentivizing cooperation.

### A.   Defendant And Defendant-Intervenors Conflate The Analysis Under Facts Available And Adverse Facts Available

Defendant and Defendant-Intervenors continue to conflate the analysis under facts available and adverse facts available, ignoring the clear statutory requirement under 19 U.S.C. § 1677m(d) that parties should be allowed to correct deficiencies. In doing so, they act contrary to law taking a punitive approach that is contrary to law.

Commerce's authority to punish and penalize respondent parties for failures to cooperate is not unlimited and is bound by 19 U.S.C. § 1677e which grants Commerce authority to make determinations on the basis of facts available. The statute provides a clear roadmap that Commerce must follow prior to applying facts available let alone AFA. When "the statutory language is plain," as is the case with 19 U.S.C. § 1677e(a)-(b), the court "must enforce it according to its terms."

First, Commerce is required under 19 U.S.C. § 1677e(a) to determine whether information is missing from the record, and then to determine whether an interested party or any other person "fails to provide information by the deadline of the submission". Then, as stated in the opening brief, Commerce has a specific statutory obligation to inform respondents if there are deficiencies in responses to questionnaires. 19 U.S.C §1677m(d).

Defendant and Defendant-Intervenors do not deny that Commerce completely 19 U.S.C. § 1677m(d) from its analysis. Commerce indeed jumped into the application of AFA that resulted in the ineligibility of the certification.

As a preliminary point, Defendant and Defendant-Intervenors do not clarify how the filing of the questionnaire was connected to the certification regime. In a practical sense, there was no information missing from the record with respect to the implicit conclusion that Hoa Phat could not track which hot-rolled suppliers provided the inputs for its exports to the United States.

Then, assuming the information from the questionnaire was "*necessary*" for making a finding on certification, Commerce should have afforded Hoa Phat an opportunity to correct the deficiency, as practicable following 19 U.S.C. § 1677m(d). But Commerce instead disregarded its statutory obligation. Defendant and Defendant-Intervenors do not dispute this key fact. Instead, they argue that the practical consequence of allowing to remedy deficiencies would have been granting an additional extension leading to "absurd results". Def. Br. 28. We disagree. As mentioned in the opening brief, Commerce could make use of multiple alternatives, such as issuing additional questionnaires, conducting additional information gathering activities, or sticking only part of the information . Any of these options would have allowed to use facts available in line with 19 U.S.C. §1677e(a) and 19 U.S.C. §1677m(d).

Defendant also misconstrues 19 U.S.C. §1677m(d), citing the Uruguay Round Agreements Act ("SAA"), seeming to infer that the requirement to allow a party to remedy a deficiency is overridden when the submission is not timely. The SAA and 19

U.S.C. §1677m(d) do not speak about a non-statutory specific deadline, but rather note that the requirement to provide an opportunity to correct a deficiency "is not intended to override the time-limits for <u>completing investigations or reviews.</u>"  H.R. Rep. No. 103–316, at 865 (1994) (SAA) (emphasis added).  In the underlying investigation, granting Hoa Phat the opportunity to correct deficiencies would not have put a risk completing investigations or reviews.  It was thus practicable for Commerce to grant an opportunity to correct deficiencies.

Finally, the 19 U.S.C. §1677m(d) makes very clear that it is only after the opportunity to correct deficiencies, and after such response is not submitted within the applicable time limits, that Commerce can "disregard all or part of the original and subsequent responses."  Instead here, Hoa Phat was precluded from the very early in the proceedings.

**B.    Contrary To Defendant And Defendant-Intervenors Arguments The Application Of AFA Was Punitive Since Hoa Phat Acted To The Best Of Its Ability**

Defendant and Defendant-Intervenors argue that adverse facts available is the correct tool to incentivize cooperation. Def, Br. 28, Def.-Invs40.  This Court should reject the argument.  Rather than incentivizing cooperation, Commerce applied a draconian punishment to Hoa Phat, ignoring all its efforts to cooperate and despite Hoa Phat's proactively calling Commerce and explaining the difficulties. Commerce calculated a conflated duty for Hoa Phat that is far from the finality of calculating an accurate dumping margin. Defendant forgets that AFA must lead to a "albeit with some built-in

increase intended as a deterrent" *F.Lii de Cecco di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000). The rate here is far from a "reasonable accurate estimate" (accurate means accurate as a mathematical and factual matter, and thus supported by substantial evidence) (*Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333, 1344 (Fed. Cir. 2016)) but merely punitive.

The Federal Circuit has clearly instructed that an adverse inference rate cannot be punitive or aberrational and must "reflect { } the seriousness of the non-cooperating party's misconduct." *BMW of N. Am. LLC v. United States*, 926 F.3d 1291, 1301 (Fed. Cir. 2019), citing *Papierfabrik Aug. Koehler SE v. United States*, 710 F. App'x 889 (Fed. Cir. 2018) (wherein, the AFA rate selected was specifically based on "the seriousness of the type of misconduct" committed by the uncooperative party). Here, the Defendant and Defendant-Intervenors do not assess the level of culpability of Hoa Phat. Defendant and Defendant-Intervenors reach the perfunctory conclusion that Hoa Phat did not act "to the best of its ability" to provide Commerce with timely information. Def. Br. 27, Def.-Invs. Br. 41. The factual record shows that Hoa Phat engaged in maximum efforts to provide the information timely.

The cases cited by the Defendant and Defendant-Intervenors are also inapposite given the very different fact patterns, which conversely to Defendant and Defendant-Intervenors argument, actually show that Hoa Phat acted to the best of its ability.

In *Ferrostaal Metals Gmbh v. United States*, 518 F. Supp. 3d 1357, 1376 (Ct. Int'l Trade 2021), Commerce initially rejected a submitted Q&V on the basis that respondent failed to indicate appropriately and explain business proprietary information ("BPI"). As

a fundamental difference, in that case Commerce rejected the filing providing the

respondent with <u>an opportunity to revise its original Q&V response</u> and provided

instructions as to how to file an extension request if more time was needed. Nevertheless,

respondent in *Ferrostaal* (1) submitted nine days after the deadline the revised Q&V

without an explanation for the delay; (2) at no moment sought an extension; (3) the

response was unchanged except for specific explanations on the use of BPI; (4) it was not

after 8 months that the respondent requested Commerce to accept the revised Q&V to

participate in the certification process. *Id.* at 1364.  The facts could not be more different

here. Hoa Phat (1) submitted its response within the next business day of the deadline, (2)

sought multiple extensions explaining why it could not comply with the deadline; (3) Hoa

Phat response was extremely complex and involved three different questionnaires; (4)

Hoa Phat immediately sought admission of its filing. Req. for Reconsideration (K.P.R.

119; T.P.R. 112; C.P.R. 121). Also interesting is the fact that in *Ferrostaal* Commerce

sent questionnaires to 31 companies, and not only to 2 as in the underlying administrative

case.  *Id.* at 1374.

In the case of *Bebitz*, Commerce issued up to 8 supplemental questionnaires,

allowing multiple times respondents to correct deficiencies. *Bebitz*, 433 F. Supp. 3d at

1329. The case also reflects Commerce's willingness to gather all information through

more than 8 extension requests granted to respondents. Commerce's denial of some of the

extension request was duly motivated on the basis of (1) previously requesting

information on at least half of the questions; (2) multiple past extensions of deadlines; (3)

respondent's prior participation in AD/CVD investigations; and (4) Commerce's need for

the requested information in order to complete its investigation by the statutory deadline. *Id.* The respondent actually had up to 5 months to respond to requests from Commerce, and despite of that the respondent information was "unusable". Hoa Phat did not even have a second chance.

In *Tau-Ken Temir*, respondents filed a 5-line barebones extension request which did not satisfy the requirement to provide a "full written explanation." *Tau-Ken Temir*, 587 F. Supp. 3d at 1363.  By contrast, Hoa Phat provided a full description of the difficulties it was facing when it sought its last extension. Hoa Phat was not able to overcome technical issues despite "staff of six people working on OCR and flattening" and that the submission was larger than initially formatted and "almost 8000 pages." Letter Regarding Final Extension Request (K.P.R. 83; T.P.R. 74; C.P.R. 79). Hoa Phat's 6th Extension Request indeed documents that it was doing the maximum it was being able to do. *Id.* Commerce failed to acknowledge the compounding difficulties that Hoa Phat was facing.

Hoa Phat would like to remind this Court that it invalidated Commerce's prior rejection of untimely submissions in cases where the respondent is found to be "diligent" in correcting its untimely submission.  This is particularly true, in cases where untimely submission are "stand-alone occurrence." *Grobest*, 815 F. Supp. 2d 1342.

## C.    The Application Of AFA Should Not Have Resulted In Exclusion From Certification

Defendant and Defendant-Intervenors argue the exclusion from the certification regime is the "sole" measure available to Commerce to incentivize cooperation.

The use of facts otherwise available is for "reaching the applicable determination under this subtitle." 19 U.S.C. §1677e(a). A determination, in the AD/CVD context refers to an affirmative or a negative determination, but not a decision on a company's eligibility to certify that its entries are not subject to certain orders. There is no information in the record regarding the origin of HRS in the LWRPT that Hoa Phat exported to the United States in the past or may export to the United States in the future. Commerce finding under adverse facts available is therefore not supported on factual evidence. At no moment does Commerce in its final determination clarify the source of information it uses to deny certification to Hoa Phat.

Defendant argues that in *Ferrostaal* this Court allowed the application of AFA resulting in the ineligibility to certification. However, as explained above, that case concerned over 31 respondents. Here the two mandatory respondents were already selected. Additionally, in *Ferrostaal* the respondent filed 9 days after the deadline with no explanation (until months later) as to why the deadline was missed.

Defendant and Defendant-Intervenors further argue that allowing Hoa Phat into the certification regime would equalize cooperating with non-cooperating respondents. Def, Br. 30, Def.-Invs. Br. 31. This argument is of no avail, allowing the submission would only have permitted calculating different individual duties, which are not the same. Hoa Phat would not have received the same treatment as Hoa Phat but a treatment individualized to it.

Finally, contrary to Defendant and Defendant-Intervenors' argument Commerce's own practice evidences that it has allowed non-responsive companies to participate in

certification processes in the past. Specifically, in *Certain Cold-Rolled Steel Flat Products From the People's Republic of China: Affirmative Final Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 83 Fed. Reg. 23,891 (May 23, 2018) and accompanying issues and decision memorandum., Commerce opted for not exercising its discretion to apply AFA with respect to a respondent inability to produce its parent company's financial statement and omission of an affiliate. In reaching its determination, Commerce noted that purpose of selecting "mandatory respondents" was neither to identify which producers or exporters might be circumventing nor to calculate a margin for them, but to understand the third-country completion process to determine whether such process is minor or insignificant. *Id.* at Comment 9.

Under these circumstances, Commerce acted impermissibly and abused its administrative discretion because it decision did "attach a consequence that was grossly disproportionate to the mistake that was made." *Artisan Manufacturing Corp. v. United States*, 978 F. Supp. 2d 1334, 1347 (Ct. Int'l Trade 2014). Commerce's exercise of discretion is reviewed under the default standard of the Administrative Procedure Act. *See SolarWorld Americas, Inc. v. United States*, 962 F.3d 1351, 1359 n.2 (Fed. Cir. 2020). This standard allows the Court to "set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §706(2)(A). Here the application of AFA was not in accordance with the law.

## CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons, Hoa Phat asks that the Court find Commerce's rejection of its questionnaire response an abuse of discretion and otherwise unlawful and remand this case to Commerce so that it may reopen the record, accept the response, and make a decision that is consistent with the record and the law.

Respectfully submitted,

/s/ Daniel L. Porter

Daniel L. Porter
Katherine R. Afzal
Ana Amador-Gil

**Curtis, Mallet-Prevost, Colt & Mosle LLP**
1717 Pennsylvania Avenue, NW
Washington, D.C., 20006
(202) 452 7340

Dated:  August 30, 2024          *Counsel for Hoa Phat Steel Pipe Co., Ltd.*

**Word Count Certificate of Compliance**

This brief has been prepared utilizing Microsoft Word 2010 using a proportionally spaced typeface 13 point Times New Roman font.

In accordance with the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that this brief complies with the word limitations set forth in the Chambers Procedures. Specifically, excluding those exempted portions of the brief as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains 6,972 words. In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

/s/ Daniel L. Porter

Daniel L. Porter

**Curtis, Mallet-Prevost, Colt & Mosle LLP**
1717 Pennsylvania Avenue, NW
Washington, D.C., 20006
(202) 452 7340

*Counsel for Hoa Phat Steel Pipe Co., Ltd.*